UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CHARLES ACKLEY,

    Plaintiff,

v.

CONTINENAL CASUALTY COMPANY,

    Defendant.

CASE NO.: 22-cv-60377-RS

### PLAINTIFF'S AMENDED MOTION TO OVERRULE DEFENDANT'S ATTORNEY-CLIENT-PRIVILEGE AND WORK-PRODUCT OBJECTIONS TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION AND TO COMPEL PRODUCTION

Pursuant to Federal Rule of Civil Procedure 37(a), Plaintiff, CHARLES ACKLEY moves to overrule Defendant Continental Casualty Company's ("CNA") objections to ACKLEY's First Request for Production based on attorney-client privilege and work-product immunity and compel Defendant, CNA to produce the responsive documents.

### I. BACKGROUND

This is an action arising out of CNA's wrongful reporting of ACKLEY to the Florida Department of Financial Services ("DFS") to initiate criminal charges for allegedly making false or misleading statements in connection with ACKLEY's personal injury claim against CNA's insured. The criminal charges were ultimately dropped and thereafter ACKLEY's personal injury claim was settled for $200,000, with CNA paying $100,000. ACKLEY's Amended Complaint alleges claims for malicious prosecution (Count I) and intentional infliction of emotional distress (Count II). ACKLEY has also filed a motion for leave to amend (D.E. 32) to add claims for abuse of process and statutory insurance fraud (§ 817.234(7)(b)). ACKLEY seeks compensatory and punitive damages arising from CNA's willful and malicious conduct and reckless disregard for the truth.

Here, ACKLEY alleges that, when CNA referred him to DFS, it knew he had not committed any crime but was seeking to gain advantage in the civil litigation. CNA's Special Investigative Unit's ("SIU") sole basis for the referral was their belief that ACKLEY had misrepresented or exaggerated his

injuries. SIU's referral was made even though its adjuster and in-house attorney defending its insured against ACKLEY's claim advised SIU that ACKLEY had a legitimate injury as a result of the injured's negligence with a verdict potential of at least $65,000. (Amended Complaint; D.E. ¶ 25-26; 29-31). CNA presented selected material from the civil action to DFS, which then requested:

> All of the information in your files concerning the above referenced case or subject, including, but not limited to, claim files, telephone records, telephone logs, adjuster notes, correspondence, and examinations under oath.

(DFS August 25, 2014, letter attached hereto as **Ex. "A"**). CNA responded but redacted significant portions of the records it provided. (*See* **Ex. "B"**).

At CNA's request, DFS first presented the matter to the State Attorney's Office for Palm Beach County (Palm Beach SAO). The Palm Beach SAO declined to prosecute ACKLEY because his statements in deposition "simply did not have any substantial, material misrepresentations" in them. (*See* **Ex. "C"**). Not happy with the Palm Beach SAO's decision, CNA encouraged DFS to pursue criminal charges against ACKLEY with the State Attorney for Broward County (Broward SAO) relying on the exact same evidence presented to the Palm Beach SAO. The Broward SAO filed criminal charges against ACKLEY, and he was arrested for insurance fraud on March 3, 2015.

From the beginning to merciful end, CNA was actively involved and constantly monitored the five-year criminal prosecution of ACKLEY. (*See* Composite **Ex. "D"**). All the while, CNA refused to make a reasonable offer to settle the injury claim despite internally acknowledging its insured's liability and damages of at least $65,000. (*See* Composite **Ex." E"**).

CNA also failed to disclose to the Broward SAO the extensive exculpatory evidence in its own record. (*See* Affidavit of Gregory Morse, Esq., attached hereto as **Ex." F"**). In the criminal action, ACKLEY's defense counsel filed a motion for a subpoena to require production of CNA's unredacted claim file and other documents, which the court granted on May 1, 2019. (Ex. "A" to Morse affidavit). The order explicitly required production of unredacted copies of CNA's file. CNA did **not** file a motion for protective order and did **not** provide unredacted documents. A hearing was held on January 21, 2020,

and CNA still had not complied although it had apparently entered into negotiations with ACKLEY's counsel about a limited production. (Morse affidavit; ¶10-¶12). In the context of those negotiations, ACKLEY's counsel was permitted to view, but not copy, some materials CNA claimed to be privileged. (*Id.* at ¶12) But CNA did not agree to comply fully with the subpoena. Ultimately, the Broward SOA filed a nolle prosequi on the grounds that it could not prosecute the case "without the cooperation of the victim." (*See* **Ex. "G"**).

