UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CHARLES ACKLEY,

    Plaintiff,

v.

CONTINENAL CASUALTY COMPANY,

    Defendant.
_____/

CASE NO.: 22-cv-60377-RS

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, CHARLES ACKLEY, hereby responds to Defendant, CONTINENTAL CASUALTY COMPANY's Motion to Dismiss Plaintiff's Second Amended Complaint (DE 37).

**I.   ARGUMENT**

  **A.   Count I states a claim for malicious prosecution.**

CONTINENTAL argues that the Court should dismiss Count I because, according to it, ACKLEY has failed to state a claim for malicious prosecution. CONTINENTAL's arguments are wrong and constitute an invitation to the Court to disregard the requirement that a court accepts the complaint's allegations as true and views them in the plaintiff's favor. CONTINENTAL is making arguments that, while appropriate in a summary-judgment proceeding or at trial, are improper in a motion to dismiss.

    *1.   CONTINENTAL waived any failure-to-state-a-claim argument it may have had.*

Initially, CONTINENTAL waived its argument against Count I. ACKLEY's Amended Complaint (DE 9) contained the very same claim. Rather than moving to dismiss that count, CONTINENTAL filed an Answer and Defenses and Affirmative Defenses to Count I of Amended

Complaint, even as it expressly declined to answer Count II of the Amended Complaint because it had filed a motion to dismiss that count. (DE 27.) CONTINENTAL made a deliberate decision to answer the same count that it now says fails to state a claim.

That defense was available to CONTINENTAL at the time of the Amended Complaint. Its failure to assert the defense then resulted in a waiver of the argument. *See Toledo v. Town of Davie*, 2010 WL 11506397, at *3 (S.D. Fla. Aug. 2, 2010) ("[T]he filing of an amended complaint will not revive the right to present by motion defenses that were available but not asserted prior to the amendment." (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1388 (3d ed. 2004))).

As against Count I, CONTINENTAL's motion should be denied simply because CONTINENTAL waived the argument.

2. ***ACKLEY sufficiently alleged causation.***

If the Court reaches the merits of CONTINENTAL's motion, however, it should still deny the motion. Malicious prosecution requires the plaintiff to prove six elements:

> (1) The commencement or continuance of an original criminal or civil judicial proceeding. (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding. (3) Its bona fide termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of malice therein. (6) Damage conforming to legal standards resulting to plaintiff. If any one of these elements is lacking, the result is fatal to the action.

*Burns v. GCC Beverages*, 502 So. 2d 1217, 1218 (Fla. 1986) (emphasis added) (quoting *Buchanan v. Miami Herald Publ'g Co.*, 230 So. 2d 9, 11 n.3 (Fla. 1969) (on rehearing)). CONTINENTAL contends that ACKLEY's complaint fails to sufficiently allege the second and fifth elements.

A case CONTINENTAL cites, *Dorf v. Usher*, 514 So. 2d 68 (Fla. 4th DCA 1987), is distinguishable but instructive. There the Fourth District Court of Appeal stated:

> Where the defendant in a malicious prosecution action simply gives a statement of fact to the authorities, (assuming he does not know it to be false), and leaves

> the decision to prosecute solely in the hands of the authorities, who have the opportunity to conduct an independent evaluation, he is not regarded as having instigated the criminal action. *Orr v. Belk Lindsey Stores, Inc.*, 462 So. 2d 112 (Fla. 5th DCA 1985). The filing of the action by the state is evidence that there is a reasonable ground to prosecute, despite an acquittal. *Colonial Stores, Inc. v. Scarbrough*, 355 So. 2d 1181 (Fla. 1977); ... .

*Id.* at 69 (some citations omitted).

