```
 1                      UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF FLORIDA
 2
                            CASE NO. 22-CV-60377-RS
 3
      CHARLES ALBERT ACKLEY,
 4                                         Fort Lauderdale, Florida
                        Plaintiff(s),
 5                                         January 11, 2023
                vs.
 6
      CNA FINANCIAL CORPORATION, et al.,
 7
                        Defendant(s).      Pages 1 - 76
 8    ------------------------------------------------------------

 9                            MOTION HEARING
                 TRANSCRIBED FROM DIGITAL AUDIO RECORDING
10                BEFORE THE HONORABLE ALICIA O. VALLE
                       UNITED STATES MAGISTRATE JUDGE
11
      APPEARANCES:
12
      FOR THE PLAINTIFF(S):  RICHARD M. BENRUBI, ESQ.
13                           BENRUBI LAW, P.A.
                             1401 Forum Way
14                           West Palm Beach, FL 33401
                             (561) 296-3963
15                           rbenrubi@benrubilaw.com

16
      FOR THE DEFENDANT(S):  LAURA BESVINICK, ESQ.
17                           LISA ANN PACH, ESQ.
                             STROOCK & STROOCK & LAVAN, LLP
18                           200 South Biscayne Boulevard
                             Miami, FL 33131
19                           (305) 358-9000
                             lbesvinick@stroock.com
20                           lpach@stroock.com


21

22    TRANSCRIBED BY:        Joanne Mancari, RPR, CRR, CSR
                             Court Reporter
23                           jemancari@gmail.com

24

25
```

1    Thereupon,

2    the following proceedings were held via telephone:

3              THE COURT:  Good afternoon, everyone.  This is Judge

4    Valle.  Sorry.  We were having some technical difficulties, but

5    I hope you can all hear me now.

6              Can you hear me?

7              MS. PACH:  Yes, your Honor.

8              THE COURT:  All right.  Thank you.  I may have one

9    other issue.  Hold on.  Let me see if I can take care of it.

10             All right.  So I have admitted everyone.  I have a

11   couple of names.  I have Richard Benrubi's name popped up,

12   prepopulated, but I have two other phone numbers that I need to

13   identify.  So when I call out your number, please let me know

14   that it is you.

15             The first one is a 305 number ending in 9331.  Who is

16   that?

17             MS. PACH:  It's Lisa Pach, P-A-C-H, counsel for

18   Continental Casualty Company.

19             THE COURT:  P-A-C-H, correct.  Lisa.  It is attorney

20   for Continental, correct?

21             MS. PACH:  Yes, your Honor.

22             THE COURT:  All right.  Thank you.

23             The next number I have is a 305 number ending in 9395.

24   Please unmute yourself.  You can hit star 6 if you are on the

25   phone or unmute yourself on a computer.  Who is that?

```
 1              MS. BESVINICK:  I'm on, your Honor.  This is Laura

 2   Besvinick, your Honor, also on behalf of the defendants.

 3              THE COURT:  All right.  Give me one second so I can

 4   spell your name correctly.  B-E-S-V-I-N-I-C-K, right?

 5              MS. BESVINICK:  Yes, ma'am.

 6              THE COURT:  Thank you.  Give me one moment.

 7              (Pause)

 8              THE COURT:  I have someone else who just joined and I

 9   am going to admit.  I don't know who it is, but give me a

10   moment.

11              All right.  I have another number, and that is 561

12   ending in 8958.  You are muted.  Please unmute yourself and let

13   me know -- identify yourself.

14              MR. BENRUBI:  It is Richard Benrubi, and I think I am

15   unmuted.

16              THE COURT:  So the 561-8958 is Richard Benrubi?

17              MR. BENRUBI:  Plaintiff's counsel, Richard Benrubi.

18              THE COURT:  Thank you.  Got you.

19              Mr. Benrubi, we are doing this telephonically.  You

20   are welcome to remain on camera or you cannot --

21              MR. BENRUBI:  Yes.  I will exit the camera.

22              THE COURT:  But not the mute.

23              MR. BENRUBI:  Yes.

24              THE COURT:  Let me just make sure that I've got

25   everyone.  I have four participants, and that will be attorney
```

1    for Continental, Lisa Pach, Continental attorney Laura

2    Besinick.  I misspelled it.  Besvinick, typo.  Give me a

3    second.  Laura Besvinick, and plaintiff's attorney Richard

4    Benrubi.  Correct?

5              MR. BENRUBI:  Correct.

6              THE COURT:  Great.  I think I have got everyone on.

7    Those are the only three folks, in addition to myself, that I

8    have on here.

9              Is there anybody else who should be on the line who

10   isn't?

11             MS. BESVINICK:  Not to my knowledge, your Honor.

12             THE COURT:  OK.  Great.  The recording is already on,

13   so we'll begin with formally calling the case.

14             Calling the case Ackley -- is it Ackley or Ackley, by

15   the way?

16             MR. BENRUBI:  Ackley.

17             THE COURT:  Calling the case Ackley v. Continental

18   Casualty Insurance Company, case No. 22 Civil 60377.

19             This case has been assigned to Judge Singhal -- I'm

20   sorry, to Judge Smith, and he has referred the pending motions

21   to me for disposition, in this case report and recommendation,

22   as to three pending motions -- ECF Nos. 33, 53, and 64.

23             Before getting started, may I please have your

24   appearances formally in the record, beginning with plaintiff's

25   counsel.

1           MR. BENRUBI:  Yes, and thank you.  Good afternoon.

2    This is Richard Benrubi.  I represent the plaintiff Charles

3    Ackley.

4           THE COURT:  Mr. Benrubi, thank you for calling in.

5    Nice to meet you.

6           And for the defense.

7           MS. BESVINICK:  Laura Besvinick, your Honor, on behalf

8    of Continental Casualty Company, and with me is my colleague

9    Lisa Pach, also on behalf of Continental.

10          THE COURT:  All right.  Thank you again, ladies.  Nice

11   to meet you both by phone, and thank you for calling in.

12          Before getting started on the motions officially, I

13   just want to remind all of you of a few things having to do

14   with the system that we are using.  Because we are on the

15   telephone, please remember to state your name when you begin to

16   speak and also to speak clearly and slowly.  In fact, I am

17   going to ask you to speak a little slower than you normally

18   would because I find that sometimes when we use the audio

19   system, if we speak too quickly, the sentences end up getting

20   garbled at the end of our speech and we also end up speaking

21   over one another.  So just slow down a little bit.

22          The proceedings are being recorded by the audio

23   system.  We do not have a live court reporter taking things

24   down.  So it is important that we follow these measures in

25   order to ensure a more accurate recording in case we need a

1    transcript of these proceedings in the future.

2         As well, when you are not speaking, while someone else

3    is arguing, please mute your cell phone or your landline to

4    avoid background noise and interference that we sometimes get

5    during these telephonic hearings.

6         Finally, and probably most importantly, if at any

7    point during the hearing you get disconnected or you get

8    dropped off the call, which happened to me last time, all you

9    need to do is to call back into the main number that you dialed

10   into and you will rejoin us in progress.  I will know that you

11   have been dropped off the call one or two ways.  I will either

12   see that you have dropped off my screen, your name has dropped

13   off my screen, or I'll hear a little alarm that will go off

14   alerting me to the fact that you have either entered or left

15   the room.  So just call back in.

16        Speaking of which, I need to make sure that I change

17   the setting so that if you get dropped off we don't have a

18   waiting room set up.  So give me one second to do that.

19        (Pause)

20        THE COURT:  I'm just trying to disable the waiting

21   room next.  All right.  So if at any point you get

22   disconnected, you will come right back into the hearing.  The

23   waiting room has been disabled.

24        So that is just by way of background.

25        Today we are here on three motions.  We are here on

1    plaintiff's motion to compel production, that was filed on

2    August 29th, at ECF No. 33.  That motion is ripe for

3    adjudication.  The defendant responded at ECF-40, and plaintiff

4    replied at ECF-45.

5            The second motion is related, and it is plaintiff's

6    amended motion to overrule defendants' privilege objections and

7    compel production.  That is at ECF No. 53.  That motion is also

8    ripe.  The defendant filed its response at ECF No. 60.

9            Lastly, we have defendants' motion to compel better

10   responses.  That was filed at ECF No. 64, and the plaintiff

11   replied to that at ECF No. 67.

12           In conjunction with the motions, I have also read and

13   reviewed the parties' initial and supplemental joint status

14   reports.  They were filed at ECF No. 72 and ECF No. 83 in

15   advance of the hearing.

16           According to the latest supplemental JSR that was

17   filed on January 9th of this year, the issues remain in dispute

18   despite subsequent production by the defendant of additional

19   documents.

20           So normally what I do in this scenario is we will use

21   the JSRs to go through the motions.  But before doing that it

22   is my practice just to go over the relevant part of the record

23   and the deadlines that are upcoming to make sure that we are

24   all on the same page regarding the procedural status of the

25   case.

1          Here, we have plaintiff's -- the operative complaint

2    is plaintiff's second amended complaint, which was filed at ECF

3    No. 70 in November of 2022.  Defendants have filed a motion to

4    dismiss at ECF No. 71.  I mentioned the three pending motions

5    as ECF Nos. 33, 53, and 64.

6          The joint scheduling order in place in this case is

7    ECF No. 29.  The fact discovery deadline is March 3rd of 2023.

8    The expert discovery deadline is March 31st.  Mediation

9    deadline of April 7th.  And a calendar call and trial period in

10   September of 2023.

11         I also noted that on December 28th the parties filed a

12   joint motion to continue these pretrial deadlines and the trial

13   date, but that motion is not before me.  That is for the

14   district judge to handle.

15         What I'd like to do next is just begin our argument,

16   to hear oral argument on the motions.  I am going to give each

17   side 15 minutes to argue, and we will take them in the order

18   that they appear in the JSR.

19         We are going to start with 33 and 53 because they

20   really relate to plaintiff's first request for production.  So

21   we will do that jointly.

22         I will hear from plaintiff's counsel on that.

23         I will keep time.  It is an approximate timekeeping.

24   I am going to try to keep us to under an hour, but I will ask

25   you some questions.  If I interrupt your train of thought and

1    you run out of time and you need time to finish your thought or

2    make an additional point that you feel is material, let me know

3    and I will certainly give you additional time to do that.

4            Let me just start my timer so that I can kind of keep

5    tabs on us.

6            Actually, on this first motion, plaintiff, I am going

7    to give you 20 minutes.  If you would like to reserve five

8    minutes since it includes the attorney-client privilege issue

9    as well as the other one.  You will have 20 minutes.  Let me

10   know if you would like to reserve five minutes for rebuttal.

11           MR. BENRUBI:  Your Honor, is that time limit to argue

12   all of these categories?

13           THE COURT:  Yes, but 53 and 33 we are doing together

14   and I am going to give the parties 20 minutes on those.

15           MR. BENRUBI:  OK.

16           THE COURT:  Mr. Barubi, do you want to save five

17   minutes for rebuttal of your 20 minutes?

18           MR. BENRUBI:  Please.

19           THE COURT:  OK.  So you have 15 minutes, and I'll hear

20   you on the argument.  Again, I will be asking some questions as

21   we go along.

22           MR. BENRUBI:  Your Honor, just a correction.  My name

23   is Richard Benrubi.  So last name is Benrubi.

24           THE COURT:  I'm sorry.  Mr. Barubi is a public

25   defender here in Fort Lauderdale.  I have him in the courtroom

1     all the time.  I went back to the familiar.  I'm so sorry.  My

2     apologies.

3              MR. BENRUBI:  No worries at all.

4              Judge, before we get into the categories, a little

5     background information and some legal principles, just as a

6     reminder.

7              First of all, I want to remind the court that it is

8     defendants' burden to show that the privilege applies and that

9     it has not been waived, and that is according to the Sparrow

10    case that the defendant cited in their papers.

11             Some of the factual allegations, which must be taken

12    as true, when the DFS made their referral it knew plaintiff had

13    not committed any crime, but, rather, was looking to gain an

14    advantage in the civil litigation, and we know that because

15    documents they have produced show their liability and damage

16    that this was a legitimate injury for which liability was on

17    CNA's insured, and the case had a value of at least $65,000.

18             We allege that defendants withheld and presented

19    selective materials to the DFS, they withheld exculpatory

20    papers, and did not give DFS the full picture of what was going

21    on here.

22             So the focus of this malicious prosecution, abuse of

23    process action is the manner in which the defendant instigated

24    these criminal charges, how and why it arrived at the decision

25    to do so, and its modus for doing so.  Most importantly,

1   whether the defendant has reasonable grounds of suspicion that

2   plaintiff was guilty of committing insurance fraud.

3          Therefore, the facts that the defendant had, including

4   counsel's mental impressions, are virtually the only source of

5   information for plaintiff to be able to prove his case.

6          Starting with category one, your Honor, in category

7   one through seven of the requests to produce --

8          THE COURT:  Right.

9          MR. BENRUBI:  -- I think we can group those in

10  categorically because the defendant has the same opposition to

11  each of those.  I will address those one by one, those

12  oppositions.

13         First of all, it is our position that fact work

14  product does not apply as the subject documents were not

15  prepared in anticipation of litigation, but, rather, with

16  respect to the defendant reporting the plaintiff for insurance

17  fraud.

18         Now, it is a little confusing to me because if you

19  look at defendants' objection, their response is they object on

20  the basis of the attorney-client privilege and/or the attorney

21  work product doctrine.

22         As we know, there is fact work product and there is

23  attorney work product.  So it appears that the defendant is not

24  objecting based upon fact work product, although in their

25  position, as letter A, they say:  Ackley has never previously

1    argued that none of the FWP, fact work product, documents,

2    withheld by Continental were prepared in anticipation of

3    litigation.

4           Well, in fact, we did, your Honor.  Page 6 of our

5    motion we specifically state that very thing.

6           So it is our position, number one, they didn't object

7    based upon fact work product, it appears, and, number two, the

8    fact work product doctrine would not apply anyway because the

9    documents were not prepared in anticipation of litigation.

10          THE COURT:  I'm sorry.  As to request No. 1, I just

11   want some clarifications.  Who are the entities that are listed

12   in G, H, I and J?

13          I believe G I know.  Milian is Equity One's attorney

14   in the underlying civil suit.

15          Kubicki was Continental's attorney in the criminal

16   case against the plaintiff.

17          And I is Equity One, which is the insured.  I get

18   that.

19          Who is letter J?  I'm sorry.  Letter I, David Battle

20   and EMSI Investigative.  Who is that?

21          MR. BENRUBI:  That is the vendor that the defendant

22   used to conduct surveillance on Mr. Ackley during the

23   underlying litigation.

24          THE COURT:  So like a PI.

25          MR. BENRUBI:  Exactly.

1          THE COURT:  OK.  So he is the one who did the

2     surveillance.  OK.

3          MR. BENRUBI:  OK.  So, your Honor, that is fact work

4     product.  Then we go to attorney work product.  There's two

5     things there, your Honor.  There is issue injection, implied

6     waiver, and the Sparrow case that the defendant cites helps us

7     in that respect as well.  They talk about how in fairness you

8     can't make selective disclosure and expect to withhold the

9     other portion of those documents.

10          Let me read from the opinion.  Here.

11          "Courts will find that privilege/protected

12     communications were put at issue where it would be unfair for a

13     party who has asserted facts that place privileged

14     communications at issue to deprive the opposing party of the

15     means to test those factual assertions through the discovery of

16     those communications."

17          THE COURT:  All right.  Mr. Benrubi, how do you

18     respond to the defendants' argument in their papers that

19     they're not the ones who injected these issues into the case?

20     It was your complaint, your allegations, that included

21     allegations of malice and bad faith and lack of probable cause,

22     and that in asserting their affirmative defenses they are

23     merely responding to your allegations and they are not the ones

24     who injected it.

25          MR. BENRUBI:  Well, Judge, that might be true with the

1    probable cause and the not guilty defense, but they asserted an

2    immunity defense, your Honor, which immunizes them for their

3    reporting of the plaintiff to the Department of Insurance Fraud

4    in the absence of malice, fraud, or bad faith.  So the

5    defendants' state of mind, its good faith defense, is critical

6    to these issues.

7            In the Sparrow case -- again, defendants' case -- it

8    says that this is impliedly placed at issue where the party's

9    state of mind, such as its good faith belief in the lawfulness

10   of his conduct, is relied upon in support of a defense.

11           So, Judge, it could be both.  It doesn't have to be

12   one or the other.  But certainly with our allegations and their

13   defenses as framed by the pleadings, certainly the defendant

14   has injected their good faith behavior into this litigation,

15   and that should apply as a waiver.

16           Then, your Honor, there is the argument about --

17           THE COURT:  I'm sorry.  And that would be a waiver of

18   the attorney work product protection?

19           MR. BENRUBI:  Yes, your Honor.

20           THE COURT:  OK.

21           MR. BENRUBI:  OK.  Hold on a second.  So we just

22   discussed issue injection.  There is also the waiver of work

23   product and attorney-client privileges by voluntary disclosure

24   to third parties.

25           Your Honor, here we attach certain exhibits to our

1    motion which are documents from defendants' claims file.  It is

2    their claims diary.  The diary is about, I don't know, 200

3    pages, and a lot of it is redacted and other portions are not.

4         The portions that were not and the portions that they

5    gave to the Department of Financial Services contain the very

6    type of privileged communications that they are now arguing

7    against.

8         If you look at our Exhibits B --

9         THE COURT:  Well, let me stop you for a minute

10   there --

11        MR. BENRUBI:  -- E --

12        THE COURT:  -- Mr. Benrubi.  Am I incorrect in my

13   understanding -- I believe I read somewhere that the defendants

14   provided the documents that they turned over to the Department

15   of Financial Services or the fraud investigation to you

16   already.  Has that not been the case?

17        MR. BENRUBI:  They turned them over to me in redacted

18   form.

19        THE COURT:  Is that the same form in which they gave

20   it to the Department of Financial Services?

21        MR. BENRUBI:  Yes.

22        THE COURT:  So what you want is that request No. 14,

23   which we will get to, which is an unredacted version.

24        MR. BENRUBI:  Correct.

25        THE COURT:  OK.  But so far, just to be clear,

1    everything that they have turned over to law enforcement they

2    have turned over to you in the shape in which they have turned

3    it over to law enforcement; is that an accurate statement?

4         MR. BENRUBI:  I don't know that it is, your Honor,

5    because they objected to No. 1, and these are all law

6    enforcement entities.  Division of Insurance Fraud, Department

7    of Financial Services, the State Attorney's Office.  We don't

8    know.  All I can represent --

9         THE COURT:  Well, one of the reasons you don't know is

10   because you have that "subject to" and "without waiving the

11   foregoing objections" objection defendant will provide

12   relevant, nonprivileged documents otherwise responsive to this

13   request in the defendants' possession, custody, or control.

14        MR. BENRUBI:  Yes.  That's correct, your Honor, which

15   is improper.  The most I can represent to the court is that

16   this claims diary was given to us in the same form that it was

17   given to the authorities.

18        THE COURT:  OK.  But your argument, in effect, is that

19   their disclosure to third party waives whatever attorney-client

20   privilege or work product protection existed.

21        MR. BENRUBI:  Right.  What I was trying to stress,

22   your Honor, is they are objecting, for instance, on documents

23   concerning their liability evaluation, their damages

24   evaluation, their case evaluation, how they evaluated the

25   underlying claim.

```
 1              THE COURT:  How do you respond to defendants'

 2     argument -- because I know what you are asking for, and it

 3     makes sense.  Clearly the information is relevant.  That is not

 4     the issue here.  The issue is the attorney-client privilege and

 5     work product doctrine.

 6              How do you respond to -- gosh, I lost my train of

 7     thought.  I'm so sorry.  I confused myself.

 8              -- defendants' argument that -- it will come back to

 9     me.  I'm sorry.  I lost it.

10              MR. BENRUBI:  This stuff is very confusing.

11              THE COURT:  No, I just lost my train of thought.

12              MR. BENRUBI:  Yes, your Honor.  The case law is very

13     clear that you are not entitled to make selective disclosure,

14     and now they are asserting privilege over the same type of

15     documents that they already made public.  So that is our

16     argument there.

17              THE COURT:  All right.  So let's go on to the next

18     one.  I understand No. 1.

19              Let's talk a little bit about, No. 2 is asking for

20     notes regarding the defendants' decision to refer plaintiff to

21     law enforcement.

22              MR. BENRUBI:  Yes, your Honor.  How could that be

23     privileged?

24              THE COURT:  Well, according to the defense, if these

25     internal memoranda are between attorneys or the attorney and
```

1     the client, it may well be privileged.

2          MR. BENRUBI:  But they were not prepared in

3     anticipation of the litigation that they were defending.  They

4     were prepared for the purposes of referring my client to the

5     Department of Insurance Fraud.

6          THE COURT:  Well, wasn't this whole investigation of

7     Mr. Ackley's conduct during the litigation?

8          MR. BENRUBI:  I'm sorry?

9          THE COURT:  Wasn't that investigation conducted during

10    the claims processing process?

11         MR. BENRUBI:  Yes, but that doesn't give it blanket

12    immunity.

13         THE COURT:  OK.

14         MR. BENRUBI:  That leads into our next argument,

15    letter D -- no, letter -- hold on.

16         (Pause)

17         MR. BENRUBI:  That exceptional circumstances exist,

18    letter B.

19         Your Honor, we cited cases analogizing the situation

20    to the bad faith jurisprudence where the court has said, in

21    Ruiz in the Florida Supreme Court and then Cozort, which we

22    cited in the federal courts, that the plaintiffs should be

23    entitled to this type of information because it's virtually the

24    only source of proof to prove his or her case.

25         Everything that we need, your Honor, is going to be in

1    their files, because it is their state of mind that mattered

2    here.

3         THE COURT:   In response to what you just said, you

4    said that it wasn't prepared in anticipation of litigation, but

5    anticipation of litigation applies to waiver of the -- applies

6    only to work product protection, not to attorney-client

7    privilege.  Am I right?

8         MR. BENRUBI:  You are, but when we get into the

9    attorney-client privilege issue later on, the communication has

10   to be in the context of the rendition of legal services, not

11   just fact reporting.

12        THE COURT:   I totally agree with you that there is a

13   distinction between fact reporting and a real core protected

14   opinion, opinion work.  So we will talk some more about that.

15        MR. BENRUBI:  The problem is, your Honor, that there

16   might be both in certain particular documents.

17        THE COURT:   Right.  Now one thing that troubled me

18   about your motion, though, is -- the defendant did bring this

19   up -- which is that they have provided you with three privilege

20   logs purportedly.  I mean, I don't know if it is true or not.

21   They say you included two, but there's also, actually, three

22   privilege logs, and that the right way to attack the production

23   or the viability of the assertion of the privilege is to kind

24   of go through the log and identify those documents that you

25   think don't comply.

1          You're asking me instead to do a blanket ruling on the

2   applicability of the work product protection or attorney-client

3   privilege.

4          MR. BENRUBI:  Well, your Honor, I don't know -- by

5   those descriptions it is impossible for me to pick out which

6   documents might apply to each situation, and that is why we

7   might need an *in camera* inspection.  In fact, that is what the

8   courts say, is that a lot of times the court has to review

9   these documents and redact portions that are privileged and

10  leave unredacted portions that are not privileged.

11         We thought the best way to go about this, and I have

12  seen it done this way before, is to do it categorically and get

13  some legal rulings and then counsel and I can go through the

14  privilege log and match up the documents consistent with your

15  rulings.

16         THE COURT:  Mr. Benrubi, that is exactly what I'm

17  hoping to do.  Let's just hope I'm successful at the end of the

18  hearing because that is exactly how I envision this going.

19         MR. BENRUBI:  It is always difficult --

20         THE COURT:  So let's go to No. 3.

21         These are very fact-specific inquiries, but I think if

22  you get some general guidelines from me as to how I view the

23  applicability of the privileges, then the two of you will be

24  tasked with going back and refining the documents and the

25  privilege log based on my rulings.

```
 1              MR. BENRUBI:  Yes, your Honor.

 2              THE COURT:  All right.  No. 3 is case

 3    analysis/evaluation reports regarding the bodily injury.  So

 4    that is kind of self-explanatory.

 5              Four and 5 are investigative reports generated

 6    pertaining to the investigation of plaintiff.

 7              Now, in that regard -- by the investigation of

 8    plaintiff, you're talking about, again, that surveillance and

 9    the whole referral for fraud to the Department of Insurance,

10    correct?

11              MR. BENRUBI:  Yes.  Those are the only ones I know

12    about, your Honor.  It is interesting, --

13              THE COURT:  Right.

14              MR. BENRUBI:  -- investigation reports are facts, they

15    are fact based, and they are objecting based upon attorney work

16    product.

17              THE COURT:  Right.

18              Then in No. 5 you're asking for the claim notes --

19              MR. BENRUBI:  Correct.

20              THE COURT:  -- with reference to plaintiff's claim

21    only.

22              I think this is the question I was going to ask you

23    before and then it deluded me.  How do you respond to

24    defendants' argument that you're looking for discovery that's

25    really only appropriate in a bad faith action in the insurance
```

1    context, that party defense, and that this is not such a case?

2         MR. BENRUBI:  This is such a case.  It is just like a

3    bad faith action.  It involves their claims handling.  They

4    decided not to make any offers because they were putting these

5    criminal charges over my client's head.  So this all goes to

6    their claims handling.

7         Again, their immunity defense, the statute

8    specifically immunizes them if they didn't act in bad faith.

9    Now, that bad faith may have a different definition than we

10   have under bad faith failure to settle, but it's still bad

11   faith.  Those cases say these are exceptional circumstances to

12   meet the need and the undue hardship, virtually the only source

13   of proof in the claim.

14        THE COURT:  OK.

15        MR. BENRUBI:  Their claim notes, what was their state

16   of mind.

17        THE COURT:  I understand that.

18        Then in 8, 9 and 19 you're looking for claims manuals

19   and procedures, and they are objecting to that.  One of the

20   objections is that this information is confidential and

21   proprietary.

22        Have the two of you discussed the possibility of

23   agreeing to a stipulated protective order that preserves the

24   confidentiality of these documents?

25        MR. BENRUBI:  I don't recall if we have or not, but I

1    think we wrote in our papers that that is an appropriate

2    remedy.

