UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CHARLES ACKLEY,                                  CASE NO.: 0:22-cv-60377-SMITH

     Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY,

     Defendant,

_____/

## THIRD AMENDED COMPLAINT

The Plaintiff, CHARLES ACKLEY, sues the Defendant, CONTINENTAL CASUALTY COMPANY, and states:

## I. PARTIES, JURISDICTION AND VENUE

1. This is an action for damages which exceed the sum of SEVENTY-FIVE THOUSAND ($75,000.00) Dollars, exclusive of interest, attorneys' fees, and costs.

2. At all times material hereto the Plaintiff, CHARLES ACKLEY, was and is a resident of Broward County, Florida and a citizen of the State of Florida.

3. At all times material hereto, the Defendant, CONTINENTAL CASUALTY COMPANY ("CONTINENTAL"), was and is an Illinois corporation with its principal place of business in Chicago, Illinois.   Accordingly, CONTINENTAL is a citizen of the State of Illinois.

4. CONTINENTAL CASUALTY COMPANY is a wholly owned subsidiary of CNA Financial Corporation.

5. National Fire Insurance Company of Hartford ("National Fire") is a wholly owned subsidiary of CONTINENTAL.   At all times material, CONTINENTAL acted directly

through its employees or on behalf of its wholly owned subsidiary, National Fire.

6.      This Court has personal jurisdiction over CONTINENTAL as CONTINENTAL conducts the business of adjusting claims in the state of Florida and committed tortious acts (as described herein) in the State of Florida.

7.      This Court has subject-matter jurisdiction based on the diversity of citizenship of the parties under 28 U.S.C. section 1332(a)(1), and because the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees.

8.      Venue under 28 U.S.C. section 1391(b)(2) is proper as a substantial part of the events giving rise to this action occurred in this judicial district and because CONTINENTAL adjusted Ackley's bodily injury claim under a policy of insurance issued by National Fire and delivered to its insured in this judicial district.

9.      Plaintiff has satisfied all conditions precedent to bringing this action, or they have been excused or waived.

## II.   GENERAL ALLEGATIONS

### A. Plaintiff Suffers Bodily Injury Caused by the Negligence of Defendant's Insured, Equity One

10.     On September 24, 2012, Equity One was the owner of and/or property manager responsible for managing and maintaining the real property located at 4601-4695 N. University Drive, Coral Springs, Broward County, Florida and commonly known as Pine Ridge Square.

11.     On or about September 24, 2012, Equity One directed an independent contractor to remove or caused to be removed mailboxes that were anchored by a post to the sidewalk in the breezeway area on the above-described property.

12.     On or about September 24, 2012, the Plaintiff, CHARLES ACKLEY, was a customer and business invitee or otherwise lawfully on the above-described property, when he tripped and fell over the post which anchored the mailboxes to the ground.

13.     Equity One had a duty to warn invitees, including Plaintiff, of any unsafe and unreasonably dangerous conditions of which it created, knew or should have known about in the exercise of reasonable care.

14.     Equity One breached the above-mentioned duties in that it carelessly and negligently maintained the walkway located adjacent to the building on the subject property. The negligent maintenance of the premises created a hazardous condition which caused Plaintiff to fall.

15.     As a result, Plaintiff suffered bodily injury that is permanent within a reasonable degree of medical probability, resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and aggravation of a preexisting condition. These are either permanent or continuing in nature and Plaintiff will suffer these losses in the future.

**B.  Plaintiff Asserts a Bodily Injury Claim Against Defendant's Insured, Equity One.**

16.     At all times material, Equity One was insured for premises liability claims such as ACKLEY'S pursuant to a general liability policy issued by National Fire Insurance Company of Hartford. (Attached hereto as **Exhibit** "**A**").

17.     ACKLEY, by and through his counsel, Steven Phillips, Esq., asserted a bodily injury claim against Equity One for its negligence in causing Ackley's injuries, (herein the

"Injury Claim").

18.     National Fire assumed the defense of Equity One under the policy.

19.     However, ACKLEY's claim was investigated, evaluated and adjusted by CONTINENTAL, by and through its employees and on National Fire's behalf.

20.     On November 7, 2012, ACKLEY filed a personal injury action against Equity One in the Seventeenth Judicial Circuit in and for Broward County, *Ackley v. Equity One, et al*, Case No. CACE12-031439.