The nature of malicious prosecution and the other claims ACKLEY is currently seeking leave to add are discussed in section II(A) below, as are CNA's relevant affirmative defenses. (D.E. 27). Suffice to say that the singular focus of this action is the manner in which CNA instigated the criminal charges against ACKLEY, arrived at its decision(s) to act as it did, and its motives for doing so.

ACKLEY's First Request for Production was directed at those issues and narrowly tailored to avoid any applicable privileges or immunities. CNA nonetheless lodged multiple general and specific objections, including on grounds of attorney-client privilege "and/or" work-product. Of course, CNA also makes sure to say that "Subject to and without waiving the foregoing objections, Defendant will produce relevant, non-privileged documents otherwise responsive to this request, if any"—whatever that means in the context of the response. (*See* **Ex. "H"** Defendant's Response to Request to Produce). Defendant also served a 3-part privilege log, attached hereto as **Composite Ex. "I"**). ACKLEY asks the Court to overrule the objections to his requests and order CNA to produce responsive documents.

## II.  ARGUMENT

**A. Plaintiff's pleaded and anticipated claims and Defendant's statutory-immunity affirmative defense.**

The Amended Complaint includes a count for malicious prosecution (DE-9 at 9), which requires the plaintiff to prove six elements, which include (4) the absence of probable cause for such proceeding and (5) the presence of malice therein. <u>Burns v. GCC Beverages</u>, 502 So. 2d 1217, 1218 (Fla. 1986) (quoting <u>Buchanan v. Miami Herald Publ'g Co</u>., 230 So. 2d 9, 11 n.3 (Fla. 1969) (on rehearing)). A

defendant's good faith is an essential element to be considered on the question of probable cause. *Alterra Healthcare v. Campbell*, 78 So. 3d 595, 602 (Fla. 2d DCA 2011)."[T]he element of malice need not be proven directly but may be implied or inferred from want of probable cause." *Adams v. Whitfield*, 290 So. 2d 49, 51 (Fla. 1974).

In response to the malicious-prosecution claim, CNA has raised several affirmative defenses, four of which are relevant. CNA's first defense ("Probable Cause"), asserts a lack of probable cause (DE-27 at 18), stating, in part: "At all times relevant hereto, CNA had reasonable grounds of suspicion supported by the circumstances, including but not limited to ***Plaintiff's deposition testimony*** and video surveillance, which warranted a belief that Plaintiff was ***in suspected violation of Florida Insurance Fraud law***." (*Id.* (emphasis added).) In the third defense ("Guilt"), CNA claims ACKLEY "provided apparent false, incomplete[,] and misleading information to CNA in support of his personal injury claim. When given the opportunity to provide truthful and complete testimony, Plaintiff failed to do so ***in violation of Florida Insurance Fraud law***." (*Id.* at 19 (emphasis added).) In its fourth defense ("Immunity"), CNA relies on Florida Statutes § 626.989(4)(c), which provides an insurer immunity "[i]n the absence of fraud or bad faith" or "malice." In the fourth defense, CNA contends that it "did not act with fraud or in bad faith in reporting Plaintiff to the DFS ***for suspected insurance fraud*** and for furnishing information regarding Plaintiff's ***suspected fraudulent conduct*** to law enforcement officials." (DE-27 at 19 (emphasis added). Finally, in the second defense ("Malice"), CNA claims that ACKLEY "cannot demonstrate that CNA acted ***with malice or legal malice***." (*Id.* (emphasis added).)