In *Dorf*, a landlord sued a tenant for malicious prosecution. 514 So. 2d at 68. The trial court granted summary judgment for the tenant. The parties had a heated argument during which the landlord allegedly threatened the tenant. *Id.* at 68–69. The tenant filed a police report and an affidavit with the prosecutor. *Id.* at 69. The prosecutor brought charges against the landlord for disorderly conduct. *Id.* The criminal prosecution resulted in an acquittal. *Id.* The trial court granted summary judgment for the tenant in the civil case because there was no dispute of material fact regarding causation and lack of probable cause. *Id.* Affirming the summary judgment, the district court said: "In this case there was an investigation by the officer, and the participants were interviewed. An affidavit by the assistant state attorney revealed that her decision to prosecute was based on the investigation, with no outside interference nor persuasion by the tenant." *Id.*

This case is different. The Second Amended Complaint alleges that CONTINENTAL did more than simply give a statement of fact to the authorities and then leave the decision to prosecute solely in the hands of the authorities, who had the opportunity to conduct an independent evaluation. CONTINENTAL knowingly gave false, incomplete, and misleading statements to DFS, initiating the investigation into ACKLEY. (SAC at ¶¶ 25–26, 41–43.) After doing that, CONTINENTAL had DFS forum shop the prosecution. One prosecutor declined to file criminal charges, and CONTINENTAL encouraged DFS to go to another county's prosecutor, who did file.

CONTINENTAL's actions caused the investigation in the first place and infected the investigation and the prosecutor's decision to charge. CONTINENTAL's provision of false,

incomplete, and misleading information to the authorities and its encouragement to DFS to forum shop to ensure criminal charges were filed mean that the decisions to investigate and then prosecute him were not *solely* in the hands of authorities and that those authorities did not have the opportunity to conduct *independent* evaluations.

At this early stage in the proceedings, the Second Amended Complaint sufficiently alleges that "the defendant's persuasion [was] the determining factor in inducing the officer's decision" and that CONTINENTAL "[gave] information which [it] knew to be false and so unduly influences the authorities"—either of which subjects CONTINENTAL to liability for malicious prosecution.[1] *Orr*, 462 So. 2d at 114; *see also Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008) ("[I]t is apparent from the record of [the police officer's] deposition, taken in the underlying criminal case, that the State Attorney was relying on information provided by [the officer] in his prosecution of [the plaintiff] ... Therefore, [the plaintiff] satisfied the common law element that [the police officer] was the legal cause of the original prosecution.").

In arguing that the prosecutor made an independent investigation, CONTINENTAL points to only the information and the prosecutor's pro forma certification therein. It has not pointed to anything in the Second Amended Complaint, its exhibits, or the judicially noticeable documents attached to the motion establishing that the authorities' decisions were, in fact, independently made, thereby allowing the Court to disregard the Second Amended Complaint's allegations. If CONTINENTAL believes such facts are out there, it will have to develop them in discovery and then, if justified, file a summary-judgment motion or make appropriate arguments at trial. *Cf.*

---

[1] *See also Floyd v. Stoumbos*, 2022 WL 1591356, at *4 (M.D. Fla. Apr. 15, 2022) ("But the defendant may be the legal cause if: (1) his persuasion is the determining factor in inducing the officer's decision; (2) he affirmatively gave information to authorities that he knew or should have known was false which was the determining factor in inducing the decision to arrest or prosecute; or (3) he knowingly withheld evidence that could have ceased the prosecution." (citations omitted)).

*Molina v. Jiffy Lube Int'l*, 2008 WL 4541025 (S.D. Fla. Oct. 8, 2008) (decided on summary judgment), *aff'd*, 345 F. App'x 412 (11th Cir. 2009); *Floyd v. Stoumbos*, 2022 WL 1591356 (M.D. Fla. Apr. 15, 2022) (same). Additionally, ACKLEY fails to see how the magistrate judge's finding of probable cause is relevant to causation since, by the time the judge made that finding, the criminal charges against ACKLEY had already been filed.

ACKLEY has sufficiently alleged causation—i.e., that CONTINENTAL instigated the criminal action—whatever self-serving statements it included in the Fraud Report that, it must be said, CONTINENTAL was not legally required to submit since its allegations were frivolous.

3. ***ACKLEY sufficiently alleged the absence of probable cause.***

CONTINENTAL's argument with respect to the lack-of-probable-cause element reads like arguments a defendant makes after development of a factual record at either the summary-judgment stage or trial.