3            THE COURT:  You did.  You did.  All right.  That goes

4    to 8, 9, and 19.

5            MR. BENRUBI:  Yes.

6            THE COURT:  What else do I have questions on?  Your

7    time is up and I do have some questions I want you to answer.

8            As to No. 14 -- I think this is a big point of

9    contention -- you're asking -- I'm assuming, and I am going to

10   confirm with the defendant, that they have provided you with

11   all documents that they have turned over in the referral

12   process to law enforcement and during the underlying criminal

13   investigation of Mr. Ackley.  But what you are asking for in

14   No. 14 are unredacted copies of those documents.

15           According to the defendant, I mean, the case was --

16   they desisted on the case because that is exactly the kind of

17   information that they did not want to provide, and that is why

18   the case was nulled.

19           What entitles you now to unredacted copies when they

20   never provided unredacted copies to anyone?

21           MR. BENRUBI:  Well, they did, your Honor.  They didn't

22   provide them, but we attached Mr. Morse's affidavit, who was

23   the criminal defense attorney.  After CNA did a privilege log,

24   he met with them at their offices and was allowed to review the

25   documents on the privilege log, and he checked off those which

1    he wanted produced and CNA refused to do it.  Since CNA refused

2    to cooperate and abide by the court order, the state had to

3    nolle pros the charges.

4         So what we have here, again, is disclosure to third

5    parties.  They showed the documents to Mr. Ackley's criminal

6    defense attorney.  So that is a waiver.

7         Then also back to exceptional circumstances and what

8    fairness dictates, your Honor.  They redacted portions.  They

9    didn't redact other portions that talk about the same subject

10   matter.  So they are giving us the stuff that they want to give

11   us but trying to hide the stuff that they don't want to give

12   us, and that is exactly what the case law says they can't do.

13        THE COURT:  All right.  Let me turn your attention to

14   request No. 16.  You're asking about defendants' presentation

15   to a fraud committee.

16        Defendant objects saying that the term fraud committee

17   is unclear.  I kind of tend to agree with them.  What are you

18   referring to?

19        MR. BENRUBI:  I took it from their log notes, your

20   Honor.  They apparently have a fraud committee that is managed

21   by a CNA employee and that reviews claims for the determination

22   as to whether they are going to refer a claim to the Department

23   of Insurance Fraud.

24        THE COURT:  So to be perfectly clear, this would be

25   Continental's internal fraud committee, correct?

```
 1              MR. BENRUBI:  Exactly, your Honor.

 2              THE COURT:  For their determination as to whether or

 3    not a referral is warranted.

 4              MR. BENRUBI:  Correct.  We were imprecise with our

 5    language, but, again, their log notes have several references

 6    to their fraud committee.

 7              THE COURT:  All right.  Let's turn to No. 18.  No. 18

 8    asks for defendants' communications with, among its employees,

 9    among the defendant and its employees and the following:  Legal

10    counsel for Eilerson Development Corp.

11              Who is Eilerson?

12              MR. BENRUBI:  There were two defendants, your Honor.

13    There was the Equity One, which was the property owner, and

14    then, I believe, Eilerson was the property manager.

15              THE COURT:  So it was a second defendant?

16              MR. BENRUBI:  Yes.  Eilerson was a second defendant.

17              THE COURT:  What is IRT Coral Springs?

18              MR. BENRUBI:  The other two were people who did some

19    work at the property that CNA was looking at bringing in but

20    they never did.

21              THE COURT:  And Countryside?

22              MR. BENRUBI:  Same.

23              THE COURT:  Work at property.

24              MR. BENRUBI:  Correct.

25              THE COURT:  OK.  Now you mention in your position here
```

1   in the JSR that there is no joint defense privilege.  I was

2   looking over the defendants' privilege and I did not see that

3   they had asserted such a privilege.  Did I miss something?

4            MR. BENRUBI:  I think they did.

5            THE COURT:  OK.  I will ask them.

6            MR. BENRUBI:  OK.

7            THE COURT:  No. 19 we did.

8            No. 20 are nationwide referral logs, 2012 to 2014.

9            I understand why you want it, but how are other

10  referrals relevant to whether or not the Ackley referral was

11  appropriate?

12           MR. BENRUBI:  Your Honor, because we have a pending

13  claim for punitive damages, and one of the things that the

14  judge or a jury assesses is the reprehensibility of the

15  defendant's conduct.  One of the ways we assess the

16  reprehensibility is repeated conduct.

17           That is the whole basis for this request, to see how

18  widespread they're trying to put claimants under their thumb

19  that are asserting personal injury claims.

20           THE COURT:  All right.  Do you have any basis to

21  suspect that they were doing improper or illegal referrals of

22  other plaintiffs?

23           MR. BENRUBI:  I do.

24           THE COURT:  And what is that?

25           MR. BENRUBI:  Well, I don't know how probative this

1    is, your Honor, but before filing this case I did a lot of

2    research on CNA and their websites.  They market how aggressive

3    they are with detecting fraud and how they have these new

4    state-of-the-art artificial intelligence systems to detect

5    insurance fraud.

6        Again, do I have anything solid, but, no, this is

7    discovery, and we have a punitive damages claim.  Again, the

8    only way we can prove it is by proving that the

9    reprehensibility was bad, that they didn't only do this to our

10   client.

11       THE COURT:  Right.  Now, I know that we were only

12   going to talk about these 33 and 53, but it caught my attention

13   that in the joint status report, the supplemental joint status

14   report filed on January 9th, at page 3 of that report there is

15   a joint status report regarding a third request for production,

16   but I didn't see any motions regarding that.  What am I

17   missing?

18       MR. BENRUBI:  You're not missing anything, your Honor.

19   We conferred and we thought that since we already have all

20   these issues before the court that we should put this issue

21   before the court as well while we are altogether.

22       THE COURT:  OK.  So that makes sense.  There is no

23   independent motion pending, but this is another dispute that

24   you're bringing to my attention during the hearing.

25       You both conferred and agreed on this joint status

1   report, right?

2           MR. BENRUBI:  That's correct.

3           THE COURT:  OK.  So might as well address that now

4   since it is plaintiff's motion, 64.

5           These are third requests for production and you're

6   looking for, No. 1, recordings made by Continental or National

7   with the Florida Department of Financial Services in general,

8   not just limited to the plaintiff, correct?

9           MR. BENRUBI:  Hold on.  Well, your Honor, I have to

10  look at the statute because I think there were two of them.

11  Yes, there is 989.  So this one actually pertains to the

12  statutory requirement that every insurer files an antifraud

13  plan with the Florida Department of Insurance.  So we want to

14  see what their antifraud plan was, how it worked, who was

15  involved, what the criteria was.  So this is a document that

16  they are required to give to the State of Florida.

17          THE COURT:  OK.  So that is their antifraud plan,

18  period.

19          MR. BENRUBI:  Yes.  Correct.

20          THE COURT:  OK.

21          MR. BENRUBI:  Then the next request is like No. 20 in

22  that it is looking for others that they reported.

23          THE COURT:  Right.  That is it.  Those are the only

24  two at issue in there.

25          Thank you very much for answering my questions.

1    Anything else you want to add before I turn it over to

2    Continental?

3              MR. BENRUBI:  No.  Thank you, your Honor.

4              THE COURT:  All right.  Thank you.

5              All right.  Who is going to be arguing on behalf of

6    Continental?

7              MS. BESVINICK:  I am going to argue, your Honor.  This

8    is Laura Besvinick.  If Ms. Pach chimes in, she will identify

9    herself in case there are questions that she has the answers to

10   that I don't.

11             THE COURT:  All right.  Thanks.  This is just a

12   response.  We will do your motion separately.

13             MS. BESVINICK:  Totally understand, your Honor.  And

14   approximately how much time would I be allocated?

15             THE COURT:  You will have 20 minutes.

16             MS. BESVINICK:  OK.  So we are here on plaintiff's

17   motions to compel.  I think, as Mr. Benrubi indicated, it is

18   good to level set.

19             As you know, CNA -- I will just say CNA; it is

20   shorter, your Honor -- referred Mr. Ackley's claim to DFS after

21   deposition testimony surveillance that suggested that he was

22   exaggerating his injuries and then a further deposition where

23   he did not withdraw his assertion regarding the severity of his

24   injuries.

25             It wasn't about whether there was an accident -- it is

1    about the severity of his injuries -- that resulted in the

2    reporting to DFS under the relevant statute, which is, as Mr.

3    Benrubi noted, is 626.989(9).  Excuse me.  989(6).

4            What that statute states, and I think this is

5    important, is that any insurer having knowledge or who believes

6    that a fraudulent insurance act has occurred or is being

7    committed shall send to the Division of Investigative and

8    Forensic Services a report or information pertinent to such

9    knowledge or belief.

10           That is mandatory.  There is another part of the

11   statute where if you are not an insurer it is discretionary.

12   It says may report.  But for insurers, it is a mandatory

13   requirement that acts of suspected insurance fraud be reported

14   to the State.

15           The division then, according to the statute, must

16   review that information or report and select such information

17   or reports as, in its judgment, may require further

18   investigation.  It -- that is, the Department -- shall then

19   cause an independent examination of the facts surrounding that

20   information or report to be made to determine the extent, if

21   any, to which a fraudulent insurance act is being committed.

22           They are then supposed to report any alleged

23   violations of law to the appropriate licensing agency or state

24   attorney who has jurisdiction over the process, and the process

25   proceeds.

1          That is what Florida law sets forth and requires and

2     that is what gives rise to the statutory immunity that we spoke

3     about earlier.

4          We see that is exactly what occurred here in

5     Mr. Ackley's case, which is after the information was provided

6     to the State, and I want to make sure your Honor understands

7     this.  Everything we provided to the DFS we have produced to

8     Mr. Ackley in this case.  It was provided in a redacted form to

9     the DFS.  That's the form in which it was provided to

10    Mr. Ackley in discovery.  So it is not a matter of a selective

11    disclosure of what information was provided to the DFS.

12         The DFS then investigated itself and determined to

13    recommend --

14         THE COURT:  I'm sorry.  Let me stop you there for a

15    second just to clarify something.

16         MS. BESVINICK:  Certainly.

17         THE COURT:  That is, does that go to documents that

18    you provided to the prosecuting offices as well?

19         MS. BESVINICK:  My understanding, your Honor, is that

20    what we provided to the DFS, DFS then provided to the

21    prosecutor.

22         The documents that Mr. Benrubi was talking about that

23    were shown to Mr. Ackley's defense counsel were shown to him in

24    an effort to resolve a dispute regarding the privilege; it

25    wasn't with a waiver in production.

1        As your Honor noted, at the end of the day we made the

2    determination that we could not produce those documents because

3    the civil action that Mr. Ackley had pending against our

4    insured was still pending.  So we were not in a position to

5    disclose work product or internal documents to Mr. Ackley when

6    he was still suing our insured because we owe an obligation to

7    our insured.  We can't provide that information to Mr. Ackley.

8    We can't do that.

9        So at the end of the day the matter was nolle pros'd,

10   as your Honor noted.

11       My understanding is that we have -- and Ms. Pach will

12   correct me if I'm wrong -- is that everything that was provided

13   to any law enforcement, whether it was the DFS or the state

14   attorney or anybody, Mr. Ackley's counsel has.

15       By the same token, and I wanted to get into this when

16   we talked about the privilege and why this is not about

17   selective disclosure, we have made a very careful review, as I

18   think the privilege log reflects, of every document.  What we

19   did is -- this is what we tried to do.  We produced everything

20   that had to do with Mr. Ackley except things that were work

21   product or attorney-client privilege.

22       What we did was we produced every communication with

23   law enforcement.  Whether anybody might think that was work

24   product in service of the underlying case or not, we produced

25   that.  If it was a note describing the communication with law

1    enforcement, we produced that.  Because what we tried to do was

2    say we were defending our insured.  That's one of the

3    privileges that is at issue here.

4         As your Honor knows, there is a tripartite privilege

5    between the insurer, defense counsel for the insured, and the

6    insured.  That is one of the attorney-client privileges and

7    work product issues that are protected here.

8         All of that should be protected.  Mr. Ackley is

9    adverse for those purposes.  He shouldn't get that.  That is

10   privileged as against him and it is work product as against

11   him.

12        So what we did, recognizing what we are being sued

13   for, we produced everything that were these communications with

14   law enforcement with these -- essentially law enforcement is,

15   of course, a third party.  We produced that information to

16   Mr. Ackley here, and you will see that there are claims notes

17   and other emails internal that were produced because they

18   described the communications that occurred with law

19   enforcement, so that that would be provided for purposes of

20   this case.

21        What we invoked privilege for was the defense of our

22   insured, joint defense with other codefendants against

23   Mr. Ackley, and communications with our own lawyers when

24   documents and testimony were requested from the company during

25   Mr. Ackley's criminal prosecution, our attorney-client

1    privilege, our work product.

2          So that was the line.  I wanted your Honor to

3    understand the line that we drew because, for example, just

4    looking at request No. 1 of the document request, it requests

5    communications both with law enforcement, which we provided,

6    but it also requests communications with the Law Offices of

7    Lorraine Lester and Ros Milian, who we would not produce

8    because those are the lawyers who are representing our insured.

9    And Kubicki Draper was the law firm representing the company in

10   connection with documents that were requested and testimony

11   that was requested in Mr. Ackley's criminal prosecution, and

12   Equity One, the codefendant, with whom we shared a privilege as

13   against Mr. Ackley during the --

14         THE COURT:  What about Mr. Battle?  He basically was

15   the one who went out there and did the surveillance.  Why is he

16   not a fact witness?

17         MS. BESVINICK:  Well, let's be clear.  The

18   surveillance that we got on Mr. Ackley was provided to the

19   State and has been produced to Mr. Ackley.  He has that.  I

20   don't know off the top of my head, your Honor, as I sit here

21   today whether there are specific additional communications with

22   Mr. Battle, but if we retain a private investigator in the

23   course of the defense of our insured, that is core work

24   product.  That is absolutely core work product.

25         What takes this out is if we say, here, we believe we

1    have suspected insurance fraud so we are providing this

2    information, as we are statutorily required to do, to the State

3    of Florida, and that information -- and that is the question --

4    that information that was provided to the State, you have that.

5    I mean, that's been produced to you.

6            So that is the line that was drawn.

7            The other statute that's been raised is 626.989(1).

8    This deals with some of what I will a call the systemic

9    reporting that has been requested in the case.  The fraud plan,

10   which is at 2 of that statute, requires the creation of a fraud

11   plan, and the fraud plan, the antifraud plan has to include

12   certain procedures for detecting and investigating fraud.

13           That's made confidential under the Public Records Act

14   because that is not something that from a statutory perspective

15   the State wants out.  I mean, these are confidential from

16   people who might be looking at trying to commit fraud.

17           THE COURT:  Let me ask you this.  Let me stop you

18   there for a minute.

19           MS. BESVINICK:  Certainly.

20           THE COURT:  With reference to the public disclosure

21   stuff, I mean, that's different than a court order.  Certainly

22   I would imagine that you'd agree with me that if you were

23   required by court order to produce that you'd have to.  Is that

24   correct?  Even though it's not discoverable under the Sunshine

25   law, that just speaks as to public records request.  It doesn't

1   bind me.  Is that correct?

2          MS. BESVINICK:  I would say two things, your Honor.

3   One is, I follow court orders.  Let's just be clear about that.

4   If your Honor enters an order, we are going to follow it.

5          THE COURT:  It wasn't a trick question.  It wasn't a

6   trick question.

7          MS. BESVINICK:  That is an easy question.  That is not

8   a trick question.

9          THE COURT:  Right.

10          MS. BESVINICK:  But the second part of that is if it

11   does change the standard for production, right, there has to be

12   an exceptional necessity for the production.  What I would say

13   is it is not really relevant here.  I mean, we are being sued

14   for malicious prosecution.  I mean, at the core of this case is

15   whether we properly or improperly reported Mr. Ackley for

16   suspected insurance fraud.

17          That's what this is about.  We are going to win or

18   lose based on that.  It is not based on whether we have an

19   antifraud plan with the State of Florida or what that antifraud

20   plan says.

21          Respectfully to Mr. Benrubi, if we have an aggressive

22   stance on fraud -- regulators want us to have an aggressive

23   stance on fraud.  That is why we are required to have an

24   antifraud plan.  Fraud in Florida is a problem.

25          The fact that people are reported for suspected

1   insurance fraud doesn't actually prove anything one way or the

2   other except that we're complying with our statutory

3   obligations under the statute.  If we report people for

4   suspected insurance fraud and they're on a list, that doesn't

5   say that it is right or wrong that they were reported for

6   suspected insurance fraud.

7           That's sort of the second part of this statute, which

8   is these reports of suspected insurance fraud are also exempt

9   from public disclosure because they may result in someone's

10  conviction, they may result in someone's arrest, they may not.

11  It depends what the Division determines to do with the report

12  and the information that an insurer or some third party

13  provides to the Department.

14          THE COURT:  Let me stop you for a minute.  In terms of

15  what the plaintiff is arguing, they're arguing that they should

16  be looking at those reports to see if in fact you acted in

17  accordance with the procedures or the report, your fraud plan

18  that you reported.  If you didn't and you kind of went out of

19  your way to ding Mr. Ackley in order to intimidate him, then

20  that is a problem.  I think that is what he is trying to find

21  out.

22          MS. BESVINICK:  No, I understand that.

23          By the way, while we are on that point, Mr. Benrubi

24  has misdescribed the fraud committee.  That is not the fraud

25  committee.  There is one or two references to the fraud

1    committee in these notes.  There is nothing in the record to

2    say that that is what the fraud committee does, and I don't

3    believe it is accurate.  So I just wanted to pause on that.

4         With respect to his burden, and this is why I think it

5    is relevant that this is not a bad faith case, right.  In a

6    punitive damages bad faith case in Florida, it is an element of

7    the plaintiff's case to show the existence of a general

8    business practice, that the acts occur with such frequency as

9    to constitute a general business practice.

10        That is not an element of Mr. Ackley's claim.  For him

11   to get punitive damages he has to show the kinds of things he

12   has to show, in terms of malice and bad intent and all the rest

13   of those things, which we would submit there is nothing in this

14   record to support.

15        It is not a matter of pattern or manual in terms of

16   deciding that.  The reason manuals are produced in bad faith

17   cases is because having certain claims handling practices and

18   guidelines in place is part of what your requirements are as an

19   insurance company.  They are deemed relevant in a bad faith

20   case.

21        That is not this.  Here the question is, was there

22   probable cause, were our reports appropriate, and at the end of

23   the day was there probable cause.  I mean, we stopped in the

24   middle of this, but if as referred Mr. Ackley, the prosecutors

25   picked it up, brought the charges, and the magistrate found

1    probable cause, and Mr. Ackley was arrested and prosecuted for

2    some time until the case was eventually nolle pros'd.  I mean,

3    it went through each of these independent steps.

4           So we are getting a little bit far afield, but I just

5    wanted to put this in the context of the statutory requirements

6    of what Continental is doing, what it is required to do, and

7    that --

8           THE COURT:  Let me ask you this.  Let me stop you for

9    a minute and ask you this.

10          Would you agree with me that following established

11   procedures would tend to -- whether or not you followed

12   established procedure would tend to either prove or disprove

13   circumstantially malice?

14          MS. BESVINICK:  I don't know that I can agree or

15   disagree with that as I sit here today, your Honor, frankly,

16   without looking at the case law --

17          THE COURT:  Right.

18          MS. BESVINICK:  -- on the issue.

19          MR. BENRUBI:  I would agree with it, your Honor.

20          THE COURT:  That is your argument, Mr. Benrubi.  I

21   understand.

22          MS. BESVINICK:  So I want to get back, your Honor, if

23   we are on the motion to compel on work product and

24   attorney-client privilege, to get back to that.

25          I wanted to start with what we had to do --

1          THE COURT:  Before you start down that path, I have a

2     question for you.

3          MS. BESVINICK:  Yes.

4          THE COURT:  In terms of the documents that you have

5     produced to the plaintiff, have you made a distinction between

6     fact work product and opinion work product in your production

7     or have you just blanketly asserted a work product protection

8     and excluded all of those documents?

9          MS. BESVINICK:  We have asserted both forms of work

10    product, your Honor, but what I would say is this.  To the

11    extent -- this is what I'm pausing on, your Honor.

12         We produced everything that had to do with what I will

13    a call the referral side, right, in terms of the referral to

14    the DFS.  So, for example, your Honor asked earlier about

15    Mr. Battle.  It might be that the investigative work would not

16    have been produced, but because that work product is provided

17    to the State and that's the basis for what the State did, that

18    was produced.  With respect to work product during the course

19    of the defense of our insured, we asserted that.

20         This is not a claims handling case.  This is a

21    question about malicious prosecution or abuse of process or the

22    various counts that Mr. Benrubi has asserted on Mr. Ackley's

23    behalf.  What it is most assuredly not is a case about the

24    handling of the defense of our insured and the resolution of

25    Mr. Ackley's case, which was settled within policy limits.

1    There is no bad faith case here.  It is not about claims

2    handling.

3         So what we endeavored to do, your Honor, is to produce

4    all of the documents that talked about the communications with

5    law enforcement, the communications with the DFS, notes

6    describing the communications with DFS even if those notes were

7    internal.  So that was our sort of rule of thumb in trying to

8    make the production to the plaintiff.

9         MR. BENRUBI:  If I may, because I'm confused.

10        THE COURT:  I'm sorry, Mr. Benrubi.  If you have an

11   objection -- I should have said this.  I usually say this

12   during my opening remarks -- just make a note of it and when it

13   is your turn for rebuttal, you may address it.  I don't allow

14   ping ponging.

15        MR. BENRUBI:  I know.  It is just hard to remember.

16        THE COURT:  I know.  Just make a note.

17        Go ahead.  I'm sorry.

18        MS. BESVINICK:  Thank you, your Honor.

19        So that is what we did.  We produced the notes or

20   communications with third parties or a note that factually, and

21   this goes to your fact work product versus opinion work product

22   question, your Honor, factually described that communication

23   with the third party.  That was produced.

24        If it is an opinion work product issue or an internal

25   discussion that would fall in the guise of opinion work product

1   or with counsel internally, attorney-client privilege, we would

2   assert the privilege and we would assert work product.

3       That is why I think it comes down to and that is why

4   we did this very individuated, detailed privilege log, and we

5   did not previously, or any concern that the privilege log did

6   not meet the requirements of the rule in terms of it being an

7   adequate description of the documents and the privileges

8   asserted.

9       Your Honor, if I could, may I proceed to the work

10  product and the privilege issues?

11      THE COURT:  Yes.  Let me just stop the timer.  Go

12  ahead.

13      MS. BESVINICK:  So with respect to work product and

14  the at issue doctrine, I think your Honor understands.  Our

15  view is that there is not an at issue waiver here.  We are

16  defending ourselves against the claim that is brought against

17  us.

18      The immunity effectively tracks the elements on

19  probable cause and says if we did this not in bad faith that we

20  are immune from suit for making a report of suspected insurance

21  fraud.

22      So, your Honor, that is on the at issue doctrine.  I

23  don't think there is any basis that defending yourself creates

24  an at issue waiver.

25      With respect to disclosure to third parties,

1    disclosure to law enforcement I think I addressed.  We produced

2    the things that we disclosed to the third parties.

3         Disclosing to the lawyers who represent our insured is

4    obviously not a disclosure to a third party.  Disclosing to

5    codefendants who you are jointly defending the case with is

6    likewise not a disclosure to a third party in terms of work

7    product.

8         As your Honor pointed out, that is at the end of the

9    day what happened, which is we declined to make a disclosure

10   and, consequently, the matter against Mr. Ackley was nolle

11   pros'd.

12        THE COURT:  With reference to the defendants, that I

13   know we went through, and it was Coral Ridge IRT and the other

14   two, Eilerson, and I forget the third plaintiff, did you have a

15   joint defense agreement with those other entities?

16        MS. BESVINICK:  I think under Visual Scene v.

17   Pilkington, your Honor, there does not need to be a written

18   joint defense agreement.  The question is whether there is a

19   common interest, is another way to describe it.

20        We have addressed Visual Scene in our papers, which is

21   if there is a common interest in defending the suit that to the

22   extent the communications are in service of that common

23   interest they remain protected.

24        So with respect to the last issue on work product,

25   which is opinion work product, I'd note that, and this is in

1    the brief, your Honor, even the cases that Mr. Benrubi cites

2    respect the opinion work product.  These cases of Burbar and

3    Conte, which were cited by Mr. Benrubi, are cases in which the

4    court shielded the documents from disclosure for opinion work

5    product.

6          So even if the court were inclined to determine that

7    fact work product should be produced, and we don't agree given

8    the description that I provided to your Honor, certainly we

9    would draw the line at opinion work product.  That is not the

10    kind of information that should be presented to Mr. Ackley

11    here, and this is not Allstate v. Ruiz.

12          Again, this is not a bad faith case where the Florida

13    Supreme Court recognized really a narrow exception for bad

14    faith cases.  That has never been applied.  We have looked.  I

15    have never seen it applied in a malicious prosecution context.

16    Never.

17          So the crime fraud exception, I don't think we need to

18    spend a lot of time on it unless your Honor wants to hear about

19    it.  There is nothing here that meets the crime fraud

20    exception.  There is no fact or evidence submitted that would

21    support the application of the crime fraud exception.  So

22    unless your Honor would like me to address it, I am going to

23    move along.

24          THE COURT:  No, I don't have anything on that.

25          I want you to talk about No. 14, request No. 14, an

1  unredacted copy of the document provided to the Florida

2  agencies.

3       MS. BESVINICK:  Yes.  Yes.  To the extent that the

4  redactions were for work product or attorney-client privilege,

5  and I don't have all the redactions in front of me, your Honor,

6  the redactions were for work product and attorney-client

7  privilege.  Those privileges are exactly the same today that

8  they were when the documents were provided to the State.  So

9  they are not part of what the decision-making process was at

10 the State in making the referral of Mr. Ackley for further

11 prosecution, for prosecution.

12      THE COURT:  Let me ask you a question, Ms. Besvinick,

13 in that regard.

14      MS. BESVINICK:  Yes.

15      THE COURT:  Again, I reviewed a lot of the attachments

16 that were attached to the complaint as well as to the different

17 motions here, and I saw a lot of claim notes -- I'm calling

18 them claim notes -- from Virginia Fisher, for example.