21.     After suit was filed, CONTINENTAL assigned their staff counsel, Rosalind Milian, to represent their insured, Equity One, against the Injury Claim.

22.     On March 8, 2013, claims adjuster Alan Carr concluded that its insured was liable for the accident, and it behooves CONTINENTAL to resolve ACKLEY's claim.

23.     On April 25, 2013, CONTINENTAL, through counsel, took ACKLEY's deposition. From the outset, ACKLEY testified that prior to this accident he already had significant disabilities from gunshot wounds he had suffered while employed as a government defense contractor in Nigeria, Afghanistan and Eastern Europe.   He admitted that he was only at about 25% of normal functioning even before this accident.   He testified that he had a serious heart issue because of a bullet to the chest that interfered with his endurance and ability to function.   He admitted that he had been convicted of a crime in years past. He did not try to hide any of his past that might impact the value of his claim in a negative fashion.

24.     With respect to the abdominal injury he suffered in this accident, ACKLEY testified he has some good days and some bad days. He testified that he has issues with his memory and on the morning of the deposition had taken Percocet, Coreg, Neurontin and a

sedative Klonopin, as well as Plavix and aspirin for his heart condition. He readily indicated that he was not claiming any wage loss, nor any loss of consortium claim.

25.    However, attorney Milian suggested that CONTINENTAL surveil ACKLEY because of his response to a single question during a three (3) hour plus deposition, "And how about now?" he testified, "I can't do anything."

26.    On July 15, 2013, CONTINENTAL's new adjuster, Virginia Fisher, concluded that its insured was liable, and Ackley's claim was valued at $200,000.00.   Fisher noted there were no red flag indicators of fraud. (Attached hereto as **Exhibit "B"**).

27.    On July 17, 2013, CONTINENTAL's Special Investigation Unit ("SIU") Investigator, Lee Janicek, put a "settlement hold" on ACKLEY's claim and instructed Fisher not to make any offers to settle pending their fraud investigation.   Janicek's only bases for a fraud investigation were that ACKLEY was possibly malingering and the details of his claim were "sketchy."

28.    CONTINENTAL had put this settlement hold on ACKLEY's claim prior to suspecting him of fraud and before conducting any surveillance on ACKLEY.

29.    Rather, it was the following day, July 18, 2013, that CONTINENTAL commenced four days of surveillance on ACKLEY.   The multiple days of surveillance did not show him lifting weights at the gym, playing football with his kids, or undertaking other significant activity. Rather it shows several short bike rides, as well as one attempt to have his family dog pull him on a skateboard so he did not have to walk, but that experiment did not work well.

30.    On September 23, 2013, Fisher spoke with defense counsel, Rosalind Milian. They concurred that ACKLEY did not stage his accident; that he suffered legitimate injuries as a

result thereof which required surgery; and his case had value. (Attached hereto as **Exhibit "C").**

31.     On November 19, 2013, CONTINENTAL again took the Plaintiff's deposition. During the second deposition, it was clear that Ackley was having physical issues.   He indicated early on that he had misunderstood some questions because he was very tired and had been up all night with his wife who was sick.   He demonstrated confusion multiple times during the examination, including what drugs he was on and when.

32.     In December 2013, Janicek reviewed ACKLEY's medical records to search for instances of malingering and misrepresentations regarding his true medical condition. Janicek could not find any.

33.     On February 27, 2014, Fisher noted that a salon employee would testify that the brackets which injured ACKLEY were exposed for a long period of time and she knew somebody would trip over them.   Fisher stated, "we do not want to take that deposition as it seals liability against us." (Attached hereto as **Exhibit "D").**

### C. CONTINENTAL's Scheme to Intimidate Plaintiff to Dismiss His Injury Claim.

34.     The very next day, February 28, 2014, CONTINENTAL's in-house attorney and "Law Enforcement Liaison," Andrew Bryant, referred Ackley to the Florida Department of Financial Services, Division of Fraud (herein DFS) for criminal prosecution for allegedly making false, incomplete and misleading statements concerning facts material to his claim (herein the "Referral"). (Attached hereto as **Exhibit "E"**).   Specifically, CONTINENTAL's Referral falsely asserted that it had been the victim of insurance fraud in that Plaintiff engaged in various physical activities, purportedly in direct contradiction to his sworn deposition

testimony.