ACKLEY seeks leave to add a claim for abuse of process, which has three elements:

> (1) that the defendant made an illegal, improper, or perverted use of process; (2) ***that the defendant had ulterior motives or purposes*** in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage.

*S & I Inv. v. Payless Flea Mkt.*, 36 So. 3d 909, 917 (Fla. 4th DCA 2010) (on motion for rehearing and clarification) (cleaned up) (emphasis added).

ACKLEY also seeks leave to add a claim for insurer fraud under Florida Statutes § 817.234(7)(b), which criminalizes false and fraudulent insurance claims. Subsection (7)(b) of that statute states in part: "The provisions of this section shall also apply as to *any insurer* or adjusting firm or its agents or representatives *who, with intent, injure, defraud, or deceive any claimant with regard to any claim.*" (Emphasis added.)

The issues in this case center on CNA's knowledge of the facts in ACKLEY's case, its decision-making process in instigating and maintaining the criminal charges against him, and its motives.

### B. CNA has waived work-product protection.

Florida law governs application of the attorney-client privilege in diversity cases, whereas federal law governs application of the work-product doctrine. *See,* Guarantee Ins. Co. v. Heffernan Ins. Brokers, 300 F.R.D. 590, 593 (S.D. Fla. 2014).

Federal Rule of Civil Procedure 26(b)(3)(A) establishes two tiers of work-product protection. The first is "fact" work product prepared in anticipation of litigation by an attorney, and a party must show need and hardship to obtain it. Centennial Bank v. ServisFirst Bank, No. 8:16-cv-88-T-36CPT, 2020 WL 1061450, at *3 (M.D. Fla. Mar. 4, 2020). The second tier is "core" or "opinion" work product, which is generally afforded near absolute protection. *Id.* As established below, CNA has waived both tiers of work-product protection for the requested documents.

#### 1. *At-issue waiver of fact work-product protection.*

"Under [the implied-waiver] doctrine, a party waives work-product or privilege protection when (1) assertion of the protection results from some affirmative act by the party invoking the protection; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its [case]." Stern v. O'Quinn, 253 F.R.D. 663, 676 (S.D. Fla. 2008) (citations omitted). "[I]t is simply not fair to allow a party to wield the work-product protection as a sword to cut out the heart of an opposing party's case while simultaneously brandishing it as a shield from disclosure of any

Achilles heels." *Id*. at 677.

There are requests for production that appear to implicate that tier of protection. For example, CNA lodged a work-product objection to requests 4, "Investigative reports collected or generated pertaining to Defendant's investigation of Plaintiff," and 5, "Claims notes regarding the Plaintiff's claim from September 14, 2012[,] through October 2020."

CNA's affirmative defenses make the documents requested by ACKLEY relevant to the case. In the "Probable Cause" defense, CNA asserts that it "had reasonable grounds of suspicion supported by the circumstances [that] warranted a belief that Plaintiff was in suspected violation of Florida Insurance Fraud law." (DE-27 at 18.) In the "Malice" defense, CNA asserts that it did not act with malice. (*Id*.) In the "Guilt" defense, it asserts that ACKLEY "provided apparent false, incomplete[,] and misleading information to CNA in support of his personal injury claim." (*Id*. at 19.) In the "Immunity" defense, CNA asserts that it did not commit fraud nor act in bad faith. (*Id*.)

These defenses necessarily implicate the factual information that CNA had when it referred ACKLEY to the DFS and instigated and then encouraged the prosecution. Denying him access to the documents would deny him access to information vital to his claims that he cannot otherwise obtain. And by asserting the above affirmative defenses, CNA has waived fact work-product protection .

Moreover, documents that solely concern the referral of ACKLEY to DFS for alleged insurance fraud were not "prepared in anticipation of litigation or for trial." CNA's attorneys prepared them not to defend itself against ACKLEY's personal-injury lawsuit, but for another purpose entirely (see requests 1, 2, 14, and 15). Those documents do not even implicate fact work-product protection.