CONTINENTAL states that "the facts known to Continental and communicated to the DFS in the Fraud Report were based on Ackley's own sworn statements to Continental as well as surveillance of Ackley's own actions over three days that directly contradicted those sworn statements. These contradictions as to the extent of Ackley's injuries were more than sufficient to trigger Continental's statutory obligation to report the suspected insurance fraud to the DFS for further investigation." (Def.'s MTD at 10.) CONTINENTAL can make these statements only by totally ignoring the allegations of the Second Amended Complaint.

"[T]he facts known to Continental" showed that there were no reasonable grounds for suspecting that ACKLEY committed insurance fraud. (*See* SAC at ¶¶ 25–26, 30–31.) ACKLEY has clearly alleged that CONTINENTAL had no probable cause to make the referral (*Id.* at ¶ 42.) In paragraph 43, ACKLEY alleges: "Defendant, CONTINENTAL, had actual knowledge that its

5

criminal referral was frivolous and without legal basis, and had actual knowledge that there was evidence in its claims file which exculpated Plaintiff from any alleged wrongdoing." (*Id.* at ¶ 43 (referring to ¶¶ 30–31, which describe such evidence, which is attached as Exhibits D and E to the Second Amended Complaint).) It is plain wrong to say, as CONTINENTAL does, that "nothing in the SAC contradicts the underlying facts upon which the [Fraud] report was made."[2] (Def.'s MTD at 11.)

Additionally, CONTINENTAL asserts that "the assistant state attorney filed an information against Ackley after receiving the independent affidavit of Officer Wendy Unger. The information is evidence of reasonable grounds for the prosecution and supports a finding of probable cause for the criminal complaint." (*Id.* at 10.) True, the information is ***evidence*** of probable cause. It is not, however, conclusive evidence, and the filing of the information against ACKLEY cannot justify the dismissal of the Second Amended Complaint. *See Colonial Stores v. Scarbrough*, 355 So. 2d 1181, 1185 (Fla. 1977) ("[I]n a malicious prosecution action, no presumption of probable cause arises from the filing of an information with respect to the charge upon which such action is based. ... [T]he filing of an information merely constitutes evidence of reasonable grounds for the prosecution.").

The same can be said of CONTINENTAL's reliance on the magistrate judge's determination "that there was probable cause to believe that Ackley had committed insurance fraud." (*Id.* at 9.) "[A] magistrate's determination of probable cause to issue an arrest warrant is not a *conclusive* presumption of probable cause, unless the probable cause determination was based upon an adversary hearing and there was no evidence of fraud or other improper means in securing the warrant."

---

[2] CONTINENTAL also states that it "had no control over any subsequent actions related to the investigation or filing of the criminal complaint against Ackley" (Def.'s MTD at 11.) That statement concerns not the absence of probable cause, but causation. As can be seen above, "control" is not the test for causation in malicious prosecution.

*Harris v. Boone*, 519 So. 2d 1065, 1067 (Fla. 1st DCA 1988) (emphasis in original) (citation omitted). There is no indication in the Probable Cause Determination that the judge held an adversary hearing on the issue. (DE 71-3.) Rather, the form order shows that the judge considered only an affidavit, presumably from a law enforcement officer. Thus, while the judge's determination is evidence of probable cause, it is not conclusive evidence. Like the information, the determination cannot justify the dismissal of the Second Amended Complaint.

ACKLEY has sufficiently alleged that CONTINENTAL lacked probable cause to make the referral for suspected insurance fraud to DFS. *See Alterra Healthcare Corp. v. Campbell*, 78 So. 3d 595, 602–03 (Fla. 2d DCA 2011) (competent substantial evidence supported jury's finding that a temporary employer lacked probable cause to report temporary employee to police); *Schuster v. Saks Fifth Ave.*, 2020 WL 13402060, at *3 (S.D. Fla. July 1, 2020) (denying motion to dismiss a when complaint alleged that employer made false accusations against plaintiff, leading to her arrest and prosecution, which was sufficient to allege lack of probable cause on employer's part).