19      MS. BESVINICK:  Yes, ma'am.

20      THE COURT:  Virginia Fisher, she is the one that says

21 the plaintiff's claimed injuries may be exaggerated but he did

22 have an accident, he did have a surgery, he does have damages,

23 in effect.

24      MS. BESVINICK:  Yes.

25      THE COURT:  And she values the case at about $65,000.

1          Is that something that was turned over to the State or

2    was that something that was redacted?

3          MS. BESVINICK:  My belief, your Honor -- and,

4    Ms. Pach, correct me if I'm wrong because I don't want to say

5    something to the court that I don't know 100 percent

6    accurately.  I believe that the notes that are attached are the

7    notes that were provided in that form to the State.

8          Ms. Pach, can you confirm that?

9          MS. PACH:  Yes.  I would agree with that, yes, those

10   were notes provided to the State.

11         MS. BESVINICK:  So the redactions are the same

12   redactions.  So if you see the information, it's because that

13   information was provided to the State.

14         THE COURT:  OK.

15         MS. BESVINICK:  I was very concerned to make sure that

16   what we produced to Mr. Benrubi in this case is what we gave to

17   the State.

18         THE COURT:  Right.  So if Mr. Benrubi is saying that

19   the exculpatory information that was not provided to the State

20   was Ms. Fisher's assessment of liability and of value, that

21   would be incorrect.

22         MS. BESVINICK:  That is my understanding.

23         Ms. Pach.

24         MS. PACH:  I'm sorry.  Your Honor, could you please

25   repeat the question?

1           THE COURT:  Sure.  It was a little weird question.

2           If Mr. Benrubi is arguing that Continental

3    misrepresented the, quote-unquote, fraud to the state attorney

4    by withholding information from Ms. Fisher's claim notes that

5    the case had value, that an injury had occurred, and that the

6    case was valued at about $65,000, if the omission is that, if

7    the claimed omission is Ms. Fisher's valuation of the case in

8    liability, that would be incorrect because it was provided, is

9    that correct?

10          MS. PACH:  I'm just looking at one thing.

11          THE COURT:  Do you understand my question?

12          MS. PACH:  Yes, I did.  I am looking at the exhibit

13   right now just to confirm because certain documents had certain

14   numbers on them and so I could tell you, your Honor, with

15   certainty.

16          I'm fairly certain that is correct, yes, that

17   Ms. Fisher's notes were turned over to the State.

18          THE COURT:  The only reason I'm reading about it is

19   because that has been provided in discovery, correct?

20          MS. PACH:  Yes.

21          THE COURT:  OK.

22          MS. BESVINICK:  Your Honor, what I can tell you, if

23   there is any question at all, is that we want to be sure that

24   everything that was provided to the State is being provided to

25   Mr. Ackley's counsel in this case, and by the State I mean DFS,

1    the prosecutor, anybody at law enforcement anywhere.

2          So with respect to privilege, your Honor, as you

3    recognized, whatever the question is in terms of need on work

4    product, it doesn't apply to the attorney-client privilege.

5    The attorney-client privilege isn't overcome by need or

6    relevance.

7          In this case we believe that the privilege log shows

8    in terms of where the privileges have been raised, in terms of

9    who the lawyers are and who they were representing, and that

10   there has not been any waiver with respect to that.

11         The disclosure argument to third parties with respect

12   to Mr. Morse, the defense lawyer who looked at the Continental

13   documents, that were then subsequently not produced to him

14   because Continental refused to waive the privilege and produce

15   the documents, that was a limited number of documents, that was

16   some number of documents, but certainly we have cited your

17   Honor authority for this proposition.  It was in an effort to

18   try to resolve the discovery dispute prior to Mr. Ackley's

19   scheduled criminal trial, which they weren't able to resolve

20   the dispute and the trial did not go forward.

21         With respect to everybody else that received any

22   documents that are being withheld were within the privilege as

23   against Mr. Ackley.

24         Likewise with the at issue doctrine, I think the

25   application and the crime fraud exception, the application in

1    the privileged context is the same.

2           Your Honor, we don't think there is a basis here for a

3    blanket waiver of privilege as is being requested by counsel.

4    We don't think there is certainly a basis for a blanket waiver

5    of opinion work product nor do we believe that there is

6    actually a basis to invade the fact work product.

7           THE COURT:  All right.  I am going to stop you because

8    I have already given you 30 minutes.

9           Is there anything else?

10          MS. BESVINICK:  There is the other category of

11   documents, your Honor, which are the systemic reporting

12   documents.

13          THE COURT:  You mean the referral logs and that kind

14   of thing.

15          MS. BESVINICK:  Correct, your Honor.

16          THE COURT:  Yes.  I am OK with that.

17          MS. BESVINICK:  If your Honor is comfortable on that,

18   then thank you very much.

19          THE COURT:  I am going to ask Mr. Ben -- sorry.  I was

20   going to call him Mr. Barubi again -- Mr. Benrubi to please

21   address -- you have five minutes for rebuttal.

22          MR. BENRUBI:  Thank you, your Honor.

23          Just generally, our position, as you mimicked, is

24   important and is proper.  We are looking for discovery of these

25   materials to see if the defendants went rogue.

1              In a slip-and-fall case you're entitled to get the

2       grocery store's procedures for inspections and cleaning, etc.,

3       and you get to argue that if they didn't follow their own

4       procedures, that is evidence of negligence.

5              Here, if their fraud plan or their documents say, hey,

6       wait a minute, we can't even meet the civil standard of fraud

7       on the court regarding Mr. Ackley's conduct, then that is

8       certainly relevant and not privileged.

9              Your Honor, I want to remind you what Mr. Morse swore

10      to in his affidavit when he was allowed to see these documents.

11      At paragraph 13 he says some of these documents are indeed

12      exculpatory and speak to the issue of whether CNA believed it

13      had sufficient facts to support even the civil standard of

14      fraud.

15             So, your Honor, they have given us documents that talk

16      about how our insured is liable and we know an accident

17      happened and we just feel he is exaggerating his injuries, but

18      they haven't given the documents that go deeper and perhaps

19      have comments that, hey, what are we doing here.  I believe

20      Ms. Fisher wrote a memo to the SIU unit saying, hey, wait a

21      minute, what are we doing here; we know there was an injury; we

22      can't meet the civil standard of fraud on the court; why are we

23      reporting this guy.

24             Counsel keeps saying they are required to report.  No,

25      they're not required to report.  They're required to report

1   when there is suspected insurance fraud, and that means that

2   somebody had the intent, the requisite intent to defraud, and

3   we claim here that they never had that, they knew they didn't

4   have it, and yet they used this as leverage against him to get

5   him to dismiss his personal injury claim.

6         Now, they get immunity if they report in the absence

7   of bad faith.  Bad faith is not an element of our cause of

8   action anywhere.  Bad faith is their immunity defense.

9   Certainly these documents we're seeking, their state of mind,

10  whether they went rogue, whether they acted in bad faith, is

11  the reason why these documents are not privileged.

12        Counsel said that they were careful to segregate the

13  documents concerning fraud from those regarding the underlying

14  claim, the evaluation.  It doesn't appear to be so, your Honor.

15  Request No. 2, which asks for internal memoranda regarding

16  defendants' decision to refer plaintiff to the authorities for

17  suspected insurance fraud, they objected, and there are several

18  others just like that.  So I don't really understand counsel's

19  distinction in that regard because they didn't do what she's

20  saying.

21        Your Honor, I don't know what your feeling is about

22  the crime fraud exception.  We do think that it is viable.  If

23  you are going to consider it and deny it, we would ask that you

24  do so without prejudice because we haven't conducted any

25  discovery yet.  We have depositions that we are going to take

1    in March and April.  Of course, if your Honor doesn't feel like

2    we have met the threshold at this point, then we would like to

3    come back after discovery has been completed.

4              THE COURT:  Right.  Anything else?

5              MR. BENRUBI:  No, your Honor.

6              THE COURT:  What I'd like to do now is -- I mean, I

7    know that there is the third motion, but that is only two --

8    the third request for production as to, I think it's only got

9    two entries.  I don't need to hear oral argument on that.  What

10   I really wanted to hear you on were the attorney-client and

11   work product issues.

12             What I'd like to do now is let's take a ten-minute

13   break, both for personal comfort and so I can gather my

14   thoughts, and then let's come back.  You can mute the

15   proceedings or put me on hold or whatever, but be back in ten

16   minutes, at which time I will rule from the bench.  I am not

17   going to issue a written order, but I am going to rule from the

18   bench, and if you need a transcript of the proceedings, make

19   sure that you order it from the court reporter's office here in

20   Fort Lauderdale.

21             Any questions on that?

22             MS. BESVINICK:  One last thing.  Will I be arguing our

23   motion to compel after the break, your Honor?

24             THE COURT:  We can do that.  Actually, I don't really

25   think I need argument on that, as I said.  The ones that I

1    really wanted to hear --

2         MS. BESVINICK:  This is the interrogatories.  This is

3    different.  This isn't about documents.  These are three

4    interrogatories that we didn't get answers to.

5         THE COURT:  Right, and they are pretty simple.  I

6    don't think I need to hear argument on that.

7         The first one is aliases.  I mean, I guess we can do

8    that now before the break.

9         MS. BESVINICK:  It will be quick, your Honor.

10        THE COURT:  I know.  It is only three of them.

11        MS. BESVINICK:  Yes.  It is very straightforward, I

12   think.

13        THE COURT:  So defendants' motion to compel is at ECF

14   No. 64.  It is interrogatory No. 2 and interrogatory Nos. 3 and

15   7.

16        MS. BESVINICK:  Yes, your Honor.

17        THE COURT:  No. 2 asks for aliases, but plaintiff says

18   in its supplemental response that it's given you its best

19   answer.  You're saying it is not enough.

20        MS. BESVINICK:  That is correct, your Honor.  I'm just

21   looking for the supplemental answer so that I have it here in

22   front of me.

23        Give me one moment.  I apologize.  Too many piles of

24   paper, your Honor.

25        The new interrogatory answer says:  I have used an

1   alias more than one time, but on each occasion it was for the

2   purpose of operating motor vehicle.

3          I am not quite sure what that means.

4          I do not remember all of the aliases I used, however,

5   my recollection was refreshed by reviewing the BCSO booking

6   report attached as Exhibit A, and then there is a list of

7   about, I don't know, ten aliases.

8          Then it says:  The booking report contained some of

9   the aliases I used.

10         Now, if Mr. Ackley can say that it contains some of

11  the aliases, he must be remembering other ones?  Because if

12  that is only some of them, he must have something in mind that

13  there are other ones.  We deserve an answer so that we can do

14  further discovery with respect to these aliases.

15         If he knows enough to say it is only some of them,

16  then he knows about other ones, and otherwise he should say

17  those are the only ones.  It has got to be one or the other.

18         THE COURT:  Or there were others but I can't remember

19  what they were.

20         MR. BENRUBI:  Exactly.

21         MS. BESVINICK:  Well, if you know that's only some of

22  them, it begs the question that you have got something else in

23  mind.

24         THE COURT:  OK.  We will find out from Mr. Benrubi.

25         MS. BESVINICK:  That is just No. 2, your Honor.

1          THE COURT:  Mr. Benrubi.

2          MR. BENRUBI:  No, Judge.  With respect -- I'm sorry.

3  I don't know if you want to hear from me or not.

4          THE COURT:  I'm sorry.  I was going to say Pach, but

5  that is not correct.  Ms. Besvinick.

6          MS. BESVINICK:  That's correct, your Honor.  No. 3,

7  there was an objection with respect to providing information

8  regarding other arrests.  Convictions were provided but not

9  information regarding arrests.

10         The argument in this case, your Honor, is that the

11  arrest of Mr. Ackley and continued prosecution of him for a

12  period of time resulted in emotional distress damage to

13  Mr. Ackley.  So in that circumstance, number one, this is not

14  about admissibility at this stage.  This is just about

15  discovery.  So we believe this is discoverable information and

16  that the information regarding the other arrests should be

17  provided.

18         We cited to your Honor a couple of cases.  McIntyre

19  and another case, White, and they cite a case called Gonzalez

20  v. City of Tampa, 776 So.2d 290.

21         It was a similar circumstance there.  It was a

22  malicious prosecution case.  There was a request for

23  information regarding prior arrests in a case where the issue

24  was emotional distress caused by arrest and prosecution.

25         What the court said was this:  "We emphasize again

that Mr. and Mrs. Gonzalez claimed a wide range of harms,
including injured reputation, humiliation, disgrace, and public
ridicule, the effects of which are not easily quantified.
Under the defense theory, Mr. Gonzalez had such an extensive
history of arrests that the emotional anguish and other
intangible effects he and his family suffered as a result of
this alleged false arrest were nominal at best."

        "By claiming these various intangible damages," which
is the situation we have here, your Honor; there were no
medical issues -- "Mr. and Mrs. Gonzalez put into issue the
number of his arrests, their reactions to those arrests," and
the like.

        So what we would say, your Honor, is the arrests are
relevant.  The information is to be provided.  It is
discoverable.  Whether it is admissible is for another day.
But we think that this is discoverable information that should
be provided.

        With respect to interrogatory No. 7, it is a
contention interrogatory.  I think this is really significant,
your Honor.  The contention that we requested information
regarding was your contention, and Mr. Benrubi repeated it
today, that Continental encouraged the offers extended to
Mr. Ackley to settle the criminal charges if he dropped his
civil suit, which is alleged in paragraph 34 of the amended
complaint.

1             That is the crux of the argument, and we asked:  State

2    the facts that you base that contention on.  We got an

3    objection to responding because it is subject to further

4    discovery.

5             Your Honor previously ruled that we needed to respond

6    to contention interrogatories.  We objected that it was too

7    early in the case.  Your Honor said, do the best you can, do it

8    now, you can always supplement it.  That's what we did.  We

9    answered based on the knowledge that we have.

10            We think that Mr. Ackley needs to do exactly the same

11   thing, particularly on a contention interrogatory like this,

12   which is the basis for really a lot of the argument that we

13   heard today.  We should know what the facts are that support

14   that contention.

15            THE COURT:  Let me ask you this.  Somewhere along the

16   way I read plaintiff's counsel saying that there is a corporate

17   rep deposition sometime in January and can they please answer

18   after that.

19            When is that corporate rep depo scheduled?

20            MS. BESVINICK:  It is being rescheduled, your Honor.

21   As you noted, the parties had requested a continuance.  I have

22   a three-week trial coming up.  Mr. Benrubi wanted to receive

23   the benefit of your Honor's rulings, and we didn't object to

24   that, before we proceed.  So that has been deferred, and we are

25   in the process of providing dates to each other for all of the

1    depositions, so we don't have to bother you with things like

2    that --

3              THE COURT:  That's good.

4              MS. BESVINICK:  -- for March and April.  So that we

5    can coordinate a schedule.

6              THE COURT:  All right.

7              MS. BESVINICK:  But we would ask -- your Honor, to

8    that point, I think we are entitled to know what the allegation

9    is based on now.  There is Rule 11.  There has to be a basis

10   for asserting this in the complaint.

11             It can be supplemented.  Mr. Benrubi can ask whatever

12   questions are appropriate at a corporate representative

13   deposition or of any fact witness, but I think we are entitled

14   to know what the basis for that allegation is now.

15             THE COURT:  All right.  Thank you.

16             Mr. Benrubi, I'll hear from you.  I will give you five

17   minutes.  We are way over time.

18             MR. BENRUBI:  No, I am going to be quick, your Honor.

19   We will start backwards.

20             On the contention interrogatory, our contention

21   interrogatories all involved information within the defendants'

22   possession, and I think that is why they were ordered to

23   answer.  This one allegation -- in fact, I think it is the only

24   allegation we made in our complaints -- we made this one upon

25   information and belief.  So we need to take the defendants'

1    corporate representative deposition to be able to fully answer

2    this question.  I will leave it at that.

3          Your Honor, as to the prior arrests, we produced

4    information regarding convictions.  The cases we cite say that

5    arrests are generally not admissible.  They have to be relevant

6    and not substantially outweighed by the danger of unfair

7    prejudice.

8          Here, they're simply not relevant, your Honor.  Number

9    one, this is not a false arrest case, and plaintiff's emotional

10   distress does not arise out of being arrested.  What it arises

11   out of is being the subject of criminal charges and possibly

12   facing 20 to 30 years in jail for a first degree felony for

13   five years while these charges were pending.

14         The cases say it requires a balancing test.  Defendant

15   now says they want that information because it goes to our

16   damages claim, but that is not what they said in their

17   briefing.  They said we want to explore the plaintiff's

18   credibility.  The rules don't allow you to use prior arrests

19   for credibility; they allow you to use prior convictions.  So

20   it is more prejudicial than --

21         THE COURT:  Of course, that is the rule of

22   admissibility, correct?

23         MR. BENRUBI:  Yes, your Honor.

24         THE COURT:  Let's go to aliases.

25         MR. BENRUBI:  The only thing I would say there, your

1  Honor, is that last sentence, which is really just kind of like

2  a qualifier, it can easily mean that I recall there were others

3  but I don't recall what they were.  I mean, he didn't recall

4  any of them until I showed him that sheet.  So that is our

5  position on that.

6       THE COURT:  All right.  Thank you.

7       MR. BENRUBI:  That is the best answer they are going

8  to get.

9       THE COURT:  All right.  Now I am going to stop.  We

10  are going to take a ten-minute break.  Please mute yourselves.

11  I will mute myself as well.  Then I will come back on the

12  record in about ten minutes or so to announce my rulings.

13       MR. BENRUBI:  Thank you.

14       THE COURT:  I am going to stop the recordings for now.

15       (Recess)

16       THE COURT:  All right.  Recalling the case of Ackley

17  v. Continental Casualty Company, case No. 22 Civil 60377.

18       I want to confirm that everyone is on the line,

19  starting with plaintiff's counsel.

20       MR. BENRUBI:  Present.

21       THE COURT:  For the defense.

22       MS. BESVINICK:  Yes, your Honor.

23       THE COURT:  And, Ms. Pach, are you also there?

24       MS. PACH:  Yes, your Honor.

25       THE COURT:  All right.  Thank you, everyone.  Thank

1    you for that short break.

2           I am now prepared to rule, and I am going to make some

3    global rulings which I hope that you can then apply going

4    forward to the document production that has already taken place

5    and, of course, the privilege log production to be defined as I

6    am about to set forth.

7           Generally my ruling today is going to be framed by the

8    following legal principles of discovery.

9           First of all, under Federal Rule of Civil Procedure

10   26(b)(1), the parties may obtain discovery regarding any

11   nonprivileged matter that is relevant to a party's claim or

12   defense and proportional to the needs of the case, considering

13   the importance of the issues at stake in the action, the amount

14   in controversy, the parties' relative access to relevant

15   information, the parties' resources, the importance of the

16   discovery in resolving the issues, and whether the burden or

17   expense of the proposed discovery outweighs its likely benefit.

18          Moreover, the Federal Rules also afford the court

19   broad authority to control the scope of discovery, citing to

20   Josendis v. Wall to Wall Residence Repairs (11th Cir. 2011),

21   but strongly favor full discovery whenever possible.

22   Farnsworth v. Procter & Gamble (11th Cir. 1985).

23          Accordingly, the courts employ a liberal and broad

24   scope of discovery in keeping with the purpose and spirit of

25   these rules.  Rosenbaum v. Becker & Poliakoff (S.D. Fla. 2010),

1  and that case specifically collects cases regarding the scope

2  of discovery.

3       The overall purpose of discovery under the Federal

4  Rules is to require the disclosure of all relevant information

5  so that the ultimate resolution of disputed issues in any

6  action may be based on a full and accurate understanding of the

7  facts and, therefore, embody a fair and just result.  That is

8  from Shapiro v. Dynamic Recovery Solutions (S.D. Fla. July

9  2018).

10       Accordingly, when a party objects to discovery, the

11  onus is on the objecting party to demonstrate with specificity

12  how the objected-to request is unreasonable or otherwise unduly

13  burdensome, citing to Powers v. Target Corporation (S.D. Fla.

14  Jan. 24, 2020).

15       I am going to turn first to defendants' motion to

16  compel production of defendants' claims manuals and referral

17  log at ECF No. 33.

18       As to these requests, I am going to refer specifically

19  to requests for production No. 8, No. 9, No. 19, and No. 20.

20       Applying the principles that I have just described, I

21  am going to grant the motion to compel in part as follows:  As

22  to request for productions No. 8, No. 9, and No. 19, I am going

23  to grant the motion as to those three requests.  These

24  documents are relevant to plaintiff's claims and the defenses,

25  and any confidentiality concern can be addressed by a

1    stipulated protective order, if the parties are agreeable to

2    entering one.  So that is granted.

3            However, I am going to limit that grant to policies

4    and procedures that were in place between 2012 to 2014.

5            As to request for production No. 20, the motion at ECF

6    No. 33, I am going to deny that particular request.

7            The referral of others I find is not relevant to how

8    plaintiff's referral was made.  I think that without some more

9    specific basis or rationale to say that the defendant had other

10   referrals that were improper, I am not going to allow a fishing

11   expedition on that point at this time.

12           So 8, 9, and 19 are granted in part as I limited it.

13   20 is denied.

14           Turning next to ECF No. 53, which is plaintiff's

15   amended motion to overrule defendants' attorney-client and work

16   product protection objections and to compel production.

17   Specifically, this motion, ECF No. 53, relates to requests for

18   production 1 through 7, 10 through 12, 14 through 18, and No.

19   20.

20           Now, obviously within that same first request for

21   production I have already ruled on 8, 9, 19, and 20.  So I am

22   not going to repeat those rulings here.

23           In ruling on these requests for production, the first

24   thing I need to consider is the attorney-client privilege.

25           State law applies the rule of decision and diversity

1    actions, like this one, when a party is asserting the

2    attorney-client privilege, and of course that is controlled by

3    Federal Rule of Evidence 501, and I'm citing to the case 1150

4    Brickell Association, 253 F.R.D. 699.

5         Under the Florida statutes a client can be a

6    corporation, and that is Florida statute Section 90.502(1)(b).

7         The statute defining attorney-client privilege also

8    states that a client has a privilege to refuse to disclose, and

9    to prevent any other person from disclosing, the contents of

10   confidential communications when such other person learned of

11   the communication because they were made in their rendition of

12   legal services to the client, and that is 90.502(2).

13        The statute does not require that a corporation, such

14   as an insurance company, establish that it anticipated

15   litigation at the time it retained counsel or received legal

16   advice in order to invoke the attorney-client privilege.

17   However, claims of attorney-client privilege by corporations

18   are subject to heightened scrutiny.  Courts have determined

19   that the proper inquiry for a corporation is whether, A, the

20   communication would not have been made but for the

21   contemplation of legal services and, B, whether the content of

22   the communication relates to the legal services being rendered,

23   citing to Arlen House East Condo Association v. QVE Insurance

24   Europe (S.D. Fla. August 20, 2008).

25        The real test for whether the attorney-client

1    privilege attaches in the context of a corporate insurer, for

2    example, is whether the attorney functioned as a mere conduit,

3    claims adjustor, or claims investigator or, rather, where the

4    attorney functioned in the attorney's professional capacity in

5    dispensing legal advice.

6         While Florida law governs the attorney-client

7    privilege in diversity actions, federal law governs the work

8    product doctrine in diversity cases, and the case on that is

9    Milinazzo v. State Farm Insurance Co. (S.D. Fla. 2007).

10        Under Federal Rule of Civil Procedure 26(3), a

11   litigant generally may not discover documents and tangible

12   things that were prepared in anticipation of litigation or for

13   trial by or for another party or its representative.  This

14   protection, however, is not absolute.  Under Rule 26(b)(3)(a),

15   work product materials may be discovered if they are otherwise

16   discoverable under Rule 26(b)(1) and the requesting party shows

17   that it has a substantial need for the materials to prepare its

18   case and cannot, without undue hardship, obtain the substantial

19   equivalent by other means.

20        As to work product, the law draws a distinction

21   between fact and opinion work product.  Rule 26(b)(3) provides

22   that even if the party seeking discovery of information

23   otherwise protected by the work product doctrine has made the

24   requisite showing of need and undue hardship, courts must still

25   protect against the disclosure of mental impressions,

1    conclusions, opinions, or legal theories of an attorney or his

2    agents.

3         Thus, Rule 26(b)(3) establishes two tiers of

4    protection.  The first is, work prepared in anticipation of

5    litigation by an attorney or his agent is discoverable only

6    upon a showing of need and hardship; second, core, which is

7    described as opinion work product, that encompasses the mental

8    impressions, conclusions, legal theories, opinions of an

9    attorney or other representative of a party concerning the

10   litigation is generally afforded near absolute protection from

11   discovery, and I am citing to Federal Rule of Civil Procedure

12   26(b)(3), as well as In Re Cendant Corporation Litigation (3d

13   Cir. 2003).

14        In the Eleventh Circuit, opinion work product enjoys

15   nearly absolute immunity and can be discovered only in very

16   rare and extraordinary circumstances, and I'm citing to the Cox

17   case, Cox v. Administrative -- I am not sure what that stands

18   for -- U.S. Steel & Carnegie (11th Cir. 1994).

19        The subject matter waiver doctrine provides that a

20   party who injects into the case an issue that in fairness

21   requires an examination of communications otherwise protected

22   by the attorney-client privilege loses that privilege.

23   However, the plain language of Rule 26(b)(3) suggests that

24   opinion work product should not be subject to such an implied

25   waiver and that the rationale behind the doctrine, in other

1    words, a fear that a party might make affirmative testimonial

2    use of a communication and then seek to shield it from

3    disclosure, does not apply to mental impressions and legal

4    theories.

5            With this as background, I am now going to turn to the

6    requests at issue.

7            First of all, with reference to ECF No. 53, my first

8    ruling is going to be rulings regarding boilerplate objections.

9            As to requests for production 1, 2, 3, 4, 5, 6, 7, 10,

10   11, 12, 14, 15, 16, 17, and 19, I note that boilerplate

11   objections and generalized responses are improper in this

12   district, and I cite to Alhassid v. Bank of America (S.D. Fla.