35.     On April 29, 2014, the parties attended mediation.   Notwithstanding that CONTINENTAL had evaluated ACKLEY's claim at $200,000, CONTINENTAL refused to allow Fisher to make any settlement offer due to its SIU hold and fraud investigation.

36.     On August 25, 2014, Lieutenant Stacey Spirn with the DFS wrote to Bryant stating:

> Section 626.989(6), Florida Statutes, also requires that your company, in addition to sending the initial report or information regarding suspected criminal activity, send "such additional information relative thereto as the department may require."

> In the interest of furthering our investigation, and in light of the above statutory requirements, the Division hereby requests **all** of the information in your files concerning the above referenced case or subject, including, but not limited to, claim files, telephone records, telephone logs, adjuster notes, correspondence, and examinations under oath.

(Attached hereto as Exhibit "F")

37.     On September 3, 2014, Bryant responded to Lt. Spirn's request.   However, in direct violation of §626.989(6), Bryant did not transmit to the DFS **all** of the information in CONTINENTAL's file.   Rather, CONTINENTAL cherry-picked which documents to produce, and intentionally withheld a voluminous number of documents. As to those documents it produced to the DFS, such were heavily redacted as CONTINENTAL claimed privilege over documents regarding coverage, reserves, litigation and/or liability analysis, and attorney/client communications.

38.     The DFS presented the matter to the State Attorney Office for the 15th Judicial Circuit in Palm Beach County (PBSAO).   Assistant State Attorney Ryan Kelley declined to prosecute Ackley on the basis that the statements given by ACKLEY "simply did not have any

substantial, material misrepresentations" in it. (Attached hereto as **Exhibit** "G").

39.     Kelly felt the facts of the referral were very weak. Kelley testified that if civil litigation is involved in a case referred to him, they try not to bring charges until the litigation is closed, as it is unethical to use a criminal allegation for the benefit of a civil case-yet that is just what CONTINENTAL did.   Kelly also testified that if he were presented with a redacted record, he would be concerned that there was potentially exculpatory evidence that was missing.

40.     Kelly reasoned that the question was whether Ackley was intentionally lying to commit insurance fraud.   He observed that some of Ackley's answers were somewhat equivocal, but in cases like this when people describe their abilities or pain, it is very subjective. His concluding observation was that the "depositions simply did not have any substantial material misrepresentations."

41.     Upon being informed of Kelly's decision not to prosecute ACKLEY, CONTINENTAL did not withdraw its fraud referral or otherwise request that the DFS discontinue its investigation.

42.     Not happy with the PBSAO decision, Lt. Spirn presented the exact same evidence to the State Attorney for the 17th Judicial Circuit in Broward County (herein BCSAO) where criminal charges were filed, and ACKLEY was eventually arrested for insurance fraud on February 27, 2015.

43.     On March 1, 2015, ACKLEY was released from jail and, on March 2, 2015, attended a second mediation.

44.     CONTINENTAL continued its settlement hold and again failed to make an offer to settle ACKLEY's claim.

45.     On March 4, 2015, ACKELY served CONTINENTAL's insured with a Proposal for Settlement in the amount of $93,250.00. (Attached hereto as **Exhibit "H"**).

46.     Even though the Proposal was for less than half of CONTINENTAL's $200,000 valuation, CONTINENTAL did not accept ACKLEY's Proposal for Settlement and made no offer to settle. Instead, CONTINENTAL continued to push the criminal case to avoid paying ACKLEY anything for his admittedly valuable injury claim.

47.     CONTINENTAL even took the extraordinary step of trying to get the other parties in the Injury Claim to join them in their scheme, but they refused to do so as they did not believe the statements given by ACKLEY supported what CONTINENTAL was attempting to do.

48.     Yasir Billoo, the attorney for one of the co-defendants, was asked why he did not want to join CONTINENTAL in pursuing the criminal case for fraud. He testified that it would be more appropriate to use any inconsistencies during cross-examination in the civil case.   He stated:

> "I was convinced that even if those were the true facts, I don't think it would amount to much in terms of the actual litigation."

49.     Later in 2015, ACKLEY's civil case was stayed pending the resolution of the criminal charges against him.

50.     During the pendency of the criminal case, Ackley was extended offers to settle the criminal charges if he dropped his civil lawsuit.   ACKLEY was advised that if he dropped his injury claim, the criminal charges would be dismissed, and everybody would "go home." ACKLEY was advised that CONTINENTAL had agreed to this stipulation.