2. *Waiver by disclosure to third parties.*

CNA waived work-product protection because it voluntarily or selectively disclosed protected documents to third parties. "[W]ork-product protection is waived when protected materials are [voluntarily] disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information."

*Stern v. O'Quinn*, 253 F.R.D. 663, 681 (S.D. Fla. 2008) (cleaned up).

ACKLEY seeks these types of documents. He limited request 1 to documents CNA disclosed to third parties. In request 10, he asked for documents that memorialize dealings regarding his claim with, inter alia, CNA's "parent, subsidiary[,] or affiliate corporations." In request 14, ACKLEY sought: "An unredacted copy of all documents furnished by Defendant to the [DFS], or any other State of Florida agencies regarding the Plaintiff."

None of these voluntarily disclosed documents were for generated by CNA and its attorneys for the purpose of CNA's defense against ACKLEY's personal-injury claim. CNA's motive and purpose were to have ACKLEY criminally prosecuted to intimidate him into dropping his valuable claim against its insured. *Cf. Stern*, 253 F.R.D. at 668, 681, 683.

These are disclosures to third parties resulting in waiver. ACKLEY asks that the Court overrule CNA's work-product objections and order CNA to produce the responsive documents. *See Id.* at 683 (when the protection has been waived, waiver is limited to the information actually disclosed, not the subject matter in general).

   3. ***Rare circumstances justifying the production of opinion work product.***

"While opinion work product is generally entitled to a higher degree of protection, such protection is not absolute, and disclosure may be compelled in rare circumstances." *Cozort v. State Farm Mut. Auto. Ins. Co.*, 233 F.R.D. 674, 676 (M.D. Fla. 2005) (citations omitted).

In an analogous context—insurance bad-faith—the courts have found such circumstances, because "the information sought is directly at issue and the need for its production is compelling." *Id.* at 676–77 (citations omitted). Thus, in *Cozort*, applying federal law, the court ruled that "the mental impressions of [insurer's] counsel are directly at issue here, and thus, exceptional circumstances justify invading the opinion work product immunity pertaining to any such documents created as part of the coverage litigation." *Id.* at 677; *see also Tolz v. Geico Gen. Ins. Co.*, 2010 WL 384745, at *4–5 (S.D. Fla. Jan. 27, 2010) (in an insurance bad-faith action, compelling the plaintiff's attorney in the underlying

personal-injury action to produce opinion work product).

Exceptional circumstances exist here as well. ACKLEY has pleaded a malicious-prosecution claim. As seen above, he will need to prove that CNA had no probable cause to instigate the criminal prosecution, and that CNA acted with malice (which can be inferred from the lack of probable cause). As the Second District has said, "a malicious-prosecution defendant's good faith is an essential element to be considered on the question of probable cause." *Alterra Healthcare Corp. v. Campbell*, 78 So. 3d 595, 602 (Fla. 2d DCA 2011) (cleaned up). Moreover, the inquiry is whether the facts available to CNA allowed "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Id.* (cleaned up). Whether CNA had a reasonable ground of suspicion—which was necessarily based, in part, on its attorney's mental impressions—is directly at issue.

This is confirmed by CNA's own defenses. The "Probable Cause," "Malice," "Guilt," and "Immunity" defenses all directly implicate CNA's state of mind—whether it actually suspected ACKLEY had violated Florida law; whether it committed fraud, acted in bad faith, or with malice.

Additionally, ACKLEY is seeking leave to add claims for abuse of process and insurer fraud under Florida Statutes § 817.234(7)(b). One element of abuse of process is "that the defendant had ulterior motives or purposes." *S & I Inv. v. Payless Flea Mkt.*, 36 So. 3d 909, 917 (Fla. 4th DCA 2010) (on motion for rehearing and clarification). The claim under § 817.234(7)(b) will also require ACKLEY to prove that CNA acted "with intent."