Because Count I of the Second Amended Complaint sufficiently alleges causation and lack of probable cause, the Court should deny CONTINENTAL's motion to dismiss. If the Court determines that the allegations in the complaint are not sufficient with regard the two elements CONTINENTAL contests, ACKLEY requests the opportunity to proffer a proposed complaint that is more detailed on these points.

**B. Count II states a claim for intentional infliction of emotional distress (IIED).**

Next, CONTINENTAL argues that Count II for IIED fails to state a claim. ACKLEY acknowledges that Florida law imposes a very high standard for this cause of action. However, ACKLEY respectfully submits that the allegations in the Second Amended Complaint, when

accepted as true and viewed in the light most favorable to ACKLEY, are sufficient to withstand CONTINENTAL's motion to dismiss.

CONTINENTAL cites one, and only one, case in support of its argument, *Valdes v. GAB Robins North America*, 924 So. 2d 862 (Fla. 3d DCA 2006), which it claims is "directly on point." *Valdes* is distinguishable. The district court summarized the complaint's pertinent allegations as follows:

> Sometime in 1999, appellees had Valdes videotaped while he was engaged in a number of physical activities. Valdes subsequently was queried during a deposition about the activities captured on videotape and then was reported to the State of Florida Division of Insurance Fraud for engaging in insurance fraud.
>
> On December 9, 1999, Valdes was arrested by the State and charged with "Workers' Compensation/Misrepresentation by False or Misleading Statement," a second degree felony. His workers' compensation benefits were terminated the following day. The criminal charges against Valdes ultimately were dropped, and Valdes was paid the workers' compensation benefits owed from the time they were terminated.

*Id.* at 864–65. The district court later described the defendants' conduct as "investigating Valdes and then allegedly falsely reporting to the Division of Insurance that Valdes had committed fraud." *Id.* at 866; *see also id.* at 867 ("Valdes solely alleged that appellees falsely reported to the Division of Insurance Fraud that they had proof that he had committed insurance fraud.").

The factual allegations in this case go far beyond those in *Valdes*. Here, ACKLEY had a valuable claim that was the subject of a pending civil lawsuit. CONTINENTAL knew it did not have sufficient evidence to pursue a fraud-on-the-court claim in the civil lawsuit to get the case dismissed. So CONTINENTAL circumvented that process by making a frivolous referral to DFS that CONTINENTAL actually knew to be frivolous. Not only did CONTINENTAL furnish false information to DFS, but it consciously withheld exculpatory information from DFS. CONTINENTAL did all this to obtain bogus criminal charges against ACKLEY—first-degree felony charges carrying a maximum thirty-year sentence—that it could use as leverage to coerce

8

ACKLEY to drop his civil lawsuit. When one prosecutor's office declined to file charges, CONTINENTAL encouraged DFS go to another office, which did prosecute. CONTINENTAL then continued to encourage the prosecution.

There is no indication in the *Valdes* opinion that the defendant in that case had actual knowledge that its report to the state was false, as opposed to making an erroneous report but in good faith, or that the *Valdes* defendant worked behind the scenes to get charges filed, as opposed to merely making the report. These and the other facts above set the present case apart from *Valdes*.

This case is closer to *Gomez v. Wells Fargo Bank*, 2014 WL 11878882 (S.D. Fla. Jan. 7, 2014), where the district court denied a motion to dismiss an IIED count. According to the complaint in *Gomez*, a bank failed to secure and protect the private and confidential account information of, among other customers, the plaintiff. *Id.* at *1. This led to one of its employees and others stealing money from two accounts at the bank, improperly opening a new account under the plaintiff's name and making sure the plaintiff would not receive notice of the new account, and then using that new account to launder some of the stolen money. *Id.* The bank then falsely informed the federal government that an account used to launder money belonged to the plaintiff, even though the bank knew or should have known, but did not tell the government, that the plaintiff had nothing to do with it. *Id.* This deliberate failure to provide the government with accurate and complete information directly led to the plaintiff's arrest and incarceration. *Id.*