13   March 2015).

14           This district, and, in particular, me or this court,

15   has frequently held that objections that fail to sufficiently

16   specify the grounds on which they are based are improper and

17   without merit.  As well, language objections which contain the

18   subject to and without waiving the foregoing objections

19   language are really a disservice and are unclear and leave the

20   recipient wondering as to what was actually provided or what

21   the response actually says.

22           Accordingly, I am going to strike the boilerplate

23   objections in the requests for production that I just listed.

24   Plaintiff is ordered to amend its responses to clearly specify

25   what production has been made and striking the boilerplate

1    language.

2             MR. BENRUBI:  Your Honor, do you mean defendants?

3             THE COURT:  Yes.  I'm so sorry.

4             So that is boilerplate objections as to those numbers.

5    If you need me to repeat the numbers, I will be happy to do

6    that.

7             MS. BESVINICK:  Could you do that, your Honor?  I

8    apologize.  I want to make sure we do what you want us to do.

9             THE COURT:  Sure.  I tried to do it as slowly as

10   possible.

11            Boilerplate objections, amend the language as to Nos.

12   1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 14, 15, 16, 17, and 18.

13            Next I am going to turn to the issue whether or not

14   there has been an at issue waiver.

15            At issue --

16            MS. BESVINICK:  I apologize, your Honor.  I just want

17   to make sure I understand what you want us to do.  You want us

18   to amend those objections.

19            THE COURT:  Take out the boilerplate objections and

20   make clear, so that it is clear, what documents have been

21   produced, and if no other documents exist to clearly say so.

22            MS. BESVINICK:  Other than the things that have been

23   withheld on privilege grounds.

24            THE COURT:  We will get to that in a minute.

25            MS. BESVINICK:  OK.  Thank you, your Honor.

1        THE COURT:  Sure.

2        At issue waiver.  In terms of the at issue waiver of

3   the attorney-client privilege, that requires three elements.

4   The first is an assertion of the protection that results from

5   some affirmative act by the party invoking protection; two, the

6   affirmative act must put the protected information at issue by

7   making it relevant to the case; and, three, application of the

8   protection would deny the opposing party access to information

9   vital to its defense, and I'm citing Sun Capital Partners v.

10  Twin City Fire Insurance Co. (S.D. Fla. April 2015).

11       The inquiry focuses on whether a party affirmatively

12  injected a privileged communication directly into the

13  litigation as necessary to prove an element of a claim or

14  defense, citing the same case, and also Stern v. O'Quinn (S.D.

15  Fla. 2008) and Maplewood Partners v. Indian Harbor Insurance

16  Co. (S.D. Fla. 2013).  There are many other cases holding that.

17       The at issue waiver doctrine really rests on the

18  principle of fairness.  Here, I find that the defendant did not

19  affirmatively place the attorney-client or

20  work-product-protected communications into the litigation by

21  asserting affirmative defenses to plaintiff's allegations, and

22  the case that I cite for that proposition is Sun Capital

23  Partners v. Twin City Fire (S.D. Fla. 2015).

24       So I find that there was no at issue waiver of either

25  the privilege or the protection.

1          Next I turn to plaintiff's argument that the crime

2     fraud exception applies.

3          In the Eleventh Circuit, application of the crime

4     fraud exception requires that the plaintiff make a *prima facie*

5     showing that the client was engaged in criminal or fraudulent

6     conduct when he sought the advice of counsel, that he was

7     planning such conduct when he sought the advice of counsel, or

8     that he committed a crime or fraud after receiving the benefit

9     of counsel's advice.  It also requires a showing that the

10    attorney's assistance was obtained in furtherance of the

11    criminal or fraudulent activity or was at least closely related

12    to it, and I'm citing to U.S. v. Klecker (11th Cir. 2008).

13         For the crime fraud exception to apply, a court must

14    find that the specific document or testimony that the court is

15    ordering to be produced reflects work of the attorney that was

16    performed in furtherance of the criminal or fraudulent activity

17    or that was closely related to it, citing Drummond Co. v.

18    Conrad & Scherer (11th Cir. 2018).

19         After reviewing the briefs and hearing the argument of

20    counsel, I believe that plaintiff has failed to establish a

21    *prima facie* case that defendant engaged in criminal or

22    fraudulent conduct, so that the crime fraud exception does not

23    apply at this time.

24         I next turn to the substantive rulings regarding the

25    applicability of the attorney-client and work product

1    protection, and these are global rulings, which I will expect

2    the parties to take to heart and review the production that has

3    already been made to comply with my instructions in this

4    regard.

5            As to requests for production 1 through 5, 12 and

6    16 -- so that is 1, 2, 3, 4, 5, 12, and 16 -- the following

7    global rulings will apply:

8            First of all, communications by the defendants'

9    attorney to third parties are not attorney-client protected and

10   must be produced.  The motion to compel as to those types of

11   individuals, those types of communications will therefore be

12   granted.  To the extent that the defendant has withheld any

13   such communications on the basis of the attorney-client

14   privilege, the objection is overruled and any such documents

15   must be protected.

16           By way of example, communications that are not

17   attorney-client protected include defendants' communications

18   with plaintiff or his representatives, communications with the

19   Florida DFS, communication with the Florida Division of

20   Insurance Fraud, communications with Sedgwick, communications

21   with the Palm Beach State Attorney's Office, and communications

22   with the Broward County State Attorney's Office.  I use those

23   as examples.

24           Conversely, attorney communications with a client,

25   with the insured, or with the insured's attorneys constitute

1    attorney-client communications and are privileged.  As to those

2    types of communications I will deny the motion to compel.

3         Turning next to work product.  To the extent that

4    documents are being withheld under the work product protection,

5    I am going to grant the motion to compel and allow the

6    production of fact work product.  Any fact work product will be

7    discoverable.

8         Opinion work product, however, is not discoverable, as

9    opinion work product enjoys a merely absolute protection and

10   can be discoverable only in very rare circumstances.

11        So to be clear, I will deny the motion to compel as to

12   opinion work product, I will grant the motion to compel as to

13   fact work product, and defendant is to produce any such fact

14   work product that has not yet been produced under a claim of

15   privilege.  That claim of privilege as to fact work product is

16   overruled.

17        Next, as to request for production No. 15, I find that

18   I am going to grant the motion to compel as to No. 15.  I find

19   that the information requested in request for production 15 is

20   neither attorney-client or work product protected.

21        As to request for production No. 14, I am going to

22   grant the motion to compel.  This is the one that asks for

23   unredacted information.

24        Plaintiff has established in my opinion exceptional

25   circumstances exist that warrant full production of the

1  materials because the referral of plaintiff's case to law

2  enforcement is at the very heart of this case and plaintiff has

3  no other avenue to obtain the information to prove its case.

4  That is the only exception I'm making is 14.

5         As to requests for production 6, 7, 10, 11, and 17, I

6  am going to deny the motion to compel.  I find that these

7  particular requests are duplicative, cumulative of information

8  garnered from other requests that I have potentially granted.

9         As to request for production No. 18, I am going to

10  deny the motion that falls under the attorney-client privilege.

11  It's been represented to the court that the individuals whose

12  communications are being requested are part of the joint

13  defense of the defendants' case.  So that request is denied.

14         I believe that takes care of our first motion, ECF No.

15  53.

16         Turning next to ECF No. 64, dealing with

17  interrogatories.  As to interrogatory No. 2, requesting aliases

18  or a better response as to other aliases that the plaintiff may

19  have used, I am going to grant the defendants' motion to

20  compel.

21         The plaintiff is ordered to amend his responses to

22  more clearly reflect if other aliases exist, how many,

23  approximately, or a cleaner response that shows that this is

24  the plaintiff's best recollection.  The current revision, which

25  is included in the supplemental joint status report, leaves

1   many ambiguities, and to the extent it can be clarified

2   plaintiff should do so.

3        Interrogatory No. 3 asking for arrests, I am going to

4   grant the motion to compel.  Arrest information is

5   discoverable.  Whether or not it will be admissible during

6   trial remains for another day.  But for now certainly the

7   arrests are relevant and should be produced.

8        Interrogatory No. 7, which is a contention

9   interrogatory, I am going to grant the motion to compel.  The

10  defendant should answer that contention interrogatory to the

11  best of its ability presently and obviously, as I said, with

12  reference to the defendant in a previous motion that plaintiff

13  can amend its responses in the future if necessary.

14       Turning lastly to plaintiff's third request for

15  production, which is included in the joint supplemental status

16  report, as to the first request for production I am going to

17  grant the motion in part but limit it to 2012 to 2014.  Request

18  No. 2, for the same reasons as I denied request for production

19  No. 20 in the first request for production, I am going to deny

20  this motion to compel.  I find that it is irrelevant and

21  overbroad.

22       As to fees and costs, I know that Rule 37 requires

23  cost shifting.  Here, however, I find that the parties'

24  positions were substantially justified as evidenced by the fact

25  that we have had a nearly two-hour hearing on these motions.

1   So I expect each party to bear their own costs in connection

2   with the motions and responses.

3          I am going to also require that whatever amendments

4   have to be done to the responses by either the plaintiff or the

5   defendant or whatever production needs to be made should be

6   conducted within 14 days of today.

7          Anything further?  Any questions?

8          MR. BENRUBI:  Your Honor, will you be issuing a report

9   and recommendation?

10         THE COURT:  No.  That is why I put all of my findings

11  on the record.

12         If you need a copy of my rulings, please get a

13  transcript from the clerk's office, the Fort Lauderdale court

14  reporter's office.

15         Obviously, you have the right to appeal my decision,

16  and you have 14 days from today to do so if you'd like.

17         MR. BENRUBI:  Your Honor, did you address voluntary

18  disclosure to third parties?

19         THE COURT:  I didn't address it.  I guess mostly

20  because I don't think that it had any effect in terms of the

21  implication of the privileges or the work product.

22         MR. BENRUBI:  OK.

23         THE COURT:  All right.  I appreciate, everyone, your

24  participation and your obvious preparation for the hearing on

25  both sides.  Obviously these are not easy decisions.

1   Attorney-client and work product protection is something that

2   we all take very seriously and I try to be as careful in my

3   ruling as possible.  So I thank you all and this will then

4   conclude our hearing.

5           MS. BESVINICK:  Thank you, your Honor.

6           THE COURT:  Happy new year, and everyone have a great

7   day.  Take care of yourselves.

8           I am going to stop the recording and you are now free

9   to go.

10          (Adjourned)

11

12                  C E R T I F I C A T E

13

14      I hereby certify that the foregoing is an accurate

15   transcription to the best of my ability of the digital audio

16   recording in the above-entitled matter.

17

18   January 17, 2023          s/ Joanne Mancari
                               Joanne Mancari, RPR, CRR, CSR
19                             Court Reporter
                               jemancari@gmail.com
20

21

22

23

24

25

MR. BENRUBI: [83]
MS. BESVINICK: [53]  3/1 3/5 4/11 5/7
29/7 29/13 29/16 31/16 31/19 34/17
35/19 36/2 36/7 36/10 37/22 39/14 39/18
39/22 40/3 40/9 41/18 42/13 43/16 45/3
45/14 45/19 45/24 46/3 46/11 46/15
46/22 47/22 49/10 49/15 49/17 52/22
53/2 53/9 53/11 53/16 53/20 54/21 54/25
55/6 57/20 58/4 58/7 60/22 68/7 68/16
68/22 68/25 76/5
MS. PACH: [9]  2/7 2/17 2/21 46/9 46/24
47/10 47/12 47/20 60/24
THE COURT: [142]

$
$65,000 [3]  10/17 45/25 47/6

1
10 [4]  63/18 67/9 68/12 73/5
100 [1]  46/5
11 [5]  1/5 58/9 67/10 68/12 73/5
1150 [1]  64/3
11th [5]  63/18 67/10 68/12 71/5 71/6
12 [5]  63/18 67/10 68/12 71/5 71/6
13 [1]  50/11
14 [12]  15/22 23/8 23/14 44/25 44/25
63/18 67/10 68/12 72/21 73/4 75/6 75/16
1401 [1]  1/13
15 [7]  8/17 9/19 67/10 68/12 72/17
72/18 72/19
16 [5]  24/14 67/10 68/12 71/6 71/6
17 [4]  67/10 68/12 73/5 76/18
18 [5]  25/7 25/7 63/18 68/12 73/9
19 [8]  22/18 23/4 26/7 62/19 62/22
63/12 63/21 67/10
1985 [1]  61/22
1994 [1]  66/18

2
20 [15]  9/7 9/9 9/14 9/17 26/8 28/21
29/15 59/12 62/19 63/5 63/13 63/19
63/21 64/24 74/19
200 [2]  1/18 15/2
2003 [1]  66/13
2007 [1]  65/9
2008 [3]  64/24 69/15 70/12
2010 [1]  61/25
2011 [1]  61/20
2012 [3]  26/8 63/4 74/17
2013 [1]  69/16
2014 [3]  26/8 63/4 74/17
2015 [3]  67/13 69/10 69/23
2018 [2]  62/9 70/18
2020 [1]  62/14
2022 [1]  8/3
2023 [4]  1/5 8/7 8/10 76/18
22 [2]  4/18 60/17
22-CV-60377-RS [1]  1/2
24 [1]  62/14
253 [1]  64/4
26 [8]  61/10 65/10 65/14 65/16 65/21
66/3 66/12 66/23
28th [1]  8/11
29 [1]  8/7
290 [1]  55/20
296-3963 [1]  1/14
29th [1]  7/2

3
30 [2]  49/8 59/12
305 [3]  1/19 2/15 2/23
31st [1]  8/8
33 [8]  4/22 7/2 8/5 8/19 9/13 27/12
62/17 63/6
33131 [1]  1/18
33401 [1]  1/14
34 [1]  56/24
358-9000 [1]  1/19
37 [1]  74/22
3963 [1]  1/14
3d [1]  66/12
3rd [1]  8/7

4
40 [1]  7/3
45 [1]  7/4

5
501 [1]  64/3
53 [10]  4/22 7/7 8/5 8/19 9/13 27/12
63/14 63/17 67/7 73/15
561 [2]  1/14 3/11
561-8958 [1]  3/16

6
60 [1]  7/8
60377 [2]  4/18 60/17
626.989 [2]  30/3 35/7
64 [6]  4/22 7/10 8/5 28/4 53/14 73/16
67 [1]  7/11
699 [1]  64/4

7
70 [1]  8/3
71 [1]  8/4
72 [1]  7/14
76 [1]  1/7
776 [1]  55/20
7th [1]  8/9

8
83 [1]  7/14
8958 [2]  3/12 3/16

9
90.502 [2]  64/6 64/12
9000 [1]  1/19
9331 [1]  2/15
9395 [1]  2/23
989 [2]  28/11 30/3
9th [2]  7/17 27/14

A
abide [1]  24/2
ability [2]  74/11 76/15
able [3]  11/5 48/19 59/1
about [40]  13/7 14/16 15/2 17/19 19/14
19/18 20/11 21/8 21/12 24/9 24/14 27/12
29/25 30/1 31/3 31/22 32/16 32/16 34/14
36/3 36/17 40/14 40/21 40/23 41/1 41/4
44/18 44/25 45/25 47/6 47/18 50/16
51/21 53/3 54/7 54/16 55/14 55/14 60/12
61/6
above [1]  76/16
above-entitled [1]  76/16
absence [1]  14/4 51/6
absolute [4]  65/14 66/10 66/15 72/9
absolutely [1]  34/24

abuse [2]  10/22 40/21
access [2]  67/4 69/8
accident [3]  29/25 45/22 50/16
accordance [1]  37/17
according [5]  7/16 10/9 17/24 23/15
30/15
Accordingly [2]  61/23 62/10 67/22
accurate [5]  5/25 16/3 38/3 62/6 76/14
accurately [1]  46/6
ACKLEY [37]  1/3 4/14 4/14 4/14 4/16
4/17 5/3 11/25 12/22 23/13 26/10 31/8
31/10 32/3 32/5 32/7 32/20 33/8 33/16
33/23 34/13 34/18 34/19 36/15 37/19
38/24 39/1 43/10 44/10 45/10 48/23
54/10 55/11 55/13 56/23 57/10 60/16
Ackley's [14]  18/7 24/5 29/20 31/5 31/23
32/14 33/25 34/11 38/10 40/22 40/25
47/25 48/18 50/7
act [6]  22/8 30/6 30/21 35/13 69/5 69/6
acted [2]  37/16 51/10
action [7]  10/23 21/25 22/3 32/3 51/8
61/13 62/6
actions [2]  64/1 65/7
activity [2]  70/11 70/16
acts [2]  30/13 38/8
actually [8]  9/6 19/21 28/11 37/1 49/6
52/24 67/20 67/21
add [1]  29/1
addition [1]  4/7
additional [4]  7/18 9/2 9/3 34/21
address [7]  11/11 28/3 41/13 44/22
49/21 75/17 75/19
addressed [3]  43/1 43/20 62/25
adequate [1]  42/7
Adjourned [1]  76/10
adjudication [1]  7/3
adjustor [1]  65/3
Administrative [1]  66/17
admissibility [2]  55/14 59/22
admissible [3]  56/15 59/5 74/5
admit [1]  3/9
admitted [1]  2/10
advance [1]  7/15
advantage [1]  10/14
adverse [1]  33/9
advice [5]  64/16 65/5 70/6 70/7 70/9
affidavit [2]  23/22 50/10
affirmative [5]  13/22 67/1 69/5 69/6
69/21
affirmatively [2]  69/11 69/19
afford [1]  61/18
afforded [1]  66/10
afield [1]  39/4
after [8]  23/23 29/20 31/5 52/3 52/23
57/18 70/8 70/19
afternoon [2]  2/3 5/1
again [13]  5/10 9/20 14/7 21/8 22/7 24/4
25/5 27/6 27/7 44/12 45/15 49/20 55/25
against [13]  12/16 15/7 32/3 33/10 33/10
33/22 34/13 42/16 42/16 43/10 48/23
51/4 65/25
agencies [1]  45/2
agency [1]  30/23
agent [1]  66/5
agents [1]  66/2
aggressive [3]  27/2 36/21 36/22
agree [8]  19/12 24/17 35/22 39/10 39/14
39/19 44/7 46/9
agreeable [1]  63/1
agreed [1]  27/25

**A**
agreeing [1] 22/23
agreement [2] 43/15 43/18
ahead [2] 41/17 42/12
al [1] 1/6
alarm [1] 6/13
ALBERT [1] 1/3
alerting [1] 6/14
Alhassid [1] 67/12
alias [1] 54/1
aliases [11] 53/7 53/17 54/4 54/7 54/9 54/11 54/14 59/24 73/17 73/18 73/22
ALICIA [1] 1/10
all [55] 2/5 2/8 2/10 2/22 3/3 3/11 5/10 5/13 6/8 6/21 7/24 9/12 10/1 10/3 10/7 11/13 13/17 16/5 16/8 17/17 21/2 22/5 23/3 23/11 24/13 25/7 26/20 27/19 29/4 29/5 29/11 33/8 38/12 40/8 41/4 45/5 47/23 49/7 54/4 57/25 58/6 58/15 58/21 60/6 60/9 60/16 60/25 61/9 62/4 67/7 71/8 75/10 75/23 76/2 76/3
allegation [4] 58/8 58/14 58/23 58/24
allegations [6] 10/11 13/20 13/21 13/23 14/12 69/21
allege [1] 10/18
alleged [3] 30/22 56/7 56/24
allocated [1] 29/14
allow [5] 41/13 59/18 59/19 63/10 72/5
allowed [2] 23/24 50/10
Allstate [1] 44/11
along [3] 9/21 44/23 57/15
already [9] 4/12 15/16 17/15 27/19 49/8 61/4 63/21 71/3
also [18] 3/2 5/9 5/16 5/20 7/7 7/12 8/11 14/22 19/21 24/7 34/6 37/8 60/23 61/18 64/7 69/14 70/9 75/3
although [1] 11/24
altogether [1] 27/21
always [2] 20/19 57/8
am [51] 3/9 3/14 5/16 8/16 8/24 9/6 9/14 15/12 19/7 23/9 27/16 29/7 44/22 47/12 49/7 49/16 49/19 52/16 52/17 54/3 58/18 60/9 60/14 61/2 61/2 61/6 62/15 62/18 62/21 62/22 63/3 63/6 63/10 63/21 66/1 66/17 67/5 67/22 68/13 72/5 72/18 72/21 73/6 73/9 73/19 74/3 74/9 74/16 74/19 75/3 76/8
ambiguities [1] 74/1
amend [5] 67/24 68/11 68/18 73/21 74/13
amended [4] 7/6 8/2 56/24 63/15
amendments [1] 75/3
America [1] 67/12
among [2] 25/8 25/9
amount [1] 61/13
analogizing [1] 18/19
analysis [1] 21/3
analysis/evaluation [1] 21/3
anguish [1] 56/5
ANN [1] 1/17
announce [1] 60/12
another [9] 3/11 5/21 27/23 30/10 43/19 55/19 56/15 65/13 74/6
answer [10] 23/7 53/19 53/21 53/25 54/13 57/17 58/23 59/1 60/7 74/10
answered [1] 57/9
answering [1] 28/25
answers [2] 29/9 53/4
anticipated [1] 64/14
anticipation [8] 11/15 12/2 12/9 18/3

19/4 19/5 65/12 66/4
antifraud [7] 26/18 28/14 28/17 35/11 36/19 36/19 36/24
any [29] 6/6 6/21 10/13 22/4 26/20 27/16 30/5 30/21 30/22 32/13 42/5 42/23 47/23 48/10 48/21 51/24 52/21 58/13 60/4 61/10 62/5 62/25 64/9 71/12 71/14 72/6 72/13 75/7 75/20
anybody [4] 4/9 32/14 32/23 48/1
anyone [1] 23/20
anything [8] 27/6 27/18 29/1 37/1 44/24 49/9 52/4 75/7
anyway [1] 12/8
anywhere [2] 48/1 51/8
apologies [1] 10/2
apologize [3] 53/23 68/8 68/16
apparently [1] 24/20
appeal [1] 75/15
appear [2] 8/18 51/14
appearances [2] 1/11 4/24
appears [2] 11/23 12/7
applicability [3] 20/2 20/23 70/25
application [5] 44/21 48/25 48/25 69/7 70/3
applied [2] 44/14 44/15
applies [5] 10/8 19/5 19/5 63/25 70/2
apply [10] 11/14 12/8 14/15 20/6 48/4 61/3 67/3 70/13 70/23 71/7
Applying [1] 62/20
appreciate [1] 75/23
appropriate [6] 21/25 23/1 26/11 30/23 38/22 58/12
approximate [1] 8/23
approximately [2] 29/14 73/23
April [4] 8/9 52/1 58/4 69/10
are [139]
argue [4] 8/17 9/11 29/7 50/3
argued [1] 12/1
arguing [7] 6/3 15/6 29/5 37/15 37/15 47/2 52/22
argument [21] 8/15 8/16 9/20 13/18 14/16 16/18 17/2 17/8 17/16 18/14 21/24 39/20 48/11 52/9 52/25 53/6 55/10 57/1 57/12 70/17 70/19
arise [1] 59/10
arises [1] 59/10
Arlen [1] 64/23
arrest [6] 37/10 55/11 55/24 56/7 59/9 74/4
arrested [1] 39/1 59/10
arrests [13] 55/8 55/9 55/16 55/23 56/5 56/11 56/11 56/13 59/3 59/5 59/18 74/3 74/7
arrived [1] 10/24
art [1] 27/4
artificial [1] 27/4
as [100]
ask [13] 5/17 8/24 21/22 26/5 35/17 39/8 39/9 45/12 49/19 51/23 57/15 58/7 58/11
asked [2] 40/14 57/1
asking [9] 9/20 17/2 17/19 20/1 21/18 23/9 23/13 24/14 74/3
asks [4] 25/8 51/15 53/17 72/22
assert [2] 42/2 42/2
asserted [8] 13/13 14/1 26/3 40/7 40/9 40/19 40/22 42/8
asserting [5] 13/22 17/14 26/19 58/10 64/1 69/21
assertion [3] 19/23 29/23 69/4
assertions [1] 13/15

assess [1] 26/15
assesses [1] 26/14
assessment [1] 46/20
assigned [1] 4/19
assistance [1] 70/10
Association [2] 64/4 64/23
assuming [1] 23/9
assuredly [1] 40/23
at [78]
attach [1] 14/25
attached [4] 23/22 45/16 46/6 54/6
attaches [1] 65/1
attachments [1] 45/15
attack [1] 19/22
attention [3] 24/13 27/12 27/24
attorney [62] 2/19 3/25 4/1 4/3 9/8 11/20 11/20 11/23 12/13 14/3 14/18 14/23 16/19 17/4 17/25 19/6 19/9 20/2 21/15 23/23 24/6 30/24 32/14 32/21 33/6 33/25 39/24 42/1 45/4 45/6 47/3 48/4 48/5 52/10 63/15 63/24 64/2 64/7 64/16 64/17 64/25 65/2 65/4 65/6 66/1 66/5 66/9 66/22 69/3 69/19 70/15 70/25 71/9 71/9 71/13 71/17 71/24 72/1 72/20 73/10 76/1
attorney's [6] 57/7 65/4 70/10 71/21 71/22
attorney-client [37] 9/8 11/20 14/23 16/19 17/4 19/6 19/9 20/2 32/21 33/6 33/25 39/24 42/1 45/4 45/6 48/4 48/5 52/10 63/15 63/24 64/2 64/7 64/16 64/17 64/25 65/6 66/22 69/3 69/19 70/25 71/9 71/13 71/17 72/1 72/20 73/10 76/1
attorneys [2] 17/25 71/25
audio [4] 1/9 5/18 5/22 76/15
August [2] 7/2 64/24
authorities [2] 16/17 51/16
authority [2] 48/17 61/19
avenue [1] 73/3
avoid [1] 6/4