51.     All the while, CONTINENTAL refused to make a fair and reasonable offer to settle the Injury claim despite internally acknowledging its insured's liability and damages of at least $200,000, in the hope that ACKLEY would be intimidated into dropping the Injury Claim to avoid payment.   However, ACKLEY refused to capitulate and accept any plea offer as he did not make any false material statement to support the baseless criminal charge instigated by CONTINENTAL.

52.     In May 2019, the judge presiding over ACKLEY's criminal case ordered CONTINENTAL to produce to ACKELY its entire claims file in unredacted form. (Attached hereto as **Exhibit "I"**).

53.     Rather than complying with the court order, CONTINENTAL continued to withhold a voluminous number of documents from production, including exculpatory documents that CONTINENTAL failed to provide the DFS. CONTINENTAL filed a Privilege Log identifying such withheld documents. (Attached hereto as **Exhibit "J"**).

54.     This included CONTINENTAL withholding the reason(s) for its decision not to accept ACKLEY's Proposal for Settlement or otherwise settle the case.

55.     In October 2019, ACKLEY retained Gregory Morse, Esq., as his new criminal defense attorney. Morse was not allowed to obtain copies of the documents withheld by CONTINENTAL, but in his affidavit, he states he was allowed to review the documents in the privilege log.   His observation was that:

> "Some of these documents are indeed exculpatory and speak to the issue of whether CONTINENTAL believed it had sufficient facts to support even the civil standard of fraud."

(Affidavit of Gregory Morse, attached hereto as **Exhibit "K"**)

56.     On January 21, 2020, the criminal judge ordered CONTINENTAL to produce all documents to ACKLEY in unredacted form or the charges would be dismissed. CONTINENTAL refused to comply with the court's order to produce unredacted documents because CONTINENTAL knew certain documents that it failed to furnish the DFS were exculpatory and knew that if it produced unredacted documents, the authorities would have known that ACKLEY had a legitimate and valuable injury claim and CONTINENTAL was acting in bad faith and with malice.

57.     In February 2020, after ACKLEY spent five (5) long years and $30,000 for legal fees fighting the bogus criminal charges against him, the State dropped the charges as the State could not prove its case due to CONTINENTAL's refusal and failure to comply with a lawful subpoena for documents. (See the Nolle Prosequi filed by the State of Florida attached as **Exhibit "L")**.

58.     Rightfully concerned about its potential civil liability to ACKLEY, CONTINENTAL assisted the Broward County State Attorney with crafting the content of his "Close-Out Memorandum," stating the reasons why the charges were dropped.

59.     In November 2021, after nine (9) years of litigation, and only after ACKLEY was acquitted, did CONTINENTAL settle ACKLEY's Injury Claim for $100,000.00.

## COUNT I
## MALICIOUS PROSECUTION

Plaintiff, CHARLES ACKLEY, realleges and re-affirms paragraphs 1 through 59 above.

60.     The Defendant, CONTINENTAL falsely, wrongfully, willfully, intentionally, maliciously and in bad faith, instituted and/or continued the above-mentioned criminal

complaint against the Plaintiff, CHARLES ACKLEY.

61.     CONTINENTAL commenced the criminal proceedings against ACKLEY as had CONTINENTAL not alerted the DFS about their suspicions and provide the DFS with information, there likely would have been no criminal prosecution of ACKLEY.

62.     CONTINENTAL continued the criminal proceeding in bad faith when it did not withdraw its referral after the PBCSAO declined to bring charges after determining that ACKLEY had not made any material misrepresentations.

63.     CONTINENTAL continued ACKLEY's prosecution in bad faith as it had every opportunity to settle ACKLEY's case just days after having him arrested. ACKLEY offered to settle his claim for $93,250. CONTINENTAL did not accept and made no offer to settle, despite valuing ACKLEY's legitimate claim at $200,000, a sum more than double ACKLEY's offer.

64.     CONTINENTAL had a duty and obligation to make a full and fair disclosure to, and provide all documents requested by the State of Florida, to support CONTINENTAL's Referral to the DFS.