In *Conte v. County of Nassau*, 2009 WL 1362784 (E.D.N.Y. 2009), the court ruled that fact work product was discoverable in a malicious prosecution/abuse of process case:

> Plaintiff brings this action alleging, among other things, malicious prosecution and abuse of process. In their Answer, the County defendants assert numerous affirmative defenses, including that at all times, they were acting without malice and with reasonable and proper cause (Ans. Fifth Aff. Def.) The documents in question appear to pertain directly to this affirmative defense. By asserting such a defense, the County defendants have effectively placed the contested documents in issue in this action.

*See also* <u>Burbar v. Incorporated Village of Garden City</u>, 303 F.R.D. 9 (E.D.N.Y. 2014) (fact work product ruled discoverable based on complaint and affirmative defenses in malicious prosecution/abuse of process case).

ACKLEY's pleaded and anticipated causes of action and CNA's affirmative defenses place the mental impressions of CNA's attorneys directly at issue, thereby overriding the opinion work-protect protection applying to the documents ACKLEY seeks.

4. ***Crime-fraud exception to opinion work product***

Federal courts recognize a crime-fraud exception that overrides an assertion of opinion work-product privilege. The Eleventh Circuit has characterized the two-part test as follows:

> First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

<u>In Re Grand Jury Investigation (Schroeder)</u>, 842 F.2d 1223, 1226 (11th Cir. 1987); *see also* <u>Drummond Co., Inc. v. Conrad & Scherer, LLP</u>, 885 F.3d 1324, 1335 (11th Cir. 2018). The Eleventh Circuit has also stated that the requirement that the legal advice be in furtherance or related to fraudulent conduct "should not be interpreted restrictively." <u>Grand Jury</u>, 842 F.2d at 1227.

Here, the Plaintiff claims that CNA intentionally instigated the criminal proceedings against him by selectively providing information to the DFS and the Broward SAO and concealing exculpatory evidence in their possession. In furtherance of its fraudulent activity, CNA obtained the assistance and counsel of Andrew Bryant, Esq., CNA's in-house counsel and "Law Enforcement Liaison." In <u>K-Mart, Corp. v. Sellars</u>, 387 So. 2d 552 (Fla. 1st DCA 1980), a company instigated criminal proceedings against an employee claiming that he was stealing products. The information provided to the prosecuting authorities did not include the fact, which the employer knew, that the inaccurate inventory relied upon to justify the theft charge was inaccurate. In upholding the resulting judgment against the employer for malicious prosecution and false arrest, the Florida appellate court specifically noted that the employer's

agent has used "fraud or other improper means" to instigate the unjustified criminal proceeding. *See also, Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291 (S.D. Fla. 2000) (crime-fraud exception ruled to override attorney-client and work-product privilege because client had engaged in discovery fraud in prior litigation).

ACKLEY's summary of the facts is sufficient to present a prima facie case of fraudulent conduct sufficient to satisfy the first element of the crime-fraud exception, and the fact that CNA's SIU unit was led by an attorney, who authored the initial submission to DFS, shows that that attorney was utilized for purpose of instigating the criminal charges. Additionally, CNA permitted ACKLEY's criminal defense attorney to review the allegedly privileged documents in the criminal case (but not to copy them). He stated in his affidavit that:

> Some of these documents are indeed exculpatory and speak to the issue of whether CNA believed it had sufficient facts to support even the civil standard of fraud.

This is further evidence that CNA withheld exculpatory evidence and was aware of the impropriety of the criminal proceedings, which was deemed fraudulent conduct in *Sellars*.

If this Court finds that Plaintiff has made a prima facie showing of fraudulent conduct, there is a second step to the process by which CNA would be entitled to present evidence to demonstrate that the crime-fraud exception does not, in fact, apply. *See Grand Jury*, 842 F.2d at 1226; *Gutter*, 124 F. Supp. 2d at 1299–1300. But in the event this Court determines that the Plaintiff has not satisfied his prima facie burden, the Court should deny Plaintiff's request on that ground **without prejudice** because as further discovery is obtained the Plaintiff may be able to present additional evidence later in this proceeding which could constitute a prima facie showing.