On these allegations, and applying well-settled Florida law, the district court in *Gomez* denied the bank's motion to dismiss the plaintiff's IIED claim. *See id.* at *4–5. Notably, the bank relied, inter alia, on *Valdes*. The district court said: "[W]hen the Court assumes that all allegations alleged in the Complaint are true, and views the allegations cumulatively, in the light most favorable to Plaintiff, the Court finds them sufficiently outrageous to state a claim for IIED." *Id.* at *5

(citations omitted); *see also Goosby v. Branch Banking & Tr.*, 2017 WL 10442008 (S.D. Fla. Dec. 20, 2017) (citing *Gomez*).

In addition to the above, Count II was the subject of a now-moot motion to dismiss (DE 10) that ACKLEY filed a response to in which he outlined the following authorities that also compel denial of the instant motion (DE 23).

In *Dominguez v. Equitable Life Assurance Society of the United States*, 438 So. 2d 58 (Fla. 3d DCA 1983), *approved*, 467 So. 2d 281 (Fla. 1985) (mem.), the insured sued his disability carrier for intentional infliction of emotional distress based ***solely*** on misrepresentations by the insurer's agent to its insured**.** More specifically, the agent told the insured, who had been receiving payments under a disability policy for some period of time, that the insured's physician had authored a letter indicating the insured was no longer disabled and therefore no longer covered under the policy. This misrepresentation induced the insured to sign a paper agreeing that no further insurance payments were due. Based on these allegations, the district court held that the insurance company's intentional misrepresentations to induce plaintiff to relinquish coverage violated the fiduciary relationship between the two and was sufficient to sustain a cause of action for intentional infliction of emotional distress. *See id.* at 61–62. *Dominguez* establishes that a claim for intentional infliction of emotional distress is viable based merely on an insurer's intentional misrepresentation to its insured regarding the existence of coverage. In this case, of course, CONTINENTAL's conduct is much worse.

*Dependable Life Ins. Co. v. Harris*, 510 So.2d 985 (Fla. 5th DCA 1987), also supports ACKLEY's claim. The case involved Harris's purchase of a disability policy in connection with a loan for a new car. Subsequently, he was diagnosed as permanently disabled due to a severe degenerative disease of the spine that did not exist at the time he applied for the policy. The insurer,

Dependable, made payments for approximately two years, but when a new claims manager was assigned to the file she decided, without any new or different information, to stop making payments. To make matters worse, Dependable threatened Harris with litigation, verbally attacked Harris on several occasions (calling him a cheat and a fraud), and otherwise acted in "an extremely nasty and vicious manner." *Id.* at 987. The evidence further showed that Harris experienced severe emotional distress and depression as a result of the denial of coverage and Dependable's actions.

In *Harris*, the court began its analysis by citing *Metropolitan v. McCarson*, 467 So. 2d 277 (Fla. 1985), the seminal Florida case that adopted the Restatement (Second) of Torts § 46 (1965), as the standard for IIED claims. The court then held that the case involved "a fact pattern which falls within the scope of the tort." *Harris*, 510 So. 2d at 988–89. The facts relied upon by the court included the fact that the cessation of payments was completely without any justification, and that Dependable's actions constituted outrageous behavior due in large part to its fiduciary relationship with Harris, its economic strength and power, and Harris' sickness, pecuniary circumstances, and need for (and dependence upon) the disability payments which were wrongfully withheld. *Id*. at 989.

In evaluating the viability of ACKLEY's IIED claim at this early stage, the Court should give weight to fact that CONTINENTAL was in a position to affect ACKLEY's interests and assert its power without justification. In making such an evaluation, comment *f* to section 46 is instructive because it explains how knowledge of a person's particular susceptibility to emotional distress is relevant to determining whether the conduct is sufficiently extreme and outrageous to constitute IIED:

> f. The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of

11

>such knowledge, where it would not be so if he did not know. It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough.