**B**
B-E-S-V-I-N-I-C-K [1] 3/4
back [13] 6/9 6/15 6/22 10/1 17/8 20/24 24/7 39/22 39/24 52/3 52/14 52/15 60/11
background [4] 6/4 6/24 10/5 67/5
backwards [1] 58/19
bad [23] 13/21 14/4 18/20 21/25 22/3 22/8 22/9 22/10 22/10 27/9 38/5 38/6 38/12 38/16 38/19 41/1 42/19 44/12 44/13 51/7 51/7 51/8 51/10
balancing [1] 59/14
Bank [1] 67/12
Barubi [3] 9/16 9/24 49/20
base [1] 57/2
based [11] 11/24 12/7 20/25 21/15 21/15 36/18 36/18 57/9 58/9 62/6 67/16
basically [1] 34/14
basis [13] 11/20 26/17 26/20 40/17 42/23 49/2 49/4 49/6 57/12 58/9 58/14 63/9 71/13
Battle [2] 12/19 34/14 34/22 40/15
BCSO [1] 54/5
be [78]
Beach [1] 1/14 71/21
bear [1] 75/1
because [43] 5/14 5/18 8/19 10/14 11/10 11/18 12/8 16/5 16/10 17/2 18/23 19/1 20/18 22/4 23/16 26/12 28/10 32/2 32/6 33/1 33/17 34/3 34/8 35/14 37/9 38/17

**B**

because... [17]  40/16 41/9 46/4 46/12
47/8 47/13 47/19 48/14 49/7 51/19 51/24
54/11 57/3 59/15 64/11 73/1 75/20
Becker [1]  61/25
been [24]  4/19 6/11 6/23 10/9 15/16
34/19 35/5 35/7 35/9 40/16 44/14 47/19
48/8 48/10 52/3 57/24 64/20 67/25 68/14
68/20 68/22 71/3 72/14 73/11
before [15]  1/10 4/23 5/12 7/21 8/13
10/4 20/12 21/23 27/1 27/20 27/21 29/1
40/1 53/8 57/24
begin [3]  4/13 5/15 8/15
beginning [1]  4/24
begs [1]  54/22
behalf [5]  3/2 5/7 5/9 29/5 40/23
behavior [1]  14/14
behind [1]  66/25
being [15]  5/22 30/6 30/21 33/12 36/13
42/6 47/24 48/22 49/3 57/20 59/10 59/11
64/22 72/4 73/12
belief [4]  14/9 30/9 46/3 58/25
believe [12]  12/13 15/13 25/14 34/25
38/3 46/6 48/7 49/5 50/19 55/15 70/20
73/14
believed [1]  50/12
believes [1]  30/5
Ben [1]  49/19
bench [2]  52/16 52/18
benefit [3]  57/23 61/17 70/8
BENRUBI [34]  1/12 1/13 3/14 3/16 3/17
3/19 4/4 5/2 5/4 9/23 9/23 13/17 15/12
20/16 29/17 30/3 31/22 36/21 37/23
39/20 40/22 41/10 44/1 44/3 46/16 46/18
47/2 49/20 54/24 55/1 56/21 57/22 58/11
58/16
Benrubi's [1]  2/11
benrubilaw.com [1]  1/15
Besinick [1]  4/2
best [8]  20/11 53/18 56/7 57/7 60/7
73/24 74/11 76/15
BESVINICK [8]  1/16 3/2 4/2 4/3 5/7 29/8
45/12 55/5
better [2]  7/9 73/18
between [6]  17/25 19/13 33/5 40/5 63/4
65/21
big [1]  23/8
bind [1]  36/1
Biscayne [1]  1/18
bit [3]  5/21 17/19 39/4
blanket [4]  18/11 20/1 49/3 49/4
blanketly [1]  40/7
bodily [1]  21/3
boilerplate [7]  67/8 67/10 67/22 67/25
68/4 68/11 68/19
booking [2]  54/5 54/8
both [8]  5/11 14/11 19/16 27/25 34/5
40/9 52/13 75/25
bother [1]  58/1
Boulevard [1]  1/18
break [5]  52/13 52/23 53/8 60/10 61/1
Brickell [1]  64/4
brief [1]  44/1
briefing [1]  59/17
briefs [1]  70/19
bring [1]  19/18
bringing [2]  25/19 27/24
broad [2]  61/19 61/23
brought [2]  38/25 42/16
Broward [1]  71/22

Burbar [1]  44/2
burden [3]  50/8 58/4 61/15
burdensome [1]  62/13
business [2]  38/8 38/9
but [61]  2/4 2/12 3/9 3/22 7/21 8/13 8/24
9/13 10/13 11/15 14/1 14/12 15/25 16/18
18/2 18/11 19/4 19/8 19/21 20/21 22/10
22/25 23/13 23/22 24/11 25/5 25/19 26/9
27/1 27/6 27/12 27/16 27/23 30/12 34/6
34/22 36/10 38/24 39/4 40/10 40/16
45/21 48/16 50/17 52/7 52/15 52/17
53/17 54/1 54/18 55/4 55/8 56/16 58/7
58/13 59/16 60/3 61/21 64/20 74/6 74/17

**C**

calendar [1]  8/9
call [9]  2/13 6/8 6/9 6/11 6/15 8/9 35/8
40/13 49/20
called [1]  55/19
calling [6]  4/13 4/14 4/17 5/4 5/11 45/17
camera [3]  3/20 3/21 20/7
can [34]  2/5 2/6 2/9 2/24 3/3 9/4 11/9
16/8 16/15 20/13 27/8 39/14 46/8 47/22
52/13 52/14 52/24 53/7 54/10 54/13 57/7
57/8 57/17 58/5 58/11 58/11 60/2 61/3
62/25 64/5 66/15 72/10 74/1 74/13
can't [7]  13/8 24/12 32/7 32/8 50/6 50/22
54/18
cannot [1]  3/20 65/18
capacity [1]  65/4
Capital [2]  69/9 69/22
care [3]  2/9 73/14 76/7
careful [3]  32/17 51/12 76/2
Carnegie [1]  66/18
case [81]
cases [13]  18/19 22/11 38/17 44/1 44/2
44/3 44/14 55/18 59/4 59/14 62/1 65/8
69/16
Casualty [4]  2/18 4/18 5/8 60/17
categorically [2]  11/10 20/12
categories [2]  9/12 10/4
category [3]  11/6 11/6 49/10
caught [1]  27/12
cause [8]  13/21 14/1 30/19 38/22 38/23
39/1 42/19 51/7
caused [1]  55/24
cell [1]  6/3
Cendant [1]  66/12
certain [7]  14/25 19/16 35/12 38/17
47/13 47/13 47/16
certainly [12]  9/3 14/12 14/13 31/16
35/19 35/21 44/8 48/16 49/4 50/8 51/9
74/6
certainty [1]  47/15
certify [1]  76/14
change [2]  6/16 36/11
charges [7]  10/24 22/5 24/3 38/25 56/23
59/11 59/13
CHARLES [2]  1/3 5/2
checked [1]  23/25
chimes [1]  29/8
Cir [6]  61/20 61/22 66/13 66/18 70/12
70/18
Circuit [2]  66/14 70/3
circumstance [2]  55/13 55/21
circumstances [6]  18/17 22/11 24/7
66/16 72/10 72/25
circumstantially [1]  39/13
cite [4]  55/19 59/4 67/12 69/22
cited [5]  10/10 18/19 18/22 44/3 48/16

55/18
cites [2]  13/6 44/1
citing [10]  61/19 62/13 64/3 64/24 66/11
66/16 69/9 69/14 70/12 70/17
City [3]  55/20 69/10 69/23
civil [12]  4/18 10/14 12/14 32/3 50/6
50/13 50/22 56/24 60/17 61/9 65/10
66/11
claim [22]  16/25 21/18 21/20 22/13
22/15 24/22 26/13 27/7 29/20 38/10
42/16 45/17 45/18 47/4 51/3 51/5 51/14
59/16 61/11 69/13 72/14 72/15
claimants [1]  26/18
claimed [3]  45/21 47/7 56/1
claiming [1]  56/8
claims [18]  15/1 15/2 16/16 18/10 22/3
22/6 22/18 24/21 26/19 33/16 38/17
40/20 41/1 62/16 62/24 64/17 65/3 65/3
clarifications [1]  12/11
clarified [1]  74/1
clarify [1]  31/15
cleaner [1]  73/23
cleaning [1]  50/2
clear [8]  15/25 17/13 24/24 34/17 36/3
68/20 68/20 72/11
clearly [5]  5/16 17/3 67/24 68/21 73/22
clerk's [1]  75/13
client [45]  9/8 11/20 14/23 16/19 17/4
18/1 18/4 19/6 19/9 20/2 27/10 32/21
33/6 33/25 39/24 42/1 45/4 45/6 48/4
48/5 52/10 63/15 63/24 64/2 64/5 64/7
64/8 64/12 64/16 64/17 64/25 65/6 66/22
69/3 69/19 70/5 70/25 71/9 71/13 71/17
71/24 72/1 72/20 73/10 76/1
client's [1]  22/5
closely [2]  70/11 70/17
CNA [10]  1/6 23/23 24/1 24/1 24/21
25/19 27/2 29/19 29/19 50/12
CNA's [1]  10/17
Co [4]  65/9 69/10 69/16 70/17
codefendant [1]  34/12
codefendants [2]  33/22 43/5
colleague [1]  5/8
collects [1]  62/1
come [5]  6/22 17/8 52/3 52/14 60/11
comes [1]  42/3
comfort [1]  52/13
comfortable [1]  49/17
coming [1]  57/22
comments [1]  50/19
commit [1]  35/16
committed [4]  10/13 30/7 30/21 70/8
committee [9]  24/15 24/16 24/20 24/25
25/6 37/24 37/25 38/1 38/2
committing [1]  11/2
common [3]  43/19 43/21 43/22
communication [10]  19/9 32/22 32/25
41/22 64/11 64/20 64/22 67/2 69/12
71/19
communications [32]  13/12 13/14 13/16
15/6 25/8 33/13 33/18 33/23 34/5 34/6
34/21 41/4 41/5 41/6 41/20 43/22 64/10
66/21 69/20 71/8 71/11 71/13 71/16
71/17 71/18 71/20 71/20 71/21 71/24
72/1 72/2 73/12
company [8]  2/18 4/18 5/8 33/24 34/9
38/19 60/17 64/14
compel [22]  7/1 7/7 7/9 29/17 39/23
52/23 53/13 62/16 62/21 63/16 71/10
72/2 72/5 72/11 72/12 72/18 72/22 73/6

**C**

compel... [4]  73/20 74/4 74/9 74/20
complaint [6]  8/1 8/2 13/20 45/16 56/25 58/10
complaints [1]  58/24
completed [1]  52/3
comply [2]  19/25 71/3
complying [1]  37/2
computer [1]  2/25
concern [2]  42/5 62/25
concerned [1]  46/15
concerning [6]  16/23 51/13 66/9
conclude [1]  76/4
conclusions [2]  66/1 66/8
Condo [1]  64/23
conduct [9]  12/22 14/10 18/7 26/15 26/16 50/7 70/6 70/7 70/22
conducted [2]  18/9 51/24 75/6
conduit [1]  65/2
conferred [2]  27/19 27/25
confidential [4]  22/20 35/13 35/15 64/10
confidentiality [2]  22/24 62/25
confirm [4]  23/10 46/8 47/13 60/18
confused [2]  17/7 41/9
confusing [2]  11/18 17/10
conjunction [1]  7/12
connection [2]  34/10 75/1
Conrad [1]  70/18
consequently [1]  43/10
consider [2]  51/23 63/24
considering [1]  61/12
consistent [1]  20/14
constitute [2]  38/9 71/25
contain [2]  15/5 67/17
contained [1]  54/8
contains [1]  54/10
Conte [1]  44/3
contemplation [1]  64/21
content [1]  64/21
contention [12]  23/9 56/19 56/20 56/21 57/2 57/6 57/11 57/14 58/20 58/20 74/8 74/10
contents [1]  64/9
context [6]  19/10 22/1 39/5 44/15 49/1 65/1
Continental [17]  2/18 2/20 4/1 4/1 4/17 5/8 5/9 12/2 28/6 29/2 29/6 39/6 47/2 48/12 48/14 56/22 60/17
Continental's [2]  12/15 24/25
continuance [1]  57/21
continue [1]  8/12
continued [1]  55/11
control [2]  16/13 61/19
controlled [1]  64/2
controversy [1]  61/14
Conversely [1]  71/24
conviction [1]  37/10
convictions [3]  55/8 59/4 59/19
cooperate [1]  24/2
coordinate [1]  58/5
copies [3]  23/14 23/19 23/20
copy [2]  45/1 75/12
Coral [2]  25/17 43/13
core [5]  19/13 34/23 34/24 36/14 66/6
Corp [1]  25/10
corporate [5]  57/16 57/19 58/12 59/1 65/1
corporation [6]  1/6 62/13 64/6 64/13 64/19 66/12
corporations [1]  64/17

**correct** [26]  2/19 2/20 4/4 4/5 15/24 18/4 21/16 21/16 24/23 23/4 25/24 28/2 28/8 28/19 32/12 35/24 36/1 46/4 47/9 47/16 47/19 49/15 53/20 55/5 55/6 59/22
correction [1]  9/22
correctly [1]  3/4
cost [1]  74/23
costs [2]  74/22 75/1
could [9]  14/11 17/22 32/2 42/9 46/24 47/14 68/7
counsel [20]  2/17 3/17 4/25 8/22 20/13 25/10 31/23 32/14 33/5 42/1 47/25 49/3 50/24 51/12 57/16 60/19 64/15 70/6 70/7 70/20
counsel's [3]  11/4 51/18 70/9
Countryside [1]  25/21
County [1]  71/22
couple [2]  2/11 55/18
course [7]  33/15 34/23 40/18 52/1 59/21 61/5 64/2
court [29]  1/1 1/22 5/23 10/7 16/15 18/20 18/21 20/8 24/2 27/20 27/21 35/21 35/23 36/3 44/4 44/6 44/13 46/5 50/7 50/22 52/19 55/25 61/18 67/14 70/13 70/14 73/11 75/13 76/19
courtroom [1]  9/25
courts [6]  13/11 18/22 20/8 61/23 64/18 65/24
Cox [2]  66/16 66/17
Cozort [1]  18/21
creates [1]  42/23
creation [1]  35/10
credibility [2]  59/18 59/19
crime [11]  10/13 44/17 44/19 44/21 48/25 51/22 70/1 70/3 70/8 70/13 70/22
criminal [15]  10/24 12/15 22/5 23/12 23/23 24/5 33/25 34/11 48/19 56/23 59/11 70/5 70/11 70/16 70/21
criteria [1]  28/15
critical [1]  14/5
CRR [2]  1/22 76/18
crux [1]  57/1
CSR [2]  1/22 76/18
cumulative [1]  73/7
current [1]  73/24
custody [1]  16/13
CV [1]  1/2

**D**

damage [2]  10/15 55/12
damages [8]  16/23 26/13 27/7 38/6 38/11 45/22 56/8 59/16
danger [1]  59/6
date [1]  8/13
dates [1]  57/25
David [1]  12/19
day [7]  32/1 32/9 38/23 43/9 56/15 74/6 76/7
days [2]  75/6 75/16
deadline [3]  8/7 8/8 8/9
deadlines [2]  73/2 8/12
dealing [1]  73/16
deals [1]  35/8
December [1]  8/11
decided [1]  22/4
deciding [1]  38/16
decision [6]  10/24 17/20 45/9 51/16 63/25 75/15
decision-making [1]  45/9

**decisions** [1]  75/25
deemed [1]  38/19
deeper [1]  50/18
defendant [32]  1/7 1/16 7/3 7/8 7/18 10/10 10/23 11/1 11/3 11/10 11/16 11/23 12/21 13/6 14/13 16/11 19/18 23/10 23/15 24/16 25/9 25/15 25/16 59/14 63/9 69/18 70/21 71/12 72/13 74/10 74/12 75/5
defendant's [1]  26/15
defendants [8]  3/2 8/3 10/18 15/13 25/12 43/12 49/25 68/2
defendants' [27]  7/6 7/9 10/8 11/9 13/18 14/5 14/7 15/1 16/13 17/1 17/8 17/20 21/24 24/14 25/8 26/2 51/16 53/13 58/21 58/25 62/15 62/16 63/15 71/8 71/17 73/13 73/19
defender [1]  9/25
defending [6]  18/3 33/2 42/16 42/23 43/5 43/21
defense [28]  5/6 14/1 14/2 14/5 14/10 17/24 22/1 22/7 23/23 24/6 26/1 31/23 33/5 33/21 33/22 34/23 40/19 40/24 43/15 43/18 48/12 51/8 56/4 60/21 61/12 69/9 69/14 73/13
defenses [4]  13/22 14/13 62/24 69/21
deferred [1]  57/24
defined [1]  61/5
defining [1]  64/7
definition [1]  22/9
defraud [1]  51/2
degree [1]  59/12
deluded [1]  21/23
demonstrate [1]  62/11
denied [3]  63/13 73/13 74/18
deny [8]  51/23 63/6 69/8 72/2 72/11 73/6 73/10 74/19
Department [12]  14/3 15/5 15/14 15/20 16/6 18/5 21/9 24/22 28/7 28/13 30/18 37/13
depends [1]  37/11
depo [1]  57/19
deposition [5]  29/21 29/22 57/17 58/13 59/1
depositions [2]  51/25 58/1
deprive [1]  13/14
describe [1]  43/19
described [4]  33/18 41/22 62/20 66/7
describing [2]  32/25 41/6
description [2]  42/7 44/8
descriptions [1]  20/5
deserve [1]  54/13
desisted [1]  23/16
despite [1]  7/18
detailed [1]  42/4
detect [1]  27/4
detecting [2]  27/3 35/12
determination [3]  24/21 25/2 32/2
determine [2]  30/20 44/6
determined [2]  31/12 64/18
determines [1]  37/11
Development [1]  25/10
DFS [17]  10/12 10/19 10/20 29/20 30/2 31/7 31/9 31/11 31/12 31/20 31/20 32/13 40/14 41/5 41/6 47/25 71/19
dialed [1]  6/9
diary [3]  15/2 15/2 16/16
dictates [1]  24/8
did [35]  10/20 12/4 13/1 19/18 23/3 23/3

**D**

did... [29]  23/17 23/21 23/23 25/18 25/20
26/2 26/3 26/4 26/7 27/1 29/23 32/19
32/22 33/12 34/15 40/7 41/19 42/4 42/5
42/5 42/19 43/14 45/21 45/22 47/12
48/20 57/8 69/18 75/17
didn't [14]  12/6 22/8 23/21 24/9 27/9
27/16 37/18 50/3 51/3 51/19 53/4 57/23
60/3 75/19
different [4]  22/9 35/21 45/16 53/3
difficult [1]  20/19
difficulties [1]  2/4
digital [2]  1/9 76/15
ding [1]  37/19
directly [1]  69/12
disable [1]  6/20
disabled [1]  6/23
disagree [1]  39/15
disclose [2]  52/5 64/8
disclosed [1]  43/2
disclosing [3]  43/3 43/4 64/9
disclosure [20]  13/8 14/23 16/19 17/13
24/4 31/11 32/17 35/20 37/9 42/25 43/1
43/4 43/6 43/9 44/4 48/11 62/4 65/25
67/3 75/18
disconnected [2]  6/7 6/22
discover [1]  65/11
discoverable [10]  35/24 55/15 56/15
56/16 65/16 66/5 72/7 72/8 72/10 74/5
discovered [2]  65/15 66/15
discovery [26]  8/7 8/8 13/15 21/24 27/7
31/10 47/19 48/18 49/24 51/25 52/3
54/14 55/15 57/4 61/8 61/10 61/16 61/17
61/19 61/21 61/24 62/2 62/3 62/10 65/22
66/11
discretionary [1]  30/11
discussed [2]  14/22 22/22
discussion [1]  41/25
disgrace [1]  56/2
dismiss [2]  8/4 51/5
dispensing [1]  65/5
disposition [1]  4/21
disprove [1]  39/12
dispute [5]  7/17 27/23 31/24 48/18 48/20
disputed [1]  62/5
disservice [1]  67/19
distinction [4]  19/13 40/5 51/19 65/20
distress [3]  55/12 55/24 59/10
district [5]  1/1 1/1 8/14 67/12 67/14
diversity [3]  63/25 65/7 65/8
division [5]  16/6 30/7 30/15 37/11 71/19
do [59]  5/13 5/23 6/9 6/18 7/20 8/15
8/21 9/3 9/16 10/25 13/17 17/1 17/6
20/1 20/12 20/17 21/23 23/6 23/7 24/1
24/12 26/20 26/23 27/6 27/9 29/12 32/8
32/19 32/20 33/1 35/2 37/11 39/6 39/25
40/12 41/3 47/11 49/5 51/19 51/22 51/24
52/6 52/12 52/24 53/7 54/4 54/13 57/7
57/7 57/10 68/2 68/5 68/7 68/8 68/8
68/9 68/17 74/2 75/16
doctrine [11]  11/21 12/8 17/5 42/14
42/22 48/24 65/8 65/23 66/19 66/25
69/17
document [6]  28/15 32/18 34/4 45/1 61/4
70/14
documents [57]  7/19 10/15 11/14 12/1
12/9 13/9 15/1 15/14 16/12 16/22 17/15
19/16 19/24 20/6 20/9 20/14 20/24 22/24
23/11 23/14 23/25 24/5 31/17 31/22 32/2
32/5 33/24 34/10 40/4 40/8 41/4 42/7
44/4 45/8 47/13 48/13 48/14 48/15 48/16
48/23 49/14 49/18 50/4 50/4 50/10
50/15 50/18 51/9 51/11 51/13 53/3 62/24
65/11 68/20 68/21 71/14 72/4
does [10]  11/14 31/17 36/11 38/2 43/17
45/22 59/10 64/13 67/3 70/22
doesn't [8]  14/11 18/11 35/25 37/1 37/4
48/4 51/14 52/1
doing [8]  3/19 7/21 9/13 10/25 26/21
39/6 50/19 50/21
don't [37]  3/9 6/17 15/2 16/4 16/7 16/9
19/20 19/25 20/4 22/25 24/11 26/25
29/10 34/20 38/2 39/14 41/13 42/23 44/7
44/17 44/24 45/5 46/4 46/5 49/2 49/4
51/18 51/21 52/9 52/24 53/6 54/7 55/3
58/1 59/18 60/3 75/20
done [2]  20/12 75/4
down [4]  5/21 5/24 40/1 42/3
Draper [1]  34/9
draw [1]  44/9
drawn [1]  35/6
draws [1]  65/20
drew [1]  34/3
dropped [6]  6/8 6/11 6/12 6/12 6/17
56/23
Drummond [1]  70/17
duplicative [1]  73/7
during [12]  6/5 6/7 12/22 18/7 18/9
23/12 27/24 33/24 34/13 40/18 41/12
74/5
Dynamic [1]  62/8

**E**

each [7]  8/16 11/11 20/6 39/3 54/1 57/25
75/1
earlier [1]  31/3 40/14
early [1]  57/7
easily [2]  56/3 60/2
East [1]  64/23
easy [2]  36/7 75/25
ECF [22]  4/22 7/2 7/3 7/4 7/7 7/8 7/10
7/11 7/14 7/14 8/2 8/4 8/5 8/7 53/13
62/7 63/5 63/14 63/17 67/7 73/14 73/16
ECF-40 [1]  7/3
ECF-45 [1]  7/4
effect [3]  16/18 45/23 75/20
effectively [1]  42/18
effects [2]  56/3 56/6
effort [2]  31/24 48/17
Eilerson [25]  25/10 25/11 25/14 25/16
43/14
either [5]  6/11 6/14 39/12 69/24 75/4
element [4]  38/6 38/10 51/7 69/13
elements [2]  42/18 69/3
Eleventh [2]  66/14 70/3
else [9]  3/8 4/9 6/2 23/6 29/1 48/21 49/9
52/4 54/22
emails [1]  33/17
embody [1]  61/23
emotional [4]  55/12 55/24 56/5 59/9
emphasize [1]  55/25
employ [1]  61/23
employee [1]  24/21
employees [2]  25/8 25/9
EMSI [1]  12/20
encompasses [1]  66/7
encouraged [1]  56/22
end [8]  5/19 5/20 5/20 20/17 32/1 32/9
38/22 43/8
endeavored [1]  41/3
ending [3]  2/15 2/23 3/12
enforcement [13]  16/4 16/3 16/6 17/21
23/12 32/13 32/23 33/1 33/14 33/14
33/19 34/5 41/5 43/1 48/1 73/2
engaged [2]  70/5 70/21
enjoys [2]  66/14 72/9
enough [2]  53/19 54/15
ensure [1]  5/25
entered [1]  6/14
entering [1]  63/2
enters [1]  36/4
entities [3]  12/11 16/6 43/15
entitled [6]  17/13 18/23 50/1 58/8 58/13
76/16
entitles [1]  23/19
entries [1]  52/9
envision [1]  20/18
Equity [4]  12/13 12/17 25/13 34/12
equivalent [1]  65/19
ESQ [3]  1/12 1/16 1/17
essentially [1]  33/14
establish [2]  64/14 70/20
established [3]  39/10 39/12 72/24
establishes [1]  66/3
et [1]  1/6
etc [1]  50/2
Europe [1]  64/24
evaluated [1]  16/24
evaluation [6]  16/23 16/24 16/24 21/3
51/14
even [7]  35/24 41/6 44/1 44/6 50/6 50/13
65/22
eventually [1]  39/2
every [3]  28/12 32/18 32/22
everybody [1]  48/21
everyone [8]  2/3 2/10 3/25 4/6 60/18
60/25 75/23 76/6
everything [8]  16/1 18/25 31/7 32/12
32/19 33/13 40/12 47/24
evidence [3]  44/20 50/4 64/3
evidenced [1]  74/24
exactly [10]  12/25 20/16 20/18 23/16
24/12 25/1 31/4 45/7 54/20 57/10
exaggerated [1]  45/21
exaggerating [2]  29/22 50/17
examination [2]  30/19 66/21
example [5]  34/3 40/14 45/18 65/2 71/16
examples [1]  71/23
except [2]  32/20 37/2
exception [11]  44/13 44/17 44/20 44/21
48/25 51/22 70/2 70/4 70/13 70/22 73/4
exceptional [5]  18/17 22/11 24/7 36/12
72/24
excluded [1]  40/8
exculpatory [3]  10/19 46/19 50/12
Excuse [1]  30/3
exempt [1]  37/8
exhibit [2]  47/12 54/6
exhibits [2]  14/25 15/8
exist [4]  18/17 68/21 72/25 73/22
existed [1]  16/20
existence [1]  38/7
exit [1]  3/21
expect [3]  13/8 71/1 75/1
expedition [1]  63/11
expense [1]  61/17
expert [1]  8/8
explanatory [1]  21/4
explore [1]  59/17
extended [1]  56/22