65.     CONTINENTAL's disclosure was neither full nor fair. While CONTINENTAL highlighted ACKLEY's "I can't do anything" statement in its referral to the DFS, this is an inaccurate representation of the entirety of his testimony. Numerous times during his deposition ACKLEY testified he has good and bad days; that when he takes his medicine he can walk without a cane; that he walks with his wife weekly to the shopping center when medicated; and that he goes on short and long walks, sometimes with a cane and sometimes without.

66.     CONTINENTAL's disclosure was neither full nor fair as CONTINENTAL never

informed the DFS that its was not disputing liability or that ACKLEY was legitimately injured;

rather only the extent of his injuries.

67.     CONTINENTAL failed to make a full and fair disclosure to the DFS when it

violated 626.989(6) by not furnishing the DFS with all of its files. CONTINENTAL refused to

comply with this obligation even upon a subpoena issued by court order to produce

unredacted documents in the criminal case.   CONTINENTAL refused to comply with the

court approved subpoena and produce unredacted documents because CONTINENTAL knew

the documents were exculpatory and knew that if it produced unredacted documents it would

become known that ACKLEY had a legitimate and valuable injury claim and CONTINENTAL

was acting in bad faith and with malice.1

68.     CONTINENTAL had actual knowledge that its criminal referral was frivolous

and without legal basis, and had actual knowledge that there was evidence in its claims file

which exculpated Plaintiff from any alleged wrongdoing.   Yet, CONTINENTAL urged the

authorities to continue with prosecution of the criminal charges against ACKLEY, despite his

continuous pleas to have the charges dropped.

69.     Such criminal complaint was instituted by the Defendant, CONTINENTAL,

without any probable cause to do so.

70.     Prior to making such referral, CONTINENTAL had actual knowledge that

ACKLEY had a legitimate injury claim for which Equity One was liable and that ACKLEY did

---

1 In this litigation, CONTINENTAL has withheld from producing to ACKLEY many, if not all, of the same (exculpatory) documents it withheld from the DFS under the guise of privilege. The Court has yet to rule on ACKLEY's objections. (DE 88)

not have the intent to defraud CONTINENTAL.

71.     Prior to making the Referral, CONTINENTAL's litigation adjuster and the employee/defense attorney determined that ACKLEY's case had value and "We are not disputing an accident happened, he was damaged, and he did have surgery."

72.     Even with the above knowledge and conclusions, the Referral was made by CONTINENTAL at the same time CONTINENTAL was doing exactly what it was accusing ACKLEY of having done.   That is, CONTINENTAL had intentionally allowed Equity One to submit false answers to Plaintiff's interrogatories wherein CONTINENTAL knowingly failed to disclose:

     i.    That its insured and CONTINENTAL employees not only knew who and how the mailboxes where ACKLEY fell were removed but that they had been anchored to the ground. See multiple CONTINENTAL claims' notes attached as **Composite Exhibit "M" (pgs. 338, 398, 399)** wherein CONTINENTAL adjusters document that their insured (Equity One) asked its general contractor to remove the mailboxes that had been *anchored to the ground* yet failed to disclose this information in answers to ACKLEY's interrogatories even though they knew ACKLEY had tripped over brackets on the ground where mailboxes had been removed.

     ii.    That an independent liability witness who worked at a hair salon near where ACKLEY fell had advised the CONTINENTAL employee/defense attorney that the brackets had been left exposed for a period of time before ACKLEY fell and she knew someone was going to trip over them. See litigation adjuster, Virginia Fisher's claims note attached as **Exhibit "N" (pg. 319-320)** wherein she notes the above facts and states, "We didn't want to take that dep[o] as it seals liability against us".

*See* Equity One's answers to ACKLEY's interrogatories numbers 6, 8 and 9 attached as **Exhibit "O."**

73.     Upon learning of the independent liability witness, CONTINENTAL researched whether the salon's lease agreement required the salon to give notice of any hazard on the

premises to CONTINENTAL's insured. Upon determining that the salon had no such duty, CONTINENTAL knowingly decided not to disclose the independent liability witness to ACKLEY.

74.    The sole basis for CONTINENTAL's referral was that ACKLEY made inconsistent and/or contradictory statements while under oath in deposition.