### C. CNA has waived attorney-client privilege, or the privilege does not otherwise apply.

"The attorney-client privilege applies to confidential communications made in the rendition of legal services to the client." *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1380 (Fla. 1994) (citing Fla. Stat. § 90.502 (1991)). "The burden of establishing the attorney-client privilege rests on the party

claiming it." *Id.* at 1383 (citation omitted).

### 1. Inapplicability because communications were not related to legal services being rendered.

In requests 1, 2, 3, 6, 7, 10, 11, 12, 18, and 20, ACKLEY has asked for documents that have nothing to do with any legal services rendered by CNA's attorneys. Clearly, CNA's attorney-client objections to production of these materials are baseless.

Furthermore, when it comes to corporations, "to minimize the threat of corporations cloaking information with the attorney-client privilege in order to avoid discovery, claims of the privilege in the corporate context will be subjected to a heightened level of scrutiny." *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994). The Florida Supreme Court has set forth certain "criteria to judge whether a corporation's communications are protected by the attorney-client privilege." *Id.* One is that "the content of the communication relates to the legal services being rendered." *Id.*

Moreover, in the closely related insurance bad-faith context, "[i]nsurers who retain attorneys to defend them in coverage and bad faith litigation may assert [attorney-client privilege] as to communications regarding litigation, but not with respect to communications concerning claims-handling." *Batchelor v. Geico Cas. Co.*, 142 F. Supp. 3d 1220, 1242–43 (M.D. Fla. 2015) (citing *Genovese v. Provident Life & Accident Ins. Co.*, 74 So. 3d 1064, 1068 (Fla. 2011); *Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1129–30 (Fla. 2005)); *see also St. Joe Co. v. Liberty Mut. Ins. Co.*, 2006 WL 3391208, at *4–5 (M.D. Fla. Nov. 22, 2006); *MI Windows & Doors v. Liberty Mut. Fire Ins. Co.*, 2016 WL 7213270, at *5 (M.D. Fla. Oct. 20, 2016). "In an insurance context, the attorney-client privilege only attaches when an attorney performs acts for an insurer in his professional capacity and in anticipation of litigation." *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 697 (S.D. Fla. 2007) (citation omitted).

In the above-identified requests, ACKLEY asks for communications that do ***not*** relate to legal services. For example, in request 2, Plaintiff asks for "[i]nternal memoranda, notes, diary entries regarding the discussion of and/or the Defendant's decision to refer the Plaintiff to the authorities for suspected fraud." That is not related to the rendering of legal services. In request 11: "All documents, or printouts

of electronically stores information contained without the files or any of YOU, YOUR employees, adjusters, or claims handling personnel which deal with, document[,] or otherwise contain any information regarding YOUR investigation of the underlying claim." These are claims-handling communications that are not protected. See Batchelor, 142 F. Supp. 3d at 1242–43.

Yet another example of requested material unrelated to legal services is request 20: "Documents which reflect Defendant's reporting of other individuals or entities who have asserted bodily injury claims against an insured of Defendant to state regulators for suspected insurance fraud from 2012 through 2014." As a final example, request 12 asked for: "Transcripts of, notes of, summaries of[,] or recordings of, any recorded statements or statements under oath taken by YOU or on YOUR behalf relating to any investigation of the underlying claim, including of the Plaintiff." This one does not implicate any attorney-client communication, yet CNA objected anyway.

For the above-identified requests, CNA's privilege objections are baseless. The Court should conduct an in-camera inspection of the requested documents to determine whether the attorney was investigating ACKLEY 's claim or rendering legal advice. See Ruiz, 899 So. 2d at 1129–30.

2. ***Waiver of attorney-client privilege because of disclosure to third parties.***

In requests 1, 2, 3, 6, 10, 11, 12, and 18, ACKLEY seeks documents that CNA voluntarily and/or selectively disclosed to third parties—an act that obviously results in waiver.