Further, comment *e* to section 46 explains that the unequal position of the parties in a relationship, where one asserts and has the power to affect the interests of the other, may also supply the heightened degree of outrageousness required for IIED.

The misconduct Plaintiff alleges here is comparable to the extortion in *Lashley v. Bowman*, 561 So. 2d 406 (Fla. 5th DCA 1990). The complaint in *Lashley* was filed after a customer was arrested for failing to pay her bill at a restaurant. The customer had ordered lobster but asserted it was frozen in the middle. She asked the server if she could substitute fried shrimp for the frozen lobster, but the server replied that the customer would have to pay for both meals. The customer asked for the manager, who sent the lobster back to be recooked. When the customer asserted that she did not want the lobster recooked, the manager told her he would call the police if she did not pay for the lobster. The customer asserted that the lobster was still undercooked when it was returned to her. She told the manager that it was not edible and she would not pay for it. The manager again threatened to call the police if the customer did not pay, which she refused to do. The manager did call the police, and the customer was arrested in the restaurant for defrauding an innkeeper.

After the charges were dropped, the customer sued the manager. The trial court granted summary judgment for the manager on the customer's IIED claim, but the Fifth District reversed. *Id*. at 408–10. The court held that the manager's actions in extorting money from the customer for inedible food were sufficiently outrageous to meet the IIED standard. *Id*. at 410.[3]

---

[3] *See also Gallogly v. Rodriguez*, 970 So. 2d 470, 473 (Fla. 2d DCA 2007) ("As in the Restatement illustration and *Lashley*, there existed a relationship of authority in this case that would lead Gallogly to believe he was subject to arrest for not giving in to the demands of the defendants. In fact, the alleged conduct in this case is more egregious

12

Florida courts have also recognized this cause of action where insurance coverage for necessary medical treatment was wrongfully denied. For example, in *Greene v. Well Care HMO*, 778 So. 2d 1037 (Fla. 4th DCA 2001), the Fourth District specifically held that it was error for the trial court to reject the plaintiff's attempt to plead a cause of action for IIED. The HMO defendant in *Greene* argued that the trial court was correct in denying plaintiff leave to amend since any attempt to plead a claim for IIED arising out of a wrongful denial of coverage by an HMO would be futile. The Fourth District rejected this argument, finding that pleading an IIED claim would not be futile, *id.* at 1041–42, which is essentially the same thing as saying that the claim states a cause of action. In *Time Insurance Co. v Burger*, 712 So. 2d 389, 393 (Fla. 1998), the Florida Supreme Court held that an IIED claim is viable when a health insurer wrongfully deprives an insured of necessary or timely health care and thereby aggravates the insured's medical or psychiatric condition. *See also Lane v. Health Options Inc.*, 796 So. 2d 1234 (Fla. 4th DCA 2001).

ACKLEY's claim for IIED is no less viable and compelling than those recognized in the foregoing cases. Like the plaintiff in *Dependable Life Ins. Co v. Harris*, ACKLEY suffered an injury that created financial hardship and a dependence on CONTINENTAL's insurance coverage. Like the defendant insurer in *Harris*, CONTINENTAL in this case acted outrageously and beyond all possible bounds of decency. CONTINENTAL abused its relationship with ACKLEY by its attempt to extort ACKLEY into dismissing his injury claim or risk an extended jail sentence. CONTINENTAL exercised its economic strength and power, without justification, and took advantage of ACKLEY's disability and financial dependence.

---

than that in the illustration or in *Lashley* because it goes further than a single threat and encompasses a campaign of extortion by police officers that led to the demise of Gallogly's business. This conduct, if proven, goes beyond the bounds of decency and would cause the average member of the community to exclaim, 'Outrageous.' Accordingly, the trial court erred in concluding that the alleged conduct does not support a claim for intentional infliction of emotional distress as a matter of law.").

13

In sum, the facts alleged in the Second Amended Complaint are analogous to those in the *Gomez* complaint, and far beyond those in the *Valdes* complaint. ACKLEY has sufficiently alleged outrageous conduct on the part of CONTINENTAL. The Court should deny CONTINENTAL's motion to dismiss Count II.