**E**

extensive [1]  56/4
extent [7]  30/20 40/11 43/22 45/3 71/12
72/3 74/1
extraordinary [1]  66/16

**F**

F.R.D [1]  64/4
facie [2]  70/4 70/21
facing [1]  59/12
fact [33]  5/16 6/14 8/7 11/13 11/22 11/24
12/1 12/4 12/7 13/8 13/3 19/11 19/13
20/7 20/21 21/15 34/16 36/25 37/16 40/6
41/21 44/7 44/20 49/6 58/13 58/23 65/21
72/6 72/6 72/13 72/13 72/15 74/24
fact-specific [1]  20/21
facts [8]  11/3 13/13 21/14 30/19 50/13
57/2 57/13 62/7
factual [2]  10/11 13/15
factually [2]  41/20 41/22
fail [1]  67/15
failed [1]  70/20
failure [1]  22/10
fair [1]  62/7
fairly [1]  47/16
fairness [4]  13/7 24/8 66/20 69/18
faith [24]  13/21 14/4 14/5 14/9 14/14
18/20 21/25 22/3 22/8 22/9 22/10 22/11
38/5 38/6 38/16 38/19 41/1 42/19 44/12
44/14 51/7 51/7 51/8 51/10
fall [2]  41/25 50/1
falls [1]  73/10
false [2]  56/7 59/9
familiar [1]  10/1
family [1]  56/6
far [2]  15/25 39/4
Farm [1]  65/9
Farnsworth [1]  61/22
favor [1]  61/21
fear [1]  67/1
federal [8]  18/22 61/9 61/18 62/3 64/3
65/7 65/10 66/11
feel [3]  9/2 50/17 52/1
feeling [1]  51/21
fees [1]  74/22
felony [1]  59/12
few [1]  5/13
file [1]  15/1
filed [9]  7/1 7/8 7/10 7/14 7/17 8/2 8/3
8/11 27/14
files [2]  19/1 28/12
filing [1]  27/1
Finally [1]  6/6
FINANCIAL [6]  1/6 15/5 15/15 15/20
16/7 28/7
find [13]  5/18 13/11 37/20 54/24 63/7
69/18 69/24 70/14 72/17 72/18 73/6
74/20 74/23
findings [1]  75/10
finish [1]  9/1
Fire [2]  69/10 69/23
firm [1]  34/9
first [19]  2/15 8/20 9/6 10/7 11/13 53/7
59/12 61/9 62/15 63/20 63/23 66/4 67/7
67/7 69/4 71/8 73/14 74/16 74/19
Fisher [3]  45/18 45/20 50/20
Fisher's [4]  46/20 47/4 47/7 47/17
fishing [1]  63/10
five [6]  9/7 9/10 9/16 49/21 58/16 59/13
FL [2]  1/14 1/18

Fla [10]  61/25 62/8 62/13 64/24 65/9
67/18 69/16 69/16 69/16 69/23
FLORIDA [18]  1/1 1/4 18/21 28/7 28/13
28/16 31/1 35/3 36/19 36/24 38/6 44/12
45/1 64/5 64/6 65/6 71/19 71/19
focus [1]  10/22
focuses [1]  69/11
folks [1]  4/7
follow [4]  5/24 36/3 36/4 50/3
followed [1]  39/11
following [5]  2/2 25/9 39/10 61/8 71/6
follows [1]  62/21
foregoing [2]  16/11 67/18 76/14
Forensic [1]  30/8
forget [1]  43/14
form [6]  15/18 15/19 16/16 31/8 31/9
46/7
formally [2]  4/13 4/24
forms [1]  40/9
Fort [4]  1/4 9/25 52/20 75/13
forth [2]  31/1 61/6
Forum [1]  1/13
forward [2]  48/20 61/4
found [1]  38/25
four [2]  3/25 21/5
framed [2]  14/13 61/7
frankly [1]  39/15
fraud [56]  11/2 11/17 14/3 14/4 15/15
16/6 18/5 21/9 24/15 24/16 24/20 24/23
24/25 25/6 27/3 27/5 30/13 35/1 35/9
35/10 35/11 35/12 35/16 36/16 36/22
36/23 36/24 37/1 37/4 37/6 37/8 37/17
37/24 37/24 37/25 38/3 42/21 44/17
44/19 44/21 47/3 48/25 50/5 50/6 50/14
50/22 51/1 51/13 51/17 51/22 70/2 70/4
70/8 70/13 70/22 71/20
fraudulent [6]  30/6 30/21 70/5 70/11
70/16 70/22
free [1]  76/8
frequency [1]  38/8
frequently [1]  67/15
front [2]  45/5 53/22
full [4]  10/20 61/21 62/6 72/25
fully [1]  59/1
functioned [2]  65/2 65/4
further [6]  29/22 30/17 45/10 54/14 57/3
75/7
furtherance [2]  70/10 70/16
future [2]  6/1 74/13
FWP [1]  12/1

**G**

gain [1]  10/13
Gamble [1]  61/22
garbled [1]  5/20
garnered [1]  73/8
gather [1]  52/13
gave [3]  15/5 15/19 46/16
general [4]  20/22 28/7 38/7 38/9
generalized [1]  67/11
generally [5]  49/23 59/5 61/7 65/11
66/10
generated [1]  21/5
get [24]  6/4 6/7 6/7 6/17 6/21 10/4 12/17
15/23 19/8 20/12 20/22 32/15 33/9 38/11
39/22 39/24 50/1 50/3 51/4 51/6 53/4
60/8 68/24 75/12
getting [4]  4/23 5/12 5/19 39/4
give [16]  3/3 3/6 3/9 4/2 6/18 8/16 9/3

53/23 58/16
given [7]  16/16 16/17 44/7 49/8 50/15
50/18 53/18
gives [1]  31/2
giving [1]  24/10
global [3]  61/3 71/1 71/7
gmail.com [2]  1/23 76/19
go [17]  6/13 7/21 7/22 9/21 13/4 17/17
19/24 20/11 20/13 20/20 31/17 41/17
42/11 48/20 50/18 59/24 76/9
goes [4]  22/5 23/3 41/21 59/15
going [60]  3/9 5/17 8/16 8/19 8/24 9/6
9/14 10/20 18/25 20/18 20/24 21/22 23/9
24/22 27/12 29/5 29/7 36/4 36/17 44/22
49/7 49/19 49/20 51/23 51/25 52/17
52/17 55/4 58/18 60/7 60/9 60/10 60/14
61/2 61/3 61/7 62/15 62/18 62/21 62/22
63/3 63/6 63/10 63/22 67/5 67/8 67/22
68/13 72/5 72/18 72/21 73/6 73/9 73/19
74/3 74/9 74/16 74/19 75/3 76/8
Gonzalez [4]  55/19 56/1 56/4 56/10
good [7]  2/3 5/1 14/5 14/9 14/14 29/18
58/3
gosh [1]  17/6
got [8]  3/18 3/24 4/6 34/18 52/8 54/17
54/22 57/2
governs [2]  65/6 65/7
grant [1]  62/21 62/23 63/3 72/5 72/12
72/18 72/22 73/19 74/4 74/9 74/17
granted [4]  63/2 63/12 71/12 73/8
great [3]  4/6 4/12 76/6
grocery [1]  50/2
grounds [3]  11/1 67/16 68/23
group [1]  11/9
guess [2]  53/7 75/19
guidelines [2]  20/22 38/18
guilty [2]  11/2 14/1
guise [1]  41/25
guy [1]  50/23

**H**

had [20]  10/12 10/17 11/3 24/2 26/3
32/3 32/20 39/25 40/12 47/5 47/5 47/13
50/13 51/2 51/3 56/4 57/21 63/9 74/25
75/20
handle [1]  8/14
handling [6]  22/3 22/6 38/17 40/20 40/24
41/2
happened [3]  6/8 43/9 50/17
happy [2]  68/5 76/6
Harbor [1]  69/15
hard [1]  41/15
hardship [4]  22/12 65/18 65/24 66/6
harms [1]  56/1
has [47]  4/19 4/20 6/12 6/23 10/9 11/1
11/10 11/25 13/13 14/14 15/16 18/20
19/9 20/8 29/9 30/6 30/24 32/14 34/19
34/19 35/9 35/11 36/11 37/24 38/11
38/12 40/22 44/14 47/19 48/10 52/3
54/17 57/24 58/9 61/4 64/8 65/17 65/23
67/15 67/25 68/14 70/20 71/2 71/12
72/13 72/24 73/2
have [109]
haven't [2]  50/18 51/24
having [4]  2/4 5/13 30/5 38/17
he [33]  4/20 13/1 23/24 23/25 24/1
29/21 29/23 32/6 33/9 34/14 34/15 34/19
37/20 38/11 38/11 45/21 45/22 45/22
50/10 50/11 50/17 54/11 54/12 54/15
54/16 54/16 56/6 56/23 60/3 70/6 70/6

# H

he... [2]  70/7 70/8
head [2]  22/5 34/20
hear [13]  2/5 2/6 6/13 8/16 8/22 9/19
  44/18 52/9 52/10 53/1 53/6 55/3 58/16
heard [1]  57/13
hearing [10]  1/9 6/7 6/22 7/15 20/18
  27/24 70/19 74/25 75/24 76/4
hearings [1]  6/5
heart [2]  71/2 73/2
heightened [1]  64/18
held [2]  2/2 67/15
helps [1]  13/6
her [1]  18/24
here [39]  4/8 6/25 6/25 8/1 9/25 10/21
  13/10 14/25 17/4 19/2 24/4 25/25 29/16
  31/4 33/3 33/7 33/16 34/20 34/25 36/13
  38/21 39/15 41/1 42/15 44/11 44/19
  45/17 49/2 50/25 50/19 50/21 51/3 52/19
  53/21 56/9 59/8 63/22 69/18 74/23
hereby [1]  76/14
herself [1]  29/9
hey [3]  50/5 50/19 50/20
hide [1]  24/11
him [12]  9/25 31/23 33/10 33/11 37/19
  38/10 48/13 49/20 51/4 51/5 55/11 60/4
his [18]  11/5 14/10 18/24 29/22 29/23
  29/23 30/1 38/4 50/10 50/17 51/5 56/6
  56/11 56/23 66/1 66/5 71/18 73/21
history [1]  56/5
hit [1]  2/24
hold [5]  2/9 14/21 18/15 28/9 52/15
holding [1]  69/16
Honor [115]
Honor's [1]  57/23
HONORABLE [1]  1/10
hope [3]  2/5 20/17 61/3
hoping [1]  20/17
hour [2]  8/24 74/25
House [1]  64/23
how [21]  10/24 13/7 13/17 16/24 17/1
  17/6 17/22 20/18 20/22 21/23 26/9 26/17
  26/25 27/2 27/3 28/14 29/14 50/16 62/12
  63/7 73/22
however [7]  54/4 63/3 64/17 65/14 66/23
  72/8 74/23
humiliation [1]  56/2

# I

I'd [4]  8/15 43/25 52/6 52/12
I'll [3]  6/13 9/19 58/16
I'm [35]  3/1 4/19 6/20 9/24 10/1 12/10
  12/19 14/17 17/7 17/9 18/8 20/16 20/17
  23/9 31/14 32/12 40/11 41/9 41/10 41/17
  45/17 46/4 46/24 47/10 47/16 47/18
  53/20 55/2 55/4 64/3 66/16 68/3 69/9
  70/12 73/4
I've [1]  3/24
identify [4]  2/13 3/13 19/24 29/8
if [70]  2/9 2/24 5/19 6/6 6/17 6/21 8/25
  9/7 9/10 11/18 15/8 17/24 19/20 20/21
  22/8 22/25 29/9 30/11 30/20 32/12 32/25
  34/22 34/25 35/22 36/4 36/10 36/21 37/3
  37/16 37/18 38/24 39/22 41/6 41/9 41/10
  41/24 42/9 42/19 43/21 44/6 46/4 46/12
  46/18 47/2 47/6 47/6 47/22 49/17 49/25
  50/3 50/5 51/6 51/22 52/1 52/18 54/10
  54/11 54/15 54/21 55/3 56/23 63/1 65/15
  65/22 68/5 68/21 73/22 74/13 75/12
  75/16

illegal [1]  26/21
imagine [1]  38/22
immune [1]  42/20
immunity [8]  14/2 18/12 22/7 31/2 42/18
  51/6 51/8 66/15
immunizes [1]  14/2 22/8
implication [1]  75/21
implied [3]  13/5 66/24
impliedly [1]  14/8
importance [2]  61/13 61/15
important [3]  5/24 30/5 49/24
importantly [2]  6/6 10/25
impossible [1]  20/5
imprecise [1]  25/4
impressions [4]  11/4 65/25 66/8 67/3
improper [5]  16/15 26/21 63/10 67/11
  67/16
improperly [1]  36/15
in [221]
inclined [1]  44/6
include [2]  35/11 71/17
included [4]  13/20 19/21 73/25 74/15
includes [1]  9/8
including [1]  11/3 56/2
incorrect [3]  15/12 46/21 47/8
indeed [1]  50/11
independent [3]  27/23 30/19 39/3
Indian [1]  69/15
indicated [1]  29/17
individuals [2]  71/11 73/11
individuated [1]  42/4
information [45]  10/5 11/5 17/3 18/23
  22/20 23/17 30/8 30/16 30/16 30/20 31/5
  31/11 32/7 33/15 35/2 35/3 35/4 37/12
  44/10 46/12 46/13 46/19 47/4 55/7 55/9
  55/15 55/16 55/23 56/14 56/16 56/20
  58/21 58/25 59/4 59/15 61/15 62/4 65/22
  69/6 69/8 72/19 72/23 73/3 73/7 74/4
initial [1]  7/13
injected [4]  13/19 13/24 14/14 69/12
injection [2]  13/5 14/22
injects [1]  66/20
injured [1]  56/2
injuries [5]  29/22 29/24 30/1 45/21 50/17
injury [6]  10/16 21/3 26/19 47/5 50/21
  51/5
inquiries [1]  20/21
inquiry [2]  64/19 69/11
inspection [1]  20/7
inspections [1]  50/2
instance [1]  16/22
instead [1]  20/1
instigated [1]  10/23
instructions [1]  71/3
insurance [30]  4/18 11/2 11/16 14/3 16/6
  18/5 21/9 21/25 24/23 27/5 28/13 30/6
  30/13 30/21 35/1 36/16 37/1 37/4 37/6
  37/8 38/19 42/20 51/1 51/17 64/14 64/23
  65/9 69/10 69/15 71/20
insured [16]  10/17 12/17 32/4 32/6 32/7
  33/2 33/5 33/6 33/22 34/8 34/23 40/19
  40/24 43/3 50/16 71/25
insured's [1]  71/25
insurer [6]  28/12 30/5 30/11 33/5 37/12
  65/1
insurers [1]  30/12
intangible [2]  56/6 56/8
intelligence [1]  27/4
intent [3]  38/12 51/2 51/2
interest [1]  43/19 43/21 43/23

interesting [1]  31/12
interference [1]  6/4
internal [7]  17/25 24/25 32/5 33/17 41/7
  41/24 51/15
internally [1]  42/1
interrogatories [5]  53/2 53/4 57/6 58/21
  73/17
interrogatory [12]  53/14 53/14 53/25
  56/18 56/19 57/11 58/20 73/17 74/3 74/8
  74/9 74/10
interrupt [1]  8/25
intimidate [1]  37/19
into [13]  6/9 6/10 6/22 10/4 13/19 14/14
  18/14 19/8 32/15 56/10 66/20 69/12
  69/20
invade [1]  49/6
investigated [1]  31/12
investigating [1]  35/12
investigation [8]  15/15 18/6 18/9 21/6
  21/7 21/14 23/13 30/18
investigative [4]  12/20 21/5 30/7 40/15
investigator [2]  34/22 65/3
invoke [1]  64/16
invoked [1]  33/21
invoking [1]  69/5
involved [2]  28/15 58/21
involves [1]  22/3
irrelevant [1]  74/20
IRT [2]  25/17 43/13
is [400]
isn't [3]  4/10 48/5 53/3
issue [35]  2/9 9/8 13/5 13/12 13/14 14/8
  14/22 17/4 17/4 19/9 27/20 28/24 33/3
  39/18 41/24 42/14 42/15 42/22 42/24
  43/24 48/24 50/12 52/17 55/23 56/10
  66/20 67/6 68/13 68/14 68/15 69/2 69/2
  69/6 69/17 69/24
issues [11]  7/17 13/19 14/6 27/20 33/7
  42/10 52/11 56/10 61/13 61/16 62/5
issuing [1]  75/8
it [170]
it's [8]  2/17 18/23 22/10 35/24 46/12
  52/8 53/18 73/11
its [17]  7/8 10/25 14/5 14/9 25/8 25/9
  30/17 53/18 53/18 61/17 65/13 65/17
  67/24 69/9 73/3 74/11 74/13
itself [1]  31/12

# J

jail [1]  59/12
Jan [1]  62/14
January [5]  1/5 7/17 27/14 57/17 76/18
jemancari [2]  1/23 76/19
Joanne [3]  1/22 76/18 76/18
joined [1]  3/8
joint [14]  7/13 8/6 8/12 26/1 27/13 27/13
  27/15 27/25 33/22 43/15 43/18 73/12
  73/25 74/15
jointly [2]  8/21 43/5
Josendis [1]  61/20
JSR [3]  7/16 8/18 26/1
JSRs [1]  7/21
judge [10]  1/10 2/3 4/19 4/20 8/14 10/4
  13/25 14/11 26/14 55/2
judgment [1]  30/17
July [1]  62/8
jurisdiction [1]  30/24
jurisprudence [1]  18/20
jury [1]  26/14
just [47]  3/8 3/24 5/13 5/21 6/15 6/20

**J**

just... [41]  6/24 7/22 8/15 9/4 9/22 10/5
12/10 14/21 15/25 17/11 19/3 19/11
20/17 22/2 28/8 29/11 29/19 31/15 34/3
35/25 36/3 38/3 39/4 40/7 41/12 41/15
41/16 42/11 47/10 47/13 49/23 50/17
51/18 53/20 54/25 55/14 60/1 62/7 62/20
67/23 68/16
justified [1]  74/24

**K**

keep [3]  8/23 8/24 9/4
keeping [1]  61/24
keeps [1]  50/24
kind [9]  9/4 19/23 21/4 23/16 24/17
37/18 44/10 49/13 60/1
kinds [1]  38/11
Klecker [1]  70/12
knew [2]  10/12 51/3
know [38]  2/13 3/9 3/13 6/10 9/2 9/10
10/14 11/22 12/13 15/2 16/4 16/8 16/9
17/2 19/20 20/4 21/11 26/25 27/11 29/19
34/20 39/14 41/15 41/16 43/13 46/5
50/16 50/21 51/21 52/7 53/10 54/7 54/21
55/3 57/13 58/8 58/14 74/22
knowledge [4]  4/11 30/5 30/9 57/9
knows [3]  13/4 54/15 54/16
Kubicki [2]  12/15 34/9

**L**

lack [1]  13/21
ladies [1]  5/10
landline [1]  6/3
language [6]  25/5 66/23 67/17 67/19
68/1 68/11
last [5]  6/8 9/23 43/24 52/22 60/1
lastly [2]  7/9 74/14
later [1]  19/9
latest [1]  7/16
Lauderdale [4]  1/4 9/25 52/20 75/13
LAURA [1]  1/16 3/1 4/1 4/3 5/7 29/8
LAVAN [1]  1/17
law [29]  1/13 16/1 16/3 16/5 17/12 17/21
23/12 24/12 30/23 31/1 32/13 32/23
32/25 33/14 33/14 33/18 34/5 34/6 34/9
35/25 39/16 41/5 43/1 48/1 63/25 65/6
65/7 65/20 73/1
lawfulness [1]  14/9
lawyer [1]  48/12
lawyers [4]  33/23 34/8 43/3 48/9
lbesvinick [1]  1/19
leads [1]  18/14
learned [1]  64/10
least [2]  10/17 70/11
leave [3]  20/10 59/2 67/19
leaves [1]  73/25
left [1]  6/14
legal [13]  10/5 19/10 20/13 25/9 61/8
64/12 64/15 64/21 64/22 65/5 66/1 66/8
67/3
legitimate [1]  10/16
Lester [1]  34/7
let [19]  2/9 2/13 3/12 3/24 9/2 9/4 9/9
13/10 15/9 24/13 31/14 35/17 35/17
37/14 39/8 39/8 42/11 45/12 57/15
let's [10]  17/17 17/19 20/17 20/20 25/7
34/17 36/3 52/12 52/14 59/24
letter [6]  11/25 12/19 12/19 18/15 18/15
18/18
level [1]  29/18

**M**

leverage [1]  51/4
liability [5]  10/19 10/18 16/23 46/20 47/8
liable [1]  50/16
liberal [1]  61/23
licensing [1]  30/23
like [18]  8/15 9/7 9/10 12/24 22/2 28/21
44/22 51/18 52/1 52/2 52/5 52/12 56/12
57/11 58/1 60/1 64/1 75/16
likely [1]  61/17
likewise [2]  43/6 48/24
limit [3]  9/11 63/3 74/17
limited [3]  28/8 48/15 63/12
limits [1]  40/25
line [6]  4/9 34/2 34/3 34/3 35/6 44/9 60/18
LISA [5]  1/17 2/17 2/19 4/1 5/9
list [2]  37/4 54/6
listed [2]  12/11 67/23
litigant [1]  65/11
litigation [17]  10/14 11/15 12/3 12/9
12/23 14/14 18/3 18/7 19/4 19/5 64/15
65/12 66/5 66/10 66/12 69/13 69/20
little [8]  5/17 5/21 6/13 10/4 11/18 17/19
39/4 47/1
live [1]  5/23
LLP [1]  1/17
log [13]  19/24 20/14 20/25 23/23 23/25
24/19 25/5 32/18 42/4 42/5 48/7 61/5
62/17
logs [4]  19/20 19/22 26/8 49/13
look [3]  11/19 15/8 28/10
looked [2]  44/14 48/12
looking [15]  10/13 21/24 22/18 25/19
26/2 28/6 28/22 34/4 35/16 37/16 39/16
47/10 47/12 49/24 53/21
Lorraine [1]  34/7
lose [1]  36/18
loses [1]  66/22
lost [3]  17/6 17/9 17/11
lot [7]  15/3 20/8 27/1 44/18 45/15 45/17
57/12
lpach [1]  1/20

**M**

ma'am [2]  3/5 45/19
made [17]  10/12 17/15 28/6 30/20 32/1
32/17 35/13 40/5 58/24 58/24 63/8 64/11
64/20 65/23 67/25 71/3 75/5
magistrate [1]  1/10 38/25
main [1]  6/9
make [20]  3/24 6/16 7/23 9/2 13/8 17/13
22/4 31/6 41/8 41/12 41/16 43/9 46/15
52/18 61/2 67/1 68/8 68/17 68/20 70/4
makes [2]  17/3 27/22
making [5]  42/20 45/9 45/10 69/7 73/4
malice [4]  13/21 14/4 38/12 39/13
malicious [5]  10/22 36/14 40/21 44/15
55/22
managed [1]  24/20
manager [1]  25/14
Mancari [3]  1/22 76/18 76/18
mandatory [2]  30/10 30/12
manner [1]  10/23
manual [1]  38/15
manuals [3]  22/18 38/16 62/16
many [4]  53/23 69/16 73/22 74/1
Maplewood [1]  69/15
March [5]  8/7 8/8 52/1 58/4 67/13
market [1]  27/2
match [1]  20/14
material [1]  9/2

**M**

materials [5]  10/19 49/25 65/15 65/17
matter [8]  24/10 31/10 32/9 38/15 43/10
61/11 66/19 76/16
mattered [1]  19/1
may [18]  2/8 4/23 18/1 22/9 30/12 30/17
37/9 37/10 37/10 41/9 41/13 42/9 45/21
61/10 62/6 65/11 65/15 73/18
McIntyre [1]  55/18
me [53]  2/5 2/6 2/9 2/13 3/3 3/6 3/9 3/13
3/24 4/2 4/21 5/8 6/8 6/14 6/18 8/13 9/2
9/4 9/9 11/18 13/10 15/9 15/17 17/9
19/17 20/1 20/5 20/22 21/23 24/13 30/3
30/7 31/14 35/17 35/17 35/22 36/1
37/14 39/8 39/8 39/10 42/11 44/22 45/5
45/12 46/4 52/15 53/22 53/23 55/3 57/15
67/14 68/5
mean [16]  19/20 23/15 35/5 35/15 35/21
36/13 36/14 38/23 39/2 47/25 49/13 52/6
53/7 60/2 60/3 68/2
means [4]  13/15 51/1 54/3 65/19
measures [1]  5/24
Mediation [1]  8/8
medical [1]  56/10
meet [6]  5/5 5/11 22/12 42/6 50/6 50/22
meets [1]  44/19
memo [1]  50/20
memoranda [2]  17/25 51/15
mental [4]  11/4 65/25 66/7 67/3
mention [1]  25/25
mentioned [1]  8/4
mere [1]  65/2
merely [2]  13/23 72/9
merit [1]  67/17
met [2]  23/24 52/2
Miami [1]  1/18
middle [1]  38/24
might [9]  13/25 19/16 20/6 20/7 28/3
32/23 35/16 40/15 67/1
Milian [2]  12/13 34/7
Milinazzo [1]  65/9
mimicked [1]  49/23
mind [7]  14/5 14/9 19/1 22/16 51/9 54/12
54/23
minute [9]  15/9 35/18 37/14 39/9 50/6
50/21 52/12 60/10 68/24
minutes [15]  8/17 9/7 9/8 9/9 9/10 9/14
9/17 9/17 9/19 29/15 49/8 49/21 52/16
58/17 60/12
misdescribed [1]  37/24
misrepresented [1]  47/3
miss [1]  26/3
missing [2]  27/17 27/18
misspelled [1]  4/2
modus [1]  10/25
moment [3]  3/6 3/10 53/23
more [6]  5/25 19/14 54/1 59/20 63/8
73/22
Moreover [1]  61/18
Morse [2]  48/12 50/9
Morse's [1]  23/22
most [4]  6/6 10/25 16/15 40/23
mostly [1]  75/19
motion [43]  1/9 7/1 7/2 7/5 7/6 7/7 7/9
8/3 8/12 8/13 9/6 12/5 15/1 19/18 27/23
28/4 29/12 39/23 52/7 52/23 53/13 62/15
62/21 62/23 63/5 63/15 63/17 71/10 72/2
72/5 72/11 72/12 72/18 72/22 73/6 73/10
73/14 73/19 74/4 74/9 74/12 74/17 74/20
motions [13]  4/20 4/22 5/12 6/25 7/12