75.    However, CONTINENTAL knew that it did not have sufficient evidence to support a motion to dismiss the pending personal injury lawsuit for fraud on the court which would have been the usual course of action if a carrier reasonably suspected a claimant of presenting false or misleading testimony in a deposition. CONTINENTAL knew that the deposition testimony that they perceived as not 100% accurate was not grounds to convince the civil court to dismiss ACKLEY's Injury Claim for fraud so they took the extraordinary route of having Ackley prosecuted criminally in an effort to intimidate him into dropping his injury claim. See *Guillen v. Mai So Vang*, 138 So.2d 1144 (Fla. 5th DCA 2014) (inconsistency, nondisclosure, poor recollection, dissemblance and even lying, are insufficient to support a dismissal for fraud). ACKLEY refused to capitulate to CONTINENTAL's intimidation scheme.

76.    CONTINENTAL claims it was statutorily required to report ACKLEY for suspected insurance fraud pursuant to section 626.989, Florida Statutes.

77.    Section 626.989 requires a showing of scienter i.e. "knowingly and with intent to defraud."

78.    In making the referral, CONTINENTAL neither considered nor determined that ACKLEY had the requisite intent to defraud CONTINENTAL or whether his conduct could be explained as innocent.

79.     Ultimately, after ACKLEY was forced to defend himself against the bogus criminal charges for five (5) years, the charges were dropped for insufficient evidence when CONTINENTAL refused to comply with a court order to produce the unredacted portions of its claims file which CONTINENTAL knew contained exculpatory information.

80.     The aforementioned abandonment of the charges by the prosecution and the Nolle Prosequi constitute a *bonafide* termination of such matter in the Plaintiff, CHARLES ACKLEY's favor.

81.     All of the facts set forth above were taken by CONTINENTAL in bad faith and with legal malice in furtherance of its scheme to avoid paying ACKLEY's valuable injury claim at any cost, even if it meant that ACKLEY would be wrongfully charged with a felony crime and have that hanging over him for five (5) years with the threat of going to jail in addition to incurring $30,000.00 in legal defense fees defending himself against the unsupported charges.

82.     As a direct and proximate result of CONTINENTAL's wrongful, malicious, intentional and bad faith institution of such criminal complaint by CONTINENTAL, ACKLEY became nervous, upset, anxious, depressed and suffered great emotional distress.

83.     As a direct and proximate result of CONTINENTAL's wrongful, malicious, intentional and bad faith institution of such criminal complaint by CONTINENTAL, ACKLEY sustained damages including, but not limited to:

    1)  Legal fees and costs incurred in his defense of the criminal action;

    2)  loss of use of such monies; and

    3)  Extreme embarrassment and emotional distress.

84.     As a result of Defendant's wrongful, malicious, intentional and bad faith conduct, Plaintiff is entitled to an award of punitive damages as:

1) Defendant's conduct constituted a conscious indifference to the consequences of their actions and/or reckless indifference to the rights of Plaintiff; by, among other things, pursuing criminal charges of him based on false pretense.

2) Defendant willfully, maliciously, intentionally, and/or recklessly acted as set forth herein, including participation in a scheme to illegally coerce Plaintiff to drop his Injury claim; pursuing criminal charges based on false pretenses; concealing exculpatory evidence from Plaintiff and the Court; and continuing to urge prosecution of the criminal case.

85.     There should be no cap on a potential award of punitive damages.   At the time the Defendant initiated and continued to pursue the criminal charges, Defendant had a specific intent to harm Plaintiff, including by forcing him to incur fees defending against the groundless criminal case.   The Defendant knew that its criminal complaint lacked merit but brought and continued to pursue it anyway.

86.     At a minimum, Plaintiff should be permitted to seek punitive damages in the amount of four (4) times the amount of compensatory damages.   At the time the Defendant initiated and continued to prosecute the criminal charges, the Defendant pursued such claim solely for unreasonable financial gain.   The unreasonably dangerous and reckless nature of the Defendant, together with the high likelihood that Plaintiff would suffer injury from the Defendant's conduct (including but not limited to having to incur fees to defend against the Defendant's groundless claim), was actually known by those responsible for making policy decisions on behalf of the Defendant.

WHEREFORE, the Plaintiff, CHARLES ACKLEY, demands judgment for compensatory damages,   interest   thereon,   punitive   damages   and   costs   against   the   Defendant,

CONTINENTAL CASUALTY COMPANY, and further demands a trial by jury.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff, CHARLES ACKLEY, realleges and re-affirms paragraphs 1 through 59 above.