"In most cases, a voluntary disclosure to a third party of the privileged material, being inconsistent with the confidential relationship, waives the [attorney-client] privilege." Visual Scene, Inc. v. Pilkington Bros., 508 So. 2d 437, 440 (Fla. 3d DCA 1987) (citation omitted). This is such a case. For example, request 1 is limited to documents that CNA disclosed to ACKLEY's attorney, the DFS, Palm Beach SAO, Broward SAO, and others. Another example is request 10, where ACKLEY asks for documents that memorialize dealings regarding ACKLEY 's claim with, *inter alia*, CNA's "parent, subsidiary[,] or affiliate corporations." These are disclosures to third parties resulting in waiver.

Moreover, one of the criteria the Florida Supreme Court identified in *Deason* to determine

whether a corporation's communications are protected by the privilege is that "the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents." <u>Deason</u>, 632 So. 2d at 1383. That appears to not be true of, for example, request 2: "Internal memoranda, notes, diary entries regarding the discussion of and/or the Defendant's decision to refer the Plaintiff to the authorities for suspected insurance fraud."

CNA also claims a joint-defense privilege with respect to request 18: "Any written communications or diary notes memorializing oral communications among Defendant and employees or legal counsel of Eilerson Development Corporation, IRT Coral Springs, or Countryside Power Sweeping, Inc., discussing whether to settle Mr. ACKLEY's claims against them." This "exception to this general waiver [from disclosure to third parties] rule ... enables litigants who share unified interests to exchange this privileged information to adequately prepare their cases without losing the protection afforded by the privilege." <u>Visual Scene</u>, 508 So. 2d at 440 (citation omitted). The only two defendants in the underlying personal-injury action were Equity One, Inc., and Eilerson Development Corp. CNA was not a party to the action.

In the above-identified requests for production, ACKLEY was careful to limit the documents requested to those that, *inter alia*, CNA disclosed to third parties. When CNA did that, it waived the attorney-client privilege as to those documents.

3. *At-issue waiver.*

While "[a] party does not waive the attorney-client privilege merely by bringing or defending a lawsuit," "waiver [does] occur[] when a party raises a claim that will *necessarily* require proof by way of a privileged communication." <u>Coates v. Akerman, Senterfitt & Eidson</u>, 940 So. 2d 504, 508 (Fla. 2006) (emphasis in original) (cleaned up). This is because, "[w]hen a party himself ceases to treat a matter as confidential, it loses its confidential character." <u>Savino v. Luciano</u>, 92 So. 2d 817, 819 (Fla. 1957) (citations omitted). The waiver of the privilege can be express or implied. *See id.*

Here, CNA has raised affirmative defenses that will require evidence in the form of attorney-

client communications. Its "Probable Cause" affirmative defense asserts that it properly reported ACKLEY to DFS and provoked his criminal prosecution because it suspected that ACKLEY was violating state law, and that CNA's suspicions were based, in part, on ACKLEY's deposition testimony. (To be clear, this is not related to the rendering of legal services, in that CNA only took information from the civil litigation and then used it for the other, improper purpose.) Necessarily, CNA's understanding of the (alleged) legal effect of the statements ACKLEY made in his deposition could only have come from a communication with its attorney. CNA makes similar assertions of violations of law in the "Guilt" and "Immunity" affirmative defenses. Moreover, in the "Immunity" affirmative defense, which is based on § 626.989(4)(c), CNA claims that it did not act with fraud or in bad faith.

Each of these affirmative defenses that CNA has asserted implicate attorney-client communications, and it necessarily will have to rely on those communications to support the defenses. The assertion of these defenses is an implicit waiver of attorney-client privilege with respect to all of the materials ACKLEY has sought production of that CNA has refused to produce.