**C. Count III states a claim for violation of Florida Statutes § 817.234(7)(b).**

CONTINENTAL makes the same argument against Count III, apparently verbatim, that it made in response to ACKLEY's motion for leave to file the Second Amended Complaint (DE 37 at 2–3), which the Court necessarily rejected when the Court granted ACKLEY's motion. ACKLEY will repeat (with some revisions) the argument he made in his reply. (DE 42 at pp. 1-2).

With respect to proposed Count III, CONTINENTAL makes two arguments, and ACKLEY will address the second one first. ACKLEY agrees with CONTINENTAL that Florida Statutes § 817.234 does not provide for the recovery of punitive damages. Thus, that part of the prayer for relief should be stricken.

CONTINENTAL's first argument is that Count III under § 817.234 fails to state a claim because, pointing to certain language in the statute, it says there needs to have been a criminal adjudication in the prosecution of ACKLEY. This is a matter of straightforward statutory interpretation. There are two relevant subsections in § 817.234. The first is subsection (5)(a), which is what CONTINENTAL relies upon:

> Any insurer damaged as a result of a violation of any provision of this section when there has been a criminal adjudication of guilt shall have a cause of action to recover compensatory damages, plus all reasonable investigation and litigation expenses, including attorney fees, at the trial and appellate courts.

Plainly, this subsection is limited to insurers. It contains two parts: 1) the elements for the insurer's cause of action and 2) the kinds of damages recoverable.

14

CONTINENTAL is trying to improperly graft the first part of subsection (5)(a) onto a claimant's cause of action. That cause of action is created and governed by the second relevant subsection, (7)(b):

> The provisions of this section shall also apply as to any insurer or adjusting firm or its agents or representatives who, with intent, injure, defraud, or deceive any claimant with regard to any claim. The claimant shall have the right to recover the damages provided in this section.

As the Court can see, subsection (7)(b) creates a cause of action for a claimant with different elements than those imposed in subsection (5)(a). It incorporates *only* the damages part from the other subsections of the statute, like subsection (5)(a). In contrast to an insurer's cause of action under subsection (5), a criminal adjudication is not an element of a claimant's cause of action under subsection (7)(b). Those elements are: 1) an insurer or adjusting firm or its agents or representatives 2) with intent 3) injure, defraud, or deceive any claimant with regard to any claim.

With respect to the magistrate judge in *Molina v. Provident Life & Accident Insurance Co.*, 2019 WL 3429889, at *3 (S.D. Fla. May 31, 2019), *report and recommendation adopted*, 2019 WL 7937935, at *1 (S.D. Fla, June 27, 2019), she misread the statute. Westlaw reveals that the order has not been cited by any other court for this point. This Court should not perpetuate the misinterpretation. The correct statutory analysis is that set out above.

Because a plaintiff asserting a cause of action under subsection (7)(b) is not required to allege a criminal adjudication, the Court should deny CONTINENTAL's motion to dismiss Count III.

### D. Count IV states a claim for abuse of process.

CONTINENTAL makes the same argument against Count IV, apparently verbatim, that it made in response to ACKLEY's motion for leave (DE 37 at 3–6), which the Court necessarily

rejected when the Court granted ACKLEY's motion. ACKLEY will repeat (with some revisions) the argument he made in his reply. (DE 42 at pp. 2-3).

CONTINENTAL argues that Count IV fails to state a claim because, according to it, CONTINENTAL had the constitutional right to be involved in the prosecution of ACKLEY. For this argument, CONTINENTAL cites certain rights found in article I, section 16(b)(6), of the Florida Constitution.

However, those rights were added to article I, section 16, as a result of a voter-approved constitutional amendment, Marsy's Law, *in 2018*. *See* Fla. Div. of Elections, Fla. Dep't of State, *Proposed Constitutional Amendments and Revisions for the 2018 General Election* 14–19, *available at* https://files.floridados.gov/media/699824/constitutional-amendments-2018-general-election-english.pdf. The rights CONTINENTAL points to did not exist when CONTINENTAL instigated the criminal prosecution in 2015. (SAC at ¶ 28.) Thus, the allegations of CONTINENTAL's involvement in the prosecution of ACKLEY from 2015 until 2018 are properly the basis of an abuse-of-process claim against CONTINENTAL.