## M

motions... [8]  7/21 8/4 8/16 27/16 29/17 45/17 74/25 75/2
motor [1]  54/2
move [1]  44/23
Mr [27]  3/19 5/4 9/16 13/17 15/12 20/16 29/17 30/2 31/22 36/21 37/23 39/20 40/22 41/10 44/1 44/3 46/16 46/18 47/2 49/19 49/20 54/24 55/1 56/21 57/22 58/11 58/16
Mr. [52]  9/24 12/22 18/7 23/13 23/22 24/5 29/20 31/5 31/8 31/10 31/23 32/3 32/5 32/7 32/14 32/20 33/8 33/16 33/23 33/25 34/11 34/13 34/14 34/18 34/19 34/22 36/15 37/19 38/10 38/24 39/1 40/15 40/22 40/25 43/10 44/10 45/10 47/25 48/12 48/18 48/23 49/20 50/7 50/9 54/10 55/11 55/13 56/1 56/4 56/10 56/23 57/10
Mr. Ackley [27]  12/22 23/13 31/8 31/10 32/3 32/5 32/7 32/20 33/8 33/16 33/23 34/13 34/18 34/19 36/15 37/19 38/24 39/1 43/10 44/10 45/10 48/23 54/10 55/11 55/13 56/23 57/10
Mr. Ackley's [14]  18/7 24/5 29/20 31/5 31/23 32/14 33/25 34/11 38/10 40/22 40/25 47/25 48/18 50/7
Mr. and [2]  56/1 56/10
Mr. Barubi [2]  9/24 49/20
Mr. Battle [3]  34/14 34/22 40/15
Mr. Gonzalez [1]  56/4
Mr. Morse [2]  48/12 50/9
Mr. Morse's [1]  23/22
Mrs. [2]  56/1 56/10
Mrs. Gonzalez [2]  56/1 56/10
Ms. [13]  29/8 32/11 45/12 46/4 46/8 46/20 46/23 47/4 47/7 47/17 50/20 55/5 60/23
Ms. Besvinick [2]  45/12 55/5
Ms. Fisher [1]  50/20
Ms. Fisher's [4]  46/20 47/4 47/7 47/17
Ms. Pach [6]  29/8 32/11 46/4 46/8 46/23 60/23
much [3]  28/25 29/14 49/18
must [9]  10/11 30/15 54/11 54/12 65/24 69/6 70/13 71/10 71/15
mute [5]  3/22 6/3 52/14 60/10 60/11
muted [1]  3/12
my [36]  4/11 5/8 6/12 6/13 7/22 9/4 9/22 10/1 15/12 17/6 17/11 18/4 20/25 22/5 27/12 27/24 28/25 31/19 32/11 34/20 41/12 46/3 46/22 47/11 52/13 54/5 60/12 61/7 67/7 71/3 72/24 75/10 75/12 75/15 76/2 76/15
myself [3]  4/7 17/7 60/11

## N

name [6]  2/11 3/4 5/15 6/12 9/22 9/23
names [1]  2/11
narrow [1]  44/13
National [1]  28/6
nationwide [1]  26/8
near [1]  66/10
nearly [2]  66/15 74/25
necessary [2]  69/13 74/13
necessity [1]  36/12
need [23]  2/12 5/25 6/9 6/16 9/1 18/25 20/7 22/12 43/17 44/17 48/3 48/5 52/9 52/18 52/25 53/6 58/25 63/24 65/17 65/24 66/6 68/5 75/12

needed [1]  57/5
needs [3]  57/16 61/2 75/5
negligence [1]  50/4
neither [1]  72/20
never [7]  11/25 23/20 25/20 44/14 44/15 44/16 51/3
new [3]  27/3 53/25 76/6
next [13]  2/23 6/21 8/15 17/17 18/14 28/21 63/14 68/13 70/1 70/24 72/3 72/17 73/16
Nice [2]  5/5 5/10
no [85]
noise [1]  6/4
nolle [4]  24/3 32/9 39/2 43/10
nominal [1]  56/7
none [1]  12/7
nonprivileged [2]  16/12 61/11
nor [1]  49/5
normally [2]  5/17 7/20
Nos [4]  4/22 8/5 53/14 68/11
not [113]
note [6]  32/25 41/12 41/16 41/20 43/25 67/10
noted [5]  8/11 30/3 32/1 32/10 57/21
notes [17]  17/20 21/18 22/15 24/19 25/5 33/16 38/1 41/5 41/6 41/19 45/17 45/18 46/6 46/7 46/10 47/4 47/17
nothing [3]  38/1 38/13 44/19
November [1]  8/3
now [28]  2/5 11/18 15/6 17/14 19/17 21/7 22/9 23/19 25/25 27/11 28/3 47/13 51/6 52/6 52/12 53/8 54/10 57/8 58/9 58/14 59/15 60/9 60/14 61/2 63/20 67/5 74/6 76/8
nulled [1]  23/18
number [2]  2/13 2/15 2/23 2/23 3/11 6/9 12/6 12/7 48/15 48/16 55/13 56/11 59/8
numbers [4]  2/12 47/14 68/4 68/5

## O

O'Quinn [1]  69/14
object [3]  11/19 12/6 57/23
objected [4]  16/5 51/17 57/6 62/12
objected-to [1]  62/12
objecting [5]  11/24 16/22 21/15 22/19 62/11
objection [6]  11/19 16/11 41/11 55/7 57/3 71/14
objections [14]  7/6 16/11 22/20 63/16 67/8 67/11 67/15 67/17 67/18 67/23 68/4 68/11 68/18 68/19
objects [2]  24/16 62/10
obligation [1]  32/6
obligations [1]  37/3
obtain [3]  61/10 65/18 73/3
obtained [1]  70/10
obvious [1]  75/24
obviously [5]  43/4 63/20 74/11 75/15 75/25
occasion [1]  54/1
occur [1]  38/8
occurred [4]  30/6 31/4 33/18 47/5
off [8]  6/8 6/11 6/12 6/13 6/13 6/17 23/25 34/20
offers [2]  22/4 56/22
office [6]  16/7 52/19 71/21 71/22 75/13 75/14
offices [3]  23/24 31/18 34/6
officially [1]  5/12

OK [26]  4/13 9/15 9/19 13/4 13/2 13/3 17/20 18/21 19/25 22/5 23/18 25/4 25/11 25/25 26/5 26/6 27/22 28/3 28/17 28/20 29/16 46/14 47/21 49/16 54/24 68/25 75/22
omission [2]  47/6 47/7
on [98]
one [45]  2/8 2/15 3/3 3/6 5/21 6/11 6/18 9/9 11/6 11/7 11/11 11/11 12/6 12/17 13/1 14/12 16/9 17/18 19/17 22/19 25/13 26/13 26/15 28/11 33/2 33/6 34/12 34/15 36/3 37/1 37/25 45/20 47/10 52/22 53/7 53/23 54/1 54/17 55/13 58/23 58/24 59/9 63/2 64/1 72/22
One's [1]  12/13
ones [8]  13/19 13/23 21/11 52/25 54/11 54/13 54/16 54/17
only [26]  4/7 11/4 18/24 19/6 21/11 21/21 21/25 22/12 27/8 27/9 27/11 28/23 47/18 52/7 52/8 53/10 54/14 54/17 54/21 58/23 59/25 66/5 66/15 72/10 73/4
onus [1]  62/11
opening [1]  41/12
operating [1]  54/2
operative [1]  8/1
opinion [20]  13/10 19/14 19/14 40/6 41/21 41/24 41/25 43/25 44/2 44/4 44/9 49/5 65/21 66/7 66/14 66/24 72/8 72/9 72/12 72/24
opinions [2]  66/1 66/8
opposing [2]  13/14 69/8
opposition [1]  11/10
oppositions [1]  11/12
or [109]
oral [2]  8/16 52/9
order [13]  5/25 8/6 8/17 22/23 24/2 35/21 35/23 36/4 37/19 52/17 52/19 63/1 64/16
ordered [3]  58/22 67/24 73/21
ordering [1]  70/15
orders [1]  36/3
other [38]  2/9 2/12 9/9 13/9 14/12 15/3 24/9 25/18 26/9 26/22 33/17 33/22 35/7 37/2 43/13 43/15 49/10 54/11 54/13 54/16 54/17 55/8 55/16 56/5 57/25 63/9 64/9 64/10 65/19 66/9 66/25 68/21 68/22 69/16 73/3 73/18 73/22
others [5]  28/22 51/18 54/18 60/2 63/7
otherwise [6]  16/12 54/16 62/12 65/15 65/23 66/21
our [41]  5/20 8/15 11/13 12/4 12/6 14/12 14/25 15/8 17/15 18/14 23/1 25/4 27/9 32/3 32/6 32/7 33/2 33/1 33/23 33/25 34/1 34/8 34/23 37/2 38/22 40/19 40/24 41/7 42/14 43/3 43/20 49/23 50/16 51/7 52/22 58/20 58/24 59/15 60/4 73/14 76/4
ourselves [1]  42/16
out [13]  2/13 9/1 20/5 34/15 34/25 35/15 37/18 37/21 43/8 54/24 59/10 59/11 68/19
outweighed [1]  59/6
outweighs [1]  61/17
over [16]  5/21 7/22 15/14 15/17 16/1 16/2 16/3 17/14 22/5 23/11 26/2 29/1 30/24 46/1 47/17 58/17
overall [1]  62/3
overbroad [1]  74/21
overcome [1]  48/5
overrule [2]  7/6 63/15
overruled [2]  71/14 72/16

owe [1]  32/6
own [3]  33/23 50/3 75/1
owner [1]  25/13

**P**

P-A-C-H [2]  2/17 2/19
P.A [1]  1/13
PACH [11]  1/17 2/17 4/1 5/9 29/8 32/11
46/4 46/8 46/23 55/4 60/23
page [3]  7/24 12/4 27/14
pages [2]  1/7 15/3
Palm [1]  1/14 71/21
paper [1]  53/24
papers [5]  5/10 10/20 13/18 23/1 43/20
paragraph [2]  50/11 56/24
part [10]  7/22 30/10 36/10 37/7 38/18
45/9 62/21 63/12 73/12 74/17
participants [1]  3/25
participation [1]  75/24
particular [4]  19/16 63/6 67/14 73/7
particularly [1]  57/11
parties [14]  8/11 9/14 14/24 24/5 41/20
42/25 43/2 48/11 57/21 61/10 63/1 71/2
71/9 75/18
parties' [4]  7/13 61/14 61/15 74/23
Partners [3]  69/9 69/15 69/23
party [22]  13/13 13/14 16/19 22/1 33/15
37/12 41/23 43/4 49/8 62/10 62/11 64/1
65/13 65/16 65/22 66/9 66/20 67/1 69/5
69/8 69/11 75/1
party's [2]  14/8 61/11
path [1]  40/1
pattern [1]  38/15
pause [4]  3/7 6/19 18/16 38/3
pausing [1]  40/11
pending [8]  4/20 4/22 8/4 26/12 27/23
32/3 32/4 59/13
people [4]  25/18 35/16 36/25 37/3
percent [1]  46/5
perfectly [1]  24/24
performed [1]  70/16
perhaps [1]  50/18
period [3]  8/9 28/18 55/12
person [2]  64/9 64/10
personal [3]  26/19 51/5 52/13
perspective [1]  35/14
pertaining [1]  21/6
pertains [1]  28/11
pertinent [1]  30/8
phone [4]  2/12 2/25 5/11 6/3
PI [1]  12/24
pick [1]  20/5
picked [1]  38/25
picture [1]  10/20
piles [1]  53/23
Pilkington [1]  43/17
ping [1]  41/14
place [6]  8/6 13/13 38/18 61/4 63/4
69/19
placed [1]  14/8
plain [1]  46/23
plaintiff [33]  1/4 1/12 5/2 7/3 7/10 9/6
10/12 11/2 11/5 11/16 12/16 14/3 17/20
21/6 21/8 28/8 37/15 40/5 41/8 43/14
51/16 53/17 67/24 70/4 70/20 71/18
72/24 73/2 73/18 73/21 74/2 74/4 74/9
plaintiff's [26]  3/17 4/3 4/24 7/1 7/5 8/1
8/2 8/20 8/22 21/20 28/4 29/16 38/7
45/21 57/16 59/9 59/17 60/19 62/24 63/8

63/14 69/21 70/1 73/1 73/24 74/14
plaintiffs [2]  16/22 26/23
plan [12]  28/13 28/14 28/17 35/9 35/11
35/11 35/11 36/19 36/20 36/24 37/17
50/5
planning [1]  70/7
pleadings [1]  14/13
please [12]  2/13 2/24 3/12 4/23 5/15 6/3
9/18 46/24 49/20 57/17 60/10 75/12
point [8]  6/7 6/21 9/2 23/8 37/23 52/2
58/8 63/11
pointed [1]  43/8
Poliakoff [1]  61/25
policies [1]  63/3
policy [1]  40/25
ponging [1]  41/14
popped [1]  2/11
portion [1]  13/9
portions [5]  15/3 15/4 15/4 20/9 20/10
24/8 24/9
position [7]  11/13 11/25 12/6 25/25 32/4
49/23 60/5
positions [1]  74/24
possession [2]  16/13 58/22
possibility [1]  22/22
possible [3]  61/21 68/10 76/3
possibly [1]  59/11
potentially [1]  73/8
Powers [1]  62/13
practice [3]  7/22 38/8 38/9
practices [1]  38/17
prejudice [2]  51/24 59/7
prejudicial [1]  59/20
preparation [1]  75/24
prepare [1]  65/17
prepared [7]  11/15 12/2 12/9 18/2 18/4
19/4 61/2 65/12 66/4
prepopulated [1]  2/12
Present [1]  60/20
presentation [1]  24/14
presented [2]  10/18 44/10
presently [1]  74/11
preserves [1]  22/23
pretrial [1]  8/12
pretty [1]  53/5
prevent [1]  64/9
previous [1]  74/12
previously [3]  11/25 42/5 57/5
prima [2]  70/4 70/21
principle [1]  69/18
principles [3]  10/5 61/8 62/20
prior [5]  48/18 55/23 59/3 59/18 59/19
private [1]  34/22
privilege [62]  7/6 9/8 10/8 11/20 13/11
16/20 17/4 17/14 19/7 19/9 19/19 19/22
19/23 20/3 20/14 20/25 23/23 23/25 26/1
26/2 26/3 31/24 32/16 32/18 32/21 33/4
33/21 34/1 34/12 39/24 42/1 42/2 42/4
42/5 42/10 45/4 45/7 48/2 48/4 48/5
48/7 48/14 48/22 49/3 61/5 63/24 64/2
64/7 64/8 64/16 64/17 65/1 65/7 66/22
66/22 68/23 69/3 69/25 71/14 72/15
72/15 73/10
privilege/protected [1]  13/11
privileged [12]  13/13 15/6 17/23 18/1
20/9 20/10 33/10 49/1 50/8 51/11 69/12
72/1
privileges [8]  14/23 20/23 33/3 33/6 42/7
45/7 48/8 75/21
probable [6]  13/21 14/1 38/22 38/23 39/1

42/19
probably [1]  6/6
probative [1]  26/25
problem [3]  19/15 36/24 37/20
procedural [1]  7/24
procedure [4]  39/12 61/9 65/10 66/11
procedures [7]  22/19 35/12 37/17 39/11
50/2 50/4 63/4
proceed [2]  42/9 57/24
proceedings [5]  2/2 5/22 6/1 52/15 52/18
proceeds [1]  30/25
process [8]  10/23 18/10 23/12 30/24
30/24 40/21 45/9 57/25
processing [1]  18/10
Procter [1]  61/22
produce [11]  11/7 32/2 34/7 35/23 41/3
48/14 72/13
produced [29]  10/15 24/1 31/7 32/19
32/22 32/24 33/1 33/13 33/15 33/17
34/19 35/5 38/16 40/5 40/12 40/16 40/18
41/19 41/23 43/1 44/7 46/16 48/13 59/3
68/21 70/15 71/10 72/14 74/7
product [76]  11/14 11/21 11/22 11/23
11/24 12/11 12/7 12/8 13/4 13/4 14/18
14/23 16/20 17/5 19/6 20/2 21/16 32/5
32/21 32/24 33/7 33/10 34/1 34/24 34/24
39/23 40/6 40/6 40/7 40/10 40/16 40/18
41/21 41/21 41/24 41/25 42/2 42/10
42/13 43/7 43/24 43/25 44/2 44/5 44/7
44/9 45/4 45/6 48/4 49/5 49/6 52/11
63/16 65/8 65/15 65/20 65/21 65/23 66/7
66/14 66/24 69/20 70/25 72/3 72/4 72/6
72/6 72/8 72/12 72/13 72/14 72/15
72/20 75/21 76/1
production [39]  7/1 7/7 7/18 8/20 19/22
27/15 28/5 31/25 36/11 36/12 40/6 41/8
52/8 61/4 61/5 62/16 62/19 63/5 63/16
63/18 63/21 63/23 67/9 67/23 67/25 71/2
71/5 72/6 72/17 72/19 72/21 72/25 73/5
73/9 74/15 74/16 74/18 74/19 75/5
productions [1]  62/22
professional [1]  65/4
progress [1]  6/10
proof [2]  18/24 22/13
proper [2]  49/24 64/19
properly [1]  36/15
property [4]  25/13 25/14 25/19 25/23
proportional [1]  61/12
proposed [1]  61/17
proposition [2]  48/17 69/22
proprietary [1]  22/21
pros [1]  24/3
pros'd [3]  32/9 39/2 43/11
prosecuted [1]  39/1
prosecuting [1]  31/18
prosecution [11]  10/22 33/25 34/11
36/14 40/21 44/15 45/11 45/11 55/11
55/22 55/24
prosecutor [3]  31/21 48/1
prosecutors [1]  38/24
protect [1]  65/25
protected [13]  13/11 19/13 33/7 33/8
43/23 65/23 66/21 69/6 69/20 71/9 71/15
71/17 72/20
protection [17]  14/18 16/20 19/6 20/2
40/7 63/16 65/14 66/4 66/10 69/4 69/5
69/8 69/25 71/1 72/4 72/9 76/1
protective [2]  22/23 63/1
prove [7]  11/5 18/24 27/8 37/1 39/12
69/13 73/3

**P**

provide [4] 16/11 23/17 23/22 32/7
provided [34] 15/14 19/19 23/22 23/20
31/5 31/7 31/8 31/9 31/11 31/18 31/20
31/20 32/12 33/19 34/5 34/18 35/4 40/16
44/8 45/1 45/8 46/7 46/10 46/13 46/19
47/8 47/19 47/24 47/24 55/8 55/17 56/14
56/17 67/20
provides [3] 37/13 65/21 66/19
providing [3] 35/1 55/7 57/25
proving [1] 27/8
public [7] 9/24 17/15 35/13 35/20 35/25
37/9 56/2
punitive [4] 26/13 27/7 38/6 38/11
purportedly [1] 19/20
purpose [3] 54/2 61/24 62/3
purposes [3] 18/4 33/9 33/19
put [8] 13/12 26/18 27/20 39/5 52/15
56/10 69/6 75/10
putting [1] 22/4

**Q**

qualifier [1] 60/2
quantified [1] 56/3
question [19] 21/22 35/3 36/5 36/6 36/7
36/8 38/21 40/2 40/21 41/22 43/18 45/12
46/25 47/1 47/11 47/23 48/3 54/22 59/2
questions [9] 8/25 9/20 23/6 23/7 28/25
29/9 52/21 58/12 75/7
quick [2] 53/9 58/18
quickly [1] 5/19
quite [1] 54/3
quote [1] 47/3
quote-unquote [1] 47/3
QVE [1] 64/23

**R**

raised [2] 35/7 48/8
range [1] 56/1
rare [2] 66/16 72/10
rather [3] 10/13 11/15 65/3
rationale [2] 63/9 66/25
rbenrubi [1] 1/15
Re [1] 66/12
reactions [1] 56/11
read [4] 7/12 13/10 15/13 57/16
reading [1] 47/18
real [2] 19/13 64/25
really [13] 8/20 21/25 36/13 44/13 51/18
52/10 52/24 53/1 56/19 57/12 60/1 67/19
69/17
reason [3] 38/16 47/18 51/11
reasonable [1] 11/1
reasons [2] 16/9 74/18
rebuttal [4] 9/10 9/17 41/13 49/21
recall [4] 22/25 60/2 60/3 60/3
Recalling [1] 60/16
receive [1] 57/22
received [2] 48/21 64/15
receiving [1] 70/8
Recess [1] 60/15
recipient [1] 67/20
recognized [2] 44/13 48/3
recognizing [1] 33/12
recollection [2] 54/5 73/24
recommend [1] 31/13
recommendation [2] 4/21 75/9
record [6] 4/24 7/22 38/1 38/14 60/12
75/11
recorded [1] 5/22

recording [5] 1/9 4/12 5/25 76/8 76/16
recordings [2] 58/8 60/14
records [2] 35/13 35/25
Recovery [1] 62/8
redact [2] 20/9 24/9
redacted [5] 15/3 15/17 24/8 31/8 46/2
redactions [5] 45/4 45/5 45/6 46/11
46/12
refer [4] 17/20 24/22 51/16 62/18
reference [5] 21/20 35/20 43/12 67/7
74/12
references [2] 25/5 37/25
referral [14] 10/12 21/9 23/11 25/3 26/8
26/10 40/13 40/13 45/10 49/13 62/16
63/7 63/8 73/1
referrals [3] 26/10 26/21 63/10
referred [3] 4/20 29/20 38/24
referring [2] 18/4 24/18
refining [1] 20/24
reflect [1] 73/22
reflects [2] 32/18 70/15
refreshed [1] 54/5
refuse [1] 64/8
refused [3] 24/1 24/1 48/14
regard [4] 21/7 45/13 51/19 71/4
regarding [20] 7/24 17/20 21/3 27/15
27/16 29/23 31/24 50/7 51/13 51/15 55/8
55/9 55/16 55/23 56/21 59/4 61/10 62/1
67/8 70/24
regulators [1] 36/22
rejoin [1] 6/10
relate [1] 8/20
related [3] 7/5 70/11 70/17
relates [2] 63/17 64/22
relative [1] 61/14
relevance [1] 48/6
relevant [19] 7/22 16/12 17/3 26/10 30/2
36/13 38/5 38/19 50/8 56/14 59/5 59/8
61/11 61/14 62/4 62/24 63/7 69/7 74/7
relied [1] 14/10
remain [3] 3/20 7/17 43/23
remains [1] 74/6
remarks [1] 41/12
remedy [1] 23/2
remember [4] 5/15 41/15 54/4 54/18
remembering [1] 54/11
remind [3] 5/13 10/7 50/9
reminder [1] 10/6
rendered [1] 64/22
rendition [2] 19/10 64/11
rep [2] 57/17 57/19
Repairs [1] 61/20
repeat [3] 46/25 63/22 68/5
repeated [2] 26/16 56/21
replied [2] 7/4 7/11
report [24] 4/21 27/13 27/14 27/14 27/15
28/1 30/8 30/12 30/16 30/20 30/22 37/3
37/11 37/17 42/20 50/24 50/25 50/25
51/6 54/6 54/8 73/25 74/16 75/8
reported [6] 28/22 30/13 36/15 36/25
37/5 37/18
reporter [1] 1/22 5/23 76/19
reporter's [2] 52/19 75/14
reporting [8] 11/16 14/3 19/11 19/13
30/2 35/9 49/11 50/23
reports [8] 7/14 21/3 21/5 21/14 30/17
37/8 37/16 38/22
reprehensibility [3] 26/14 26/16 27/9
represent [4] 5/2 16/8 16/15 43/3
representative [4] 58/12 59/1 65/13 66/9

representatives [1] 71/18
represented [4] 73/14
representing [3] 34/8 34/9 48/9
reputation [1] 56/2
request [30] 8/20 12/10 15/22 16/13
24/14 26/17 27/15 28/21 34/4 34/4 35/25
44/25 51/15 52/8 55/22 62/12 62/22 63/5
63/6 63/20 72/17 72/19 72/21 73/9 73/13
74/14 74/16 74/17 74/18 74/19
requested [9] 33/24 34/10 34/11 35/9
49/3 56/20 57/21 72/19 73/12
requesting [2] 65/16 73/17
requests [16] 11/7 28/5 34/4 34/6 62/18
62/19 62/23 63/17 63/23 67/6 67/9 67/23
71/5 73/5 73/7 73/8
require [4] 30/17 62/4 64/13 75/3
required [8] 28/16 35/2 35/23 36/23 39/6
50/24 50/25 50/25
requirement [2] 28/12 30/13
requirements [3] 38/18 39/5 42/6
requires [8] 31/1 35/10 59/14 66/21 69/3
70/4 70/9 74/22
requisite [2] 51/2 65/24
rescheduled [1] 57/20
research [1] 27/2
reserve [2] 9/7 9/10
Residence [1] 61/20
resolution [2] 40/24 62/5
resolve [3] 31/24 48/18 48/19
resolving [1] 61/16
resources [1] 61/15
respect [16] 11/16 13/7 38/4 40/18 42/13
42/25 43/24 44/2 48/2 48/10 48/11 48/21
54/14 55/2 55/7 56/18
Respectfully [1] 36/21
respond [5] 13/18 17/1 17/6 21/23 57/5
responded [1] 7/3
responding [2] 13/23 57/3
response [8] 7/8 11/19 19/3 29/12 53/18
67/21 73/18 73/23
responses [7] 7/10 67/11 67/24 73/21
74/13 75/2 75/4
responsive [1] 16/12
rest [1] 38/12
rests [1] 69/17
result [4] 37/9 37/10 56/6 62/7
resulted [2] 30/1 55/12
results [1] 69/4
retain [1] 34/22
retained [1] 64/15
review [5] 20/8 23/24 30/16 32/17 71/2
reviewed [2] 7/13 45/15
reviewing [1] 54/5 70/19
reviews [1] 24/21
revision [1] 73/24
RICHARD [8] 1/12 2/11 3/14 3/16 3/17
4/3 5/2 9/23
Ridge [1] 43/13
ridicule [1] 56/3
right [48] 2/8 2/10 2/22 3/3 3/4 3/11 5/10
6/21 6/22 11/8 13/17 16/21 17/17 19/7
19/17 19/22 21/2 21/13 21/17 23/3 24/13
25/7 26/20 27/11 28/1 28/23 29/4 29/5
29/11 36/9 36/11 37/5 38/5 39/7 40/13
46/18 47/13 49/7 52/4 53/5 58/6 58/15
60/6 60/9 60/16 60/25 75/15 75/23
ripe [2] 7/2 7/8
rise [1] 31/2
rogue [2] 49/25 51/10
room [4] 6/15 6/18 6/21 6/23