87.     Defendant's conduct was intentional or reckless such that Defendant knew or should have known that emotional distress would likely result.

88.     Defendant's conduct was so outrageous to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community.

89.     Defendant's conduct, as aforementioned caused Plaintiff severe emotional distress.

WHEREFORE, the Plaintiff, CHARLES ACKLEY, demands judgment for compensatory damages, interest thereon, punitive damages and costs against the Defendant, CONTINENTAL CASUALTY COMPANY, and further demands trial by jury.

## COUNT III
## VIOLATION OF FLORIDA STATUTE §817.234(7)(b)

Plaintiff, CHARLES ACKLEY, hereby adopts, realleges and reaffirms each and every allegation contained in paragraphs 1 through 59 of this Complaint as though fully alleged herein and further alleges:

90.     The aforesaid acts or omissions of CONTINENTAL constitutes a violation of Florida Statute §817.234(7)(b), which provides a claimant a cause of action where an insurer, its

agents or representatives act with the intent to injure, defraud or deceive any claimant with regard to any claim.

91.     CONTINENTAL intended to injure, defraud or deceive ACKLEY with regard to his aforesaid bodily injury claim.

92.     As a direct and proximate result of such conduct by CONTINENTAL, ACKLEY has suffered damages including, but not limited to:

      A.  Legal fees and costs incurred in his defense;

      B.  Loss of use of such monies; and

      C.  Extreme embarrassment and emotional upset.

WHEREFORE, Plaintiff, CHARLES ACKLEY, demands judgment for compensatory damages pursuant to Florida Statute § 817.234(7) and punitive damages against the Defendant, CONTINENTAL CASUALTY COMPANY, plus interest on all liquidated sums, costs and attorney's fees pursuant to Florida Statute §817.234 and further demands a trial by jury of all issues so triable.

## COUNT IV
## ABUSE OF PROCESS

Plaintiff, CHARLES ACKLEY, hereby adopts, realleges and reaffirms each and every allegation contained in paragraphs 1 through 59 of this Complaint as though fully alleged herein and further alleges:

93.     CONTINENTAL instigated the criminal charges against Plaintiff when it improperly and illegally reported Plaintiff for suspected insurance fraud to the authorities without probable cause and continued ACKLEY's prosecution after it could have settled ACKLEY's case and after being told by Kelly that ACKLEY did not misrepresent anything.

94.     CONTINENTAL instigated Plaintiff's criminal prosecution with the ulterior motive or purpose of attempting to intimidate and coerce ACKLEY into dropping his valuable injury claim.

95.     As a direct and proximate result of CONTINENTAL's wrongful, malicious, intentional and bad faith abuse of process, ACKLEY sustained damages including, but not limited to:

    1)  Legal fees and costs incurred in his defense of the criminal action;

    2)  loss of use of such monies; and

    3)  Extreme embarrassment and emotional distress.

WHEREFORE, the Plaintiff, CHARLES ACKLEY, demands judgment for compensatory damages, interest thereon, punitive damages and costs against the Defendant, CONTINENTAL CASUALTY COMPANY, and further demands trial by jury.

DATED this **_27th_** of September, 2024.

Respectfully submitted,

BENRUBI LAW, P.A.
6501 Congress Avenue, Suite 118
Boca Raton, FL   33487
Office: (561) 910-8650
E-Mail: _Rbenrubi@benrubilaw.com_
Secondary: _cgarcia@benrubilaw.com_

*Counsel for Plaintiff*

By: /s/ **Richard M. Benrubi**
    RICHARD M. BENRUBI
    Florida Bar No.: 796573

## CERTIFICATE OF SERVICE

I hereby certify that on September _27th_, 2024, a copy of the foregoing Amended

Complaint was filed electronically.   Notice of this filing will be sent to the following parties

through the Court's Electronic Case Filing System. Parties may access this filing through the

Court's system.

**LAURA BESVINICK, ESQ**.
**JULIE E. NEVINS, ESQ.**
Clyde & Co US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Tel: (305) 446-2646
Email: _laura.besvinick@clydeco.us_
Email: _julie.nevins@clydeco.us_
Secondary: _paul.kalandiak@clydeco.us_
_Haydrich.estrada@clydeco.us_

_Counsel for Defendant_

By: _/s/ Richard M. Benrubi_
        RICHARD M. BENRUBI
        _Counsel for Plaintiff_