4. *Crime-fraud exception.*

Florida Statutes § 90.502(4)(a) states that there is no attorney-client privilege when "[t]he services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime or fraud." Florida law on the exception is essentially the same as the federal law discussed as to the opinion work-product exception. A plaintiff must present a prima facie showing of fraudulent conduct and, if deemed sufficient, the defendant then has an opportunity to present countervailing evidence. *See* <u>Merco Group of the Palm Beaches, Inc. v. McGregor</u>, 162 So. 3d 49 (Fla. 4th DCA 2014); <u>Robichaud v. Kennedy</u>, 711 So. 2d 186, 188 (Fla. 2d DCA 1998); <u>Am. Tobacco Co. v. State</u>, 697 So. 2d 1249 (Fla. 4th DCA 1997).

Here, the record shows CNA retained separate counsel solely to instigate and monitor the criminal proceeding against ACKLEY, which was based on an intentionally selective presentation of evidence to DFS and the Broward SAO, with the intentional concealment of exculpatory information. As noted

previously, the Florida court in *Sellars* determined such conduct was fraudulent.[1]

ACKLEY has presented a prima facie case that CNA sought the advice of its attorney to commit a fraud. The crime-fraud exception to attorney-client privilege applies to the documents requested. Accordingly, ACKLEY asks the Court to proceed to the second step of the process and conduct an in-camera review to determine and hold an evidentiary hearing. If this Court determines that Plaintiff has not presented a prima facie case, Plaintiff requests that the Court deny his request on this issue without prejudice so he can renew this argument after further discovery.

### III.   CONCLUSION

ACKLEY asks the Court to overrule all of CNA's objections to his First Request for Production based on attorney-client privilege and work-product immunity and order CNA to produce all responsive documents. Alternatively, to the extent that further review is necessary before producing some of the documents, ACKLEY asks the Court to conduct an in-camera review of those documents.

Dated: September **23rd**, 2022

Respectfully submitted,

BENRUBI LAW, P. A.
6501 Congress Avenue, Suite 118
Boca Raton, FL  33487
Phone:  (561) 910-8650
Email: *RBenrubi@benrubilaw.com*
Secondary: *cgarcia@benrubilaw.com*

*Counsel for Plaintiff*

By: /s/ Richard M. Benrubi
    RICHARD M. BENRUBI, ESQ.
    Florida Bar No.: 796573

---

[1] Additionally, ACKLEY seeks to add a statutory insurance-fraud claim pursuant to § 817.234(7). That claim in itself justifies consideration of the crime-fraud exception. See Butler, Pappas, Weihmuller, Katz, Craig LLP v. Coral Reef of Key Biscayne Developers, Inc., 873 So. 2d 339 (Fla. 3d DCA 2003). Here, the selective presentation of information and the suppression of exculpatory information does involve fraud and the intent to injure ACKLEY.

Moreover, ACKLEY seeks leave to add a claim for abuse of process. "Abuse of process is tortious conduct which constitutes a civil fraud sufficient to come within the crime-fraud exception." Heiffer v. IDS Long Distance, No. 02-00749 (12), 2002 WL 34449011 (Fla. 17th Cir. Ct. July 24, 2002) (citing Munn v. Bristol Bay Housing Auth., 777 P.2d 188 (Alaska 1989)). The evidence cited above establishes that CNA instigated an illegal and proper use of process (the criminal prosecution) and it had an ulterior motive or purpose for doing do. See S & I Inv. v. Payless Flea Mkt., 36 So. 3d 909, 917 (Fla. 4th DCA 2010) (on motion for rehearing and clarification).

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Florida Rule of Civil Procedure 1.380, the undersigned counsel hereby certifies that he has conferred with counsel for Defendant in a good faith effort to resolve the issues raised in this Motion, but counsel for Defendant opposes the relief requested.

By: /s/ *Richard M. Benrubi*
RICHARD M. BENRUBI
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23rd, 2022, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

LAURA BESVINICK, ESQ.
LISA A. PACH, ESQ.
Stroock & Stroock & Lavan, LLP
200 So. Biscayne Blvd, Suite 3100
Miami, FL  33131
Email: *lbesvinick@stroock.com*
*lpach@stroock.com*

*Counsel for Defendant*

By: /s/ *Richard M. Benrubi*
RICHARD M. BENRUBI
*Counsel for Plaintiff*