The same is true of the post-Marsy's Law conduct because the rights CONTINENTAL relies on are more limited than it believes. The rights do not apply to CONTINENTAL's post-2018 involvement in the prosecution, which was dismissed in 2020. That can clearly be seen in the three rights CONTINENTAL quotes: "to reasonable, accurate, and timely notice of, and to be present at, all public proceedings involving the criminal conduct," Fla. Const. art. I, § 16(b)(6)a.; "to be heard in any public proceeding involving pretrial or other release," *id.* § 16(b)(6)b.; and "to confer with the prosecuting attorney concerning any plea agreements, participation in pretrial diversion programs, release, restitution, sentencing, or any other disposition of the case," *id.* § 16(b)(6)c. These carefully circumscribed rights do not give an alleged victim like

CONTINENTAL authorization to insinuate itself, behind the scenes, into a criminal prosecution. *That* conduct is not constitutionally protected and subjects CONTINENTAL to liability for abuse of process.

Count IV states a claim for abuse of process, and the Court should, therefore, deny CONTINENTAL's motion to dismiss that count. If the Court determines that the allegations in the complaint are not sufficient with regard to this post-2018 conduct, ACKLEY requests the opportunity to proffer a proposed complaint that is more detailed on that point.

### E. The Second Amended Complaint raises a plausible inference that CONTINENTAL engaged in fraud or bad faith.

CONTINENTAL makes the same argument about statutory immunity, apparently verbatim, that it made in response to ACKLEY's motion for leave (DE 37 at 6), which the Court necessarily rejected when the Court granted ACKLEY's motion. ACKLEY will repeat (with some revisions) the argument he made in his reply. (DE 42 at p.4).

Finally, CONTINENTAL argues that all four counts of the Second Amended Complaint fail to state a claim because it is immune from suit under Florida Statutes § 626.989(4)(c). That subsection immunizes persons like CONTINENTAL if they report suspected insurance fraud to the relevant state agency so long as there is no "fraud or bad faith" or malice. CONTINENTAL argues that "the allegations of the proposed SAC fail to raise a 'plausible inference' that Continental engaged in 'fraud or bad faith.'" (Def.'s MTD at 18 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 444, 555–56 (2007)).).

That simply is not true, and the lack of merit to the argument is illustrated by the amount of attention CONTINENTAL gives to the complaint's allegations when making the argument: none. Not even a bare citation. The proposed complaint is replete with allegations of fraud, bad faith, and/or malice. (*See* SAC at ¶¶ 25–33.)

## II. CONCLUSION

For the above reasons, ACKLEY requests that the Court deny CONTINENTAL's Motion to Dismiss Plaintiff's Second Amended Complaint.

Dated: December **9th**, 2022

Respectfully submitted,

BENRUBI LAW, P. A.
6501 Congress Avenue, Suite 118
Boca Raton, FL  33487
Phone: (561) 910-8650
Email: *RBenrubi@benrubilaw.com*
Secondary: *cgarcia@benrubilaw.com*

*Counsel for Plaintiff*

By: /s/ Richard M. Benrubi
RICHARD M. BENRUBI, ESQ.
Florida Bar No.: 796573

CERTIFICATE OF SERVICE

I hereby certify that on December **9th**, 2022, a copy of the foregoing Response was filed electronically.  Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

**LAURA BESVINICK, ESQ.**
**LISA A. PACH, ESQ.**
Stroock & Stroock & Lavan, LLP
200 So. Biscayne Blvd, Suite 3100
Miami, FL  33131
Email: *lbesvinick@stroock.com*
*lpach@stroock.com*

*Counsel for Defendant*

By: /s/ Richard M. Benrubi
RICHARD M. BENRUBI
*Counsel for Plaintiff*