**R**

Ros [1] 34/7
Rosenbaum [1] 61/25
RPR [2] 1/22 76/18
RS [1] 1/2
Ruiz [2] 18/21 44/11
rule [18] 41/7 42/6 52/16 52/17 58/9
59/21 61/2 61/9 63/25 64/3 65/10 65/14
65/16 65/21 66/3 66/11 66/23 74/22
ruled [2] 57/5 63/21
rules [4] 59/18 61/18 61/25 62/4
ruling [5] 20/1 61/7 63/23 67/8 76/3
rulings [12] 20/13 20/15 20/25 57/23
60/12 61/3 63/22 67/8 70/24 71/1 71/7
75/12
run [1] 9/1

**S**

s.D [10] 61/25 62/8 62/13 64/24 65/9
67/12 69/10 69/14 69/16 69/23
said [11] 18/20 19/3 19/4 41/11 51/12
52/25 55/25 57/7 59/16 59/17 74/11
same [5] 7/24 11/10 15/19 16/16 17/14
24/9 25/22 32/15 45/7 46/11 49/1 57/10
63/20 69/14 74/18
save [1] 9/16
saw [1] 45/17
say [25] 11/25 19/21 20/8 22/11 29/19
33/2 34/25 36/2 36/12 37/5 38/2 40/10
41/11 46/4 50/5 54/10 54/15 54/16 55/4
56/13 59/4 59/14 59/25 63/9 68/21
saying [7] 24/16 46/18 50/20 50/24
51/20 53/19 57/16
says [12] 14/8 24/12 30/12 36/20 42/19
45/20 50/11 53/17 53/25 54/8 59/15
67/21
scenario [1] 7/20
Scene [2] 43/16 43/20
schedule [1] 58/5
scheduled [2] 48/19 57/19
scheduling [1] 8/6
Scherer [1] 70/18
scope [3] 61/19 61/24 62/1
screen [2] 6/12 6/13
scrutiny [1] 64/18
second [12] 3/3 4/3 6/18 7/5 8/2 14/21
25/15 25/16 31/15 36/10 37/7 66/6
Section [1] 64/6
Sedgwick [1] 71/20
see [12] 2/9 6/12 26/2 26/17 27/16 28/14
31/4 33/16 37/16 46/12 49/25 50/10
seek [1] 67/2
seeking [2] 51/9 65/22
seen [2] 20/12 44/15
segregate [1] 51/12
select [1] 30/16
selective [5] 10/19 13/8 17/13 31/10
32/17
self [1] 21/4
self-explanatory [1] 21/4
send [1] 30/7
sense [2] 17/3 27/22
sentence [1] 60/1
sentences [1] 5/19
separately [1] 29/12
September [1] 8/10
seriously [1] 76/2
service [2] 32/24 43/22
services [10] 15/5 15/15 15/20 16/7
19/10 28/7 30/8 64/12 64/21 64/22

set [3] 6/18 29/18 61/6
sets [1] 31/2
setting [1] 6/17
settle [2] 22/10 56/23
settled [1] 40/25
seven [1] 11/7
several [2] 25/5 51/17
severity [2] 29/23 30/1
shall [2] 30/7 30/18
shape [1] 16/2
Shapiro [1] 62/8
shared [1] 34/12
she [4] 29/8 29/9 45/20 45/25
she's [1] 51/19
sheet [1] 60/4
shield [1] 67/17
shielded [1] 44/4
shifting [1] 74/23
short [1] 61/1
shorter [1] 29/20
should [18] 4/9 14/15 18/22 27/20 33/8
37/15 41/11 44/7 44/10 54/16 55/16
56/16 57/13 66/24 74/2 74/7 74/10 75/5
shouldn't [1] 33/9
show [5] 10/8 10/15 38/7 38/11 38/12
showed [2] 24/5 60/4
showing [4] 65/24 66/6 70/5 70/9
shown [2] 31/23 31/23
shows [3] 48/7 65/16 73/23
side [2] 8/17 40/13
sides [1] 75/25
significant [1] 56/19
similar [1] 55/21
simple [1] 53/5
simply [1] 59/8
since [4] 9/8 24/1 27/19 28/4
Singhal [1] 4/19
sit [2] 34/20 39/15
situation [3] 18/19 20/6 56/9
SIU [1] 50/20
slip [1] 50/1
slow [1] 5/21
slower [1] 5/17
slowly [2] 5/16 68/9
Smith [1] 4/20
so [112]
So.2d [1] 55/20
solid [1] 27/6
Solutions [1] 62/8
some [24] 4/8 8/25 9/20 10/5 10/11
12/11 19/14 20/13 20/22 23/7 25/18 35/8
37/12 39/2 48/16 50/11 54/8 54/10 54/12
54/15 54/21 61/2 63/8 69/5
somebody [1] 51/2
someone [2] 38/6 6/2
someone's [2] 37/9 37/10
something [9] 26/3 31/15 35/14 46/1
46/2 46/5 54/12 54/22 76/1
sometime [1] 57/17
sometimes [2] 5/18 6/4
somewhere [2] 15/13 57/15
sorry [18] 2/4 4/20 9/24 10/1 12/10 12/19
14/17 17/7 17/9 18/8 31/14 41/10 41/17
46/24 49/19 55/2 55/4 68/3
sort [2] 37/7 41/7
sought [2] 70/6 70/7
source [3] 17/4 18/24 22/12
South [1] 1/18
SOUTHERN [1] 1/1
Sparrow [3] 10/9 13/6 14/7

speak [5] 5/16 5/16 5/17 5/19 50/12
speaking [3] 5/20 6/2 9/8
speaks [1] 35/25
specific [4] 20/21 34/21 63/9 70/14
specifically [5] 12/5 22/8 62/1 62/18
63/17
specificity [1] 62/11
specify [2] 67/16 67/24
speech [1] 5/20
spell [1] 3/4
spend [1] 44/18
spirit [1] 61/24
spoke [1] 31/2
Springs [1] 25/17
stage [1] 55/14
stake [1] 61/13
stance [2] 36/22 36/23
standard [4] 36/11 50/6 50/13 50/22
stands [1] 66/17
star [1] 2/24
start [5] 8/19 9/4 39/25 40/1 58/19
started [2] 4/23 5/12
starting [2] 11/6 60/19
state [39] 5/15 12/5 14/5 14/9 16/7 19/1
22/15 24/2 27/4 28/16 30/14 30/23 31/6
32/13 34/19 35/2 35/4 35/15 36/19 40/17
40/17 45/8 45/10 46/1 46/7 46/10 46/13
46/17 46/19 47/3 47/17 47/24 47/25 51/9
57/1 63/25 65/9 71/21 71/22
statement [1] 16/3
states [4] 1/1 1/10 30/4 64/8
status [8] 7/13 7/24 27/13 27/13 27/15
27/25 73/25 74/15
statute [13] 22/7 28/10 30/2 30/4 30/11
30/15 35/7 35/10 37/3 37/7 64/6 64/7
64/13
statutes [1] 64/5
statutorily [1] 35/2
statutory [5] 28/12 31/2 35/14 37/2 39/5
Steel [1] 66/18
steps [1] 39/3
Stern [1] 69/14
still [4] 22/10 32/4 32/6 65/24
stipulated [2] 22/23 63/1
stop [10] 15/9 31/14 35/17 37/14 39/8
42/11 49/7 60/9 60/14 76/8
stopped [1] 38/23
store's [1] 50/2
straightforward [1] 53/11
stress [1] 16/21
strike [1] 67/22
striking [1] 67/25
strongly [1] 61/21
STROOCK [2] 1/17 1/17
stroock.com [2] 1/19 1/20
stuff [4] 17/10 24/10 24/11 35/21
subject [9] 11/14 16/10 24/9 57/3 59/11
64/18 66/19 66/24 67/18
submit [1] 38/13
submitted [1] 44/20
subsequent [1] 7/18
subsequently [1] 48/13
substantial [2] 65/17 65/18
substantially [2] 59/6 74/24
substantive [1] 70/24
successful [1] 20/17
such [15] 14/9 22/1 22/2 26/3 30/8 30/16
38/8 56/4 64/10 64/13 66/24 70/7 71/13
71/14 72/13
sued [3] 33/12 36/13

**S**

suffered [1]  56/6
sufficient [1]  50/13
sufficiently [1]  67/15
suggested [1]  29/21
suggests [1]  66/23
suing [1]  32/6
suit [4]  12/14 42/20 43/21 56/24
Sun [2]  69/9 69/22
Sunshine [1]  35/24
supplement [1]  57/8
supplemental [7]  7/13 7/16 27/13 53/18 53/21 73/25 74/15
supplemented [1]  58/11
support [5]  14/10 38/14 44/21 50/13 57/13
supposed [1]  30/22
Supreme [2]  18/21 44/13
sure [14]  3/24 6/16 7/23 31/6 46/15 47/1 47/23 52/19 54/3 66/17 68/8 68/9 68/17 69/1
surgery [1]  45/22
surrounding [1]  30/19
surveillance [6]  12/22 13/2 21/8 29/21 34/15 34/18
suspect [1]  26/21
suspected [10]  30/13 35/1 36/16 36/25 37/4 37/6 37/8 42/20 51/1 51/17
suspicion [1]  11/1
swore [1]  50/9
system [3]  5/14 5/19 5/23
systemic [2]  35/8 49/11
systems [1]  27/4

**T**

tabs [1]  9/5
take [10]  2/9 8/17 51/25 52/12 58/25 60/10 68/19 71/2 76/2 76/7
taken [2]  10/11 61/4
takes [2]  34/25 73/14
taking [1]  5/23
talk [7]  13/7 17/19 19/14 24/9 27/12 44/25 50/15
talked [2]  32/16 41/4
talking [1]  21/8 31/22
Tampa [1]  55/20
tangible [1]  65/11
Target [1]  62/13
tasked [1]  20/24
technical [1]  2/4
telephone [2]  2/2 5/15
telephonic [1]  6/5
telephonically [1]  3/19
tell [2]  47/14 47/22
ten [5]  52/12 52/15 54/7 60/10 60/12
ten-minute [2]  52/12 60/10
tend [3]  24/17 39/11 39/12
term [1]  24/16
terms [12]  37/14 38/12 38/15 40/4 40/13 42/6 43/6 48/3 48/8 48/8 69/2 75/20
test [3]  13/15 59/14 64/25
testimonial [1]  67/1
testimony [4]  29/21 33/24 34/10 70/14
than [6]  5/17 22/9 35/21 54/1 59/20 68/22
thank [22]  2/8 2/22 3/6 3/18 5/1 5/4 5/10 5/11 28/25 29/3 29/4 41/18 49/18 49/22 58/15 60/6 60/13 60/25 60/25 68/25 76/3 76/5
Thanks [1]  29/11

that [537]
that's [46]  16/14 31/24 28/2 31/9 33/2 35/5 35/7 35/13 35/21 36/17 37/7 40/17 54/21 55/6 57/8 58/3
their [40]  10/10 10/12 10/15 11/19 11/24 16/23 16/23 16/24 19/1 19/1 22/3 22/6 22/7 22/15 22/15 23/24 24/19 25/2 25/5 25/6 26/18 27/2 28/14 28/17 50/3 50/5 50/5 51/8 51/9 56/11 59/16 64/11 75/1
them [16]  8/17 14/2 15/17 22/8 23/22 23/24 24/17 26/25 36/18 45/18 47/14 53/10 54/12 54/15 54/22 60/4
then [30]  13/4 14/16 18/21 20/13 20/23 21/18 21/23 22/18 24/7 25/14 28/21 29/22 30/15 30/18 30/22 31/12 31/20 37/19 48/13 49/18 50/7 52/2 52/14 54/6 54/8 54/16 60/11 61/3 67/2 76/3
theories [3]  66/1 66/8 67/4
theory [1]  56/4
there [69]  4/9 11/22 11/22 13/5 13/5 14/16 14/22 15/10 17/16 19/12 19/15 25/12 25/13 26/1 27/14 27/22 28/10 28/11 28/24 29/9 29/25 30/10 31/14 33/4 33/16 34/15 34/21 35/18 36/11 37/25 38/1 38/13 38/21 38/23 41/1 42/15 42/23 43/17 43/18 43/21 44/19 44/20 47/23 48/10 49/2 49/4 49/5 49/9 49/10 50/21 51/1 51/17 52/7 54/6 54/13 54/18 55/7 55/21 55/22 56/9 57/16 58/9 58/9 59/25 60/2 60/23 68/19 69/16 69/24
there's [2]  13/4 19/21
therefore [3]  11/3 62/7 71/11
Thereupon [1]  1/24
these [43]  5/24 6/1 6/5 8/12 9/12 10/24 13/19 14/6 16/5 17/24 20/9 20/21 22/4 22/11 22/24 27/3 27/12 27/20 28/5 33/13 33/14 35/15 37/8 38/1 39/3 44/2 49/24 50/10 50/11 51/9 51/11 53/3 54/14 56/8 59/13 61/25 62/18 62/23 63/23 71/1 73/6 74/25 75/25
they [105]
they're [7]  13/19 26/18 37/4 37/15 50/25 50/25 59/8
thing [8]  12/5 19/17 47/10 49/14 52/22 57/11 59/25 63/24
things [12]  5/13 5/23 13/5 26/13 32/20 36/2 38/11 38/13 43/2 58/1 65/12 68/22
think [39]  3/14 4/6 11/9 19/25 20/21 21/22 23/1 23/8 26/4 28/10 29/17 30/4 32/18 32/23 37/20 38/4 42/3 42/14 42/23 43/1 43/16 44/17 48/24 49/2 49/4 51/22 52/8 52/25 53/6 53/12 56/16 56/19 57/10 58/8 58/13 58/22 58/23 63/8 75/20
third [20]  14/24 16/19 24/4 27/15 28/5 33/15 37/12 41/20 41/23 42/25 43/2 43/4 43/6 43/14 48/11 52/7 52/8 71/9 74/14 75/18
this [117]
those [37]  4/7 9/14 11/9 11/11 11/11 11/11 13/9 13/15 13/16 19/24 20/5 21/11 22/11 23/14 23/25 28/23 32/2 33/9 34/8 37/16 38/13 40/8 41/6 43/15 45/7 46/9 51/13 54/17 56/11 62/23 63/22 68/4 68/18 71/10 71/11 71/22 72/1
though [2]  19/18 35/24
thought [6]  8/25 9/1 17/7 17/11 20/11 27/19
thoughts [1]  52/14
three [12]  4/7 4/22 6/25 8/4 19/19 19/21

53/3 53/19 57/22 62/23 69/3 69/7
three-week [1]  57/22
threshold [1]  52/2
through [11]  7/21 11/7 13/15 19/24 20/13 39/3 43/13 63/18 63/18 63/18 71/5
thumb [2]  26/18 41/7
Thus [1]  66/3
tiers [1]  66/3
time [6]  6/8 8/23 9/1 9/1 9/3 9/11 10/1 23/7 29/14 39/2 44/18 52/16 54/1 55/12 58/17 63/11 64/15 70/23
timekeeping [1]  8/23
timer [2]  9/4 42/11
times [1]  20/8
today [9]  6/25 34/21 39/15 45/7 56/22 57/13 61/7 75/6 75/16
together [1]  9/13
token [1]  32/15
too [3]  5/19 53/23 57/6
took [1]  24/19
top [1]  34/20
totally [2]  19/12 29/13
tracks [1]  42/18
train [3]  8/25 17/6 17/11
TRANSCRIBED [2]  1/9 1/22
transcript [3]  6/1 52/18 75/13
transcription [1]  76/15
trial [7]  8/9 8/12 48/19 48/20 57/22 65/13 74/6
trick [1]  36/5 36/6 36/8
tried [3]  32/19 33/1 68/9
tripartite [1]  33/4
troubled [1]  19/17
true [3]  10/12 13/25 19/20
try [3]  8/24 48/18 76/2
trying [7]  6/20 16/21 24/11 26/18 35/16 37/20 41/7
turn [9]  24/13 25/7 29/1 41/13 62/15 67/5 68/13 70/1 70/24
turned [8]  15/14 15/17 16/1 16/2 16/2 23/11 46/1 47/17
Turning [4]  63/14 72/3 73/16 74/14
Twin [2]  69/10 69/23
two [19]  2/12 6/11 12/7 13/4 19/21 20/23 22/22 25/12 25/18 28/10 28/24 36/2 37/25 43/14 52/7 52/9 66/3 69/5 74/25
two-hour [1]  74/25
type [3]  15/6 17/14 18/23
types [3]  71/10 71/11 72/2
typo [1]  4/2

**U**

U.S [2]  66/18 70/12
ultimate [1]  62/5
unclear [2]  24/17 67/19
under [18]  8/24 22/10 26/18 30/2 35/13 35/24 37/3 43/16 56/4 61/9 62/3 64/5 65/10 65/14 65/16 72/4 72/14 73/10
underlying [6]  12/14 12/23 16/25 23/12 32/24 51/13
understand [10]  17/18 22/17 26/9 29/13 34/3 37/22 39/21 47/11 51/18 68/17
understanding [5]  15/13 31/19 32/11 46/22 62/6
understands [2]  31/6 42/14
undue [3]  22/12 65/18 65/24
unduly [1]  62/12
unfair [1]  13/12 59/6
unit [1]  50/20
UNITED [1]  1/1 1/10

**U**

unless [2]  44/18 44/22
unmute [3]  2/24 2/25 3/12
unmuted [1]  3/15
unquote [1]  47/3
unreasonable [1]  62/12
unredacted [7]  15/23 20/10 23/14 23/19
23/20 45/1 72/23
until [2]  39/2 60/4
up [9]  2/11 5/19 5/20 6/18 19/19 20/14
23/7 38/25 57/22
upcoming [1]  7/23
upon [6]  11/24 12/7 14/10 21/15 58/24
66/6
us [14]  6/10 8/24 9/5 13/6 16/16 24/10
24/11 24/12 36/22 42/17 50/15 68/8
68/17 68/17
use [6]  5/18 7/20 59/18 59/19 67/2 71/22
used [6]  12/22 51/4 53/25 54/4 54/9
73/19
using [1]  5/14
usually [1]  41/11

**V**

VALLE [2]  1/10 2/4
valuation [1]  47/7
value [3]  10/17 46/20 47/5
valued [1]  47/6
values [1]  45/25
various [2]  40/22 56/8
vehicle [1]  54/2
vendor [1]  12/21
version [1]  15/23
versus [1]  41/21
very [15]  12/5 15/5 17/10 17/12 20/21
28/25 32/17 42/4 46/15 49/18 53/11
66/15 72/10 73/2 76/2
via [1]  2/2
viability [1]  19/23
viable [1]  51/22
view [2]  20/22 42/15
violations [1]  30/23
Virginia [2]  45/18 45/20
virtually [3]  11/4 18/23 22/12
Visual [2]  43/16 43/20
vital [1]  69/9
voluntary [2]  14/23 75/17

**W**

wait [2]  50/6 50/20
waiting [3]  6/18 6/20 6/23
waive [1]  48/14
waived [1]  10/9
waiver [19]  13/6 14/15 14/17 14/22 19/5
24/6 31/25 42/15 42/24 48/10 49/3 49/4
66/19 66/25 68/14 69/2 69/2 69/17 69/24
waives [1]  16/19
waiving [2]  16/10 67/18
Wall [2]  61/20 61/20
want [28]  5/13 9/16 10/7 12/11 15/22
23/7 23/17 24/10 24/11 26/9 28/13 29/1
31/6 36/22 39/22 46/4 47/23 50/9
55/3 59/15 59/17 60/18 68/8 68/8 68/16
68/17 68/17
wanted [9]  24/1 32/15 34/2 38/3 39/5
39/25 52/10 53/1 57/22
wants [2]  35/15 44/18
warrant [1]  72/25
warranted [1]  25/3
was [104]

wasn't [7]  18/6 18/9 19/4 29/25 31/25
46/5 46/5
way [14]  1/13 4/15 6/24 19/22 20/11
20/12 27/8 37/1 37/19 37/23 43/19 57/16
58/17 71/16
ways [2]  6/11 26/15
we [206]
we'll [1]  4/13
we're [2]  37/2 51/9
websites [1]  27/2
week [1]  57/22
weird [1]  47/1
welcome [1]  3/20
well [23]  6/2 9/9 12/4 13/7 13/25 15/9
16/9 17/24 18/1 18/6 20/4 23/21 26/25
27/21 28/3 28/9 31/18 34/17 45/16 54/21
60/11 66/12 67/17
went [7]  10/1 34/15 37/18 39/3 43/13
49/25 51/10
were [60]  2/2 2/4 7/14 11/14 12/2 12/9
13/12 15/4 18/2 18/3 18/4 22/4 25/4
25/12 25/18 26/21 27/11 28/10 31/23
31/23 32/4 32/20 33/2 33/13 33/17 33/24
34/10 35/22 37/5 38/22 41/6 44/3 44/6
45/4 45/6 45/8 45/8 45/16 46/7 46/10
47/17 48/9 48/13 48/22 51/12 52/10
54/18 54/19 55/8 56/7 56/9 58/22 59/13
60/2 60/3 63/4 63/10 64/11 65/12 74/24
weren't [1]  48/19
West [1]  1/14
what [87]
whatever [6]  16/19 48/3 52/15 58/11
75/3 75/5
when [20]  2/13 5/15 5/18 6/2 10/12 19/8
23/19 32/5 32/15 33/23 41/12 45/8 50/10
51/1 57/19 62/10 64/1 64/10 70/6 70/7
whenever [1]  61/21
where [9]  13/12 14/8 18/20 29/22 30/11
44/12 48/8 55/23 65/3
whether [24]  11/1 24/22 25/2 26/10
29/25 32/13 32/23 34/21 36/15 36/18
39/11 43/18 50/12 51/10 51/10 56/15
61/16 64/19 64/21 64/25 65/2 68/13
69/11 74/5
which [51]  6/8 6/16 8/2 10/11 10/16
10/23 12/17 14/2 15/1 15/19 15/23 15/23
16/2 16/14 18/21 19/19 20/5 23/25 25/13
30/2 30/21 31/5 31/9 34/5 35/10 37/7
38/13 40/25 43/9 43/20 43/25 44/3 44/3
48/19 49/11 51/15 52/16 56/3 56/8 56/24
57/12 60/1 61/3 63/14 66/6 67/16 67/17
71/1 73/24 74/8 74/15
while [5]  6/2 27/21 37/23 59/13 65/6
White [1]  55/19
who [30]  2/15 2/25 3/8 3/9 4/9 4/9 12/11
12/19 12/20 13/1 13/13 13/19 13/24
23/22 25/11 25/18 28/14 29/5 30/5 30/24
34/7 34/8 34/15 35/16 43/3 43/5 48/9
48/9 48/12 66/20
whole [3]  18/6 21/9 26/17
whom [1]  34/12
whose [1]  73/11
why [14]  10/24 20/6 23/17 26/9 32/16
34/15 36/23 38/4 42/3 42/3 50/22 51/11
58/22 75/10
wide [1]  56/1
widespread [1]  26/18
will [53]  3/21 3/25 6/10 6/10 6/11 6/13
6/22 7/20 8/17 8/21 8/22 8/23 8/24 9/3
9/9 9/20 11/11 13/11 15/23 16/11 17/8

19/14 20/23 26/5 29/8 29/12 29/15 29/19
32/17 33/18 35/8 40/19 52/16 53/22 53/9
54/24 58/16 58/19 59/2 60/11 60/11 68/5
68/24 71/1 71/7 71/11 72/2 72/6 72/11
72/12 74/5 75/8 76/3
win [1]  36/17
withdraw [1]  29/23
withheld [7]  10/18 10/19 12/2 48/22
68/23 71/12 72/4
withhold [1]  13/8
withholding [1]  47/4
within [5]  40/25 48/22 58/21 63/20 75/6
without [7]  16/10 39/16 51/24 63/8 65/18
67/17 67/18
witness [2]  34/16 58/13
wondering [1]  67/20
words [1]  67/1
work [82]
work-product-protected [1]  69/20
worked [1]  28/14
worries [1]  10/3
would [36]  5/18 9/7 9/10 12/8 13/12
14/17 24/24 29/14 33/19 34/7 35/22 36/2
36/8 38/13 39/10 39/11 39/12 39/19
40/10 40/15 41/25 42/1 42/2 44/9 44/20
44/22 46/9 46/21 47/8 51/23 52/2 56/13
58/7 59/25 64/20 69/8
written [2]  43/17 52/17
wrong [3]  32/12 37/5 46/4
wrote [2]  23/1 50/20

**Y**

year [2]  7/17 76/6
years [2]  59/12 59/13
yes [38]  2/7 2/21 3/5 3/21 3/23 5/1 9/13
14/19 15/21 16/14 17/12 17/22 18/11
21/1 21/11 23/5 25/16 28/11 28/19 40/3
42/11 45/3 45/3 45/14 45/19 45/24 46/9
46/9 47/12 47/16 47/20 49/16 53/11
53/16 59/23 60/22 60/24 68/3
yet [3]  51/4 51/25 72/14
you [179]
you'd [3]  35/22 35/23 75/16
you're [12]  20/1 21/8 21/18 21/24 22/18
23/9 24/14 27/18 27/24 28/5 50/1 53/19
your [147]
yourself [5]  2/24 2/25 3/12 3/13 42/23
yourselves [2]  60/10 76/7