UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CHARLES ACKLEY,                                             CASE NO.: 0:22-cv-60377-RS

    Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY,

    Defendant,
_____/

# PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AND STATEMENT OF ADDITIONAL MATERIAL FACTS

Plaintiff, CHARLES ACKLEY, by and through her undersigned counsel, files this his Response to Defendant's Statement of Material Facts and Statement of Additional Material Facts with respect to Defendant's Motion for Summary Judgment, and as grounds therefore states:

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

1. Undisputed.

2. Undisputed.

3. Undisputed that Defendant has accurately quoted selected portions of Plaintiff's deposition.

4. Undisputed.

5. Undisputed that Defendant accurately quotes the claim note.

6. Undisputed.

7. Undisputed that CONTINENTAL had guidelines. Disputed that its investigation complied with such guidelines. Virginia Fisher noted the absence of any red flags just before Janicek instituted the settlement hold. (DE 136-3; p.4). CONTINENTAL is unable to identify a single "red flag" indicator from its "Recognizing Suspicious Claims" guideline. (See **Exhibit "A"** attached hereto). Moreover, the guidelines define fraud as "an **intentional** perversion of the truth. (DE 136-5; p.1). CONTINENTAL admits to never having considered whether ACKLEY had the requisite intent to defraud. ( Gall deposition; DE 136-21; 34:14-36:25).

8. Undisputed that Defendant accurately quotes a portion of the surveillance report. The multiple days of surveillance did not show ACKLEY lifting weights at the gym, playing football with his kids, or undertaking other significant activity that he disclaimed the ability to do. Rather it shows several short bike rides, as well as one attempt to have his family dog pull him on a skateboard so he did not have to walk, but that experiment did not work well.

9. Undisputed that Defendant accurately quotes a portion of the surveillance report. However, Janicek's suspected red flags are not indications of fraud pursuant to Defendant's guidelines. (**Exhibit "A"**).

10. Undisputed.

11. Undisputed that Defendant accurately quotes from a portion of the surveillance report.

12. Undisputed that Defendant accurately quotes the claim note.

13. Undisputed that Defendant accurately quotes the claim note.

14. Undisputed that Defendant accurately quotes the claim note.

15. Undisputed that Defendant has accurately quoted selected portions of Plaintiff's deposition.

16. Undisputed that Defendant accurately cites Janicek's deposition testimony.

17. Undisputed that Defendant accurately quotes the claim note and deposition testimony.

18. Undisputed that Defendant accurately quotes the deposition testimony.

19. Undisputed.

20. Undisputed.

21. Undisputed.

22. Undisputed.

23. Disputed. CONTINENTAL failed to make full and fair disclosure to the DIFS, including its concealment of exculpatory information. (See Affidavit of Gregory Morse, Esq., attached hereto as **Exhibit "B**)."

24. Undisputed that Defendant accurately cites the deposition testimony.

25. Undisputed.

26. Disputed. CONTINENTAL failed to make a full and fair disclosure of the facts to the DIFS, including its concealment of exculpatory information. (See Affidavit of Gregory Morse, Esq., attached hereto as **Exhibit "B**)."

27. Undisputed that Defendant accurately cites the deposition testimony.

28. Undisputed.

29. Undisputed.

30. Undisputed.

31. Undisputed.

32. Undisputed.

33. Undisputed.

34. Undisputed.

35. Undisputed.

36. Undisputed.

37. Undisputed that Defendant accurately cites the deposition testimony.

38. Undisputed.

39. Undisputed that Defendant accurately cites the deposition testimony.

40. Undisputed.

41. Undisputed.

42. Disputed. ASA Paul testified that he informed Defendant of the terms of the plea deal, including Plaintiff's agreement to dismiss his injury lawsuit. Paul testified that he sought Defendant's input, and that Defendant did not object to the terms. (Paul deposition; DE 136-27: 69:22-71:25).

43. Undisputed.

44. Undisputed that Defendant accurately cites the deposition testimony.

45. Undisputed that Defendant accurately cites the deposition testimony.

46. Undisputed.

47. Disputed. CONTINENTAL had a duty to make a full and fair disclosure to

the DIFS and nothing prevented them from doing so had they acted in good faith.

48. Undisputed.

49. Undisputed.

50. Disputed. CONTINENTAL had a duty to make a full and fair disclosure to the DIFS and nothing prevented them from doing so had they acted in good faith.

## PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

51. From the outset of his first deposition, ACKLEY candidly disclosed his pre-existing disability caused by serious heart issues sustained from gunshot wounds while employed as a government defense contractor overseas. He admitted to being only 25% of normal functioning prior to this accident. (DE 136-1 at 98:2-16).

52. ACKLEY testified he has good days and bad days. When he takes his medicine, he can walk without a cane. (*Id.* at 34:8-35:22). He testified that he usually walks with his wife to the shopping center weekly when on medication. (*Id.* at 99:1-11). On the morning of the deposition, he was "groggy" as he had taken his daily Percocet, Coreg, Neurontin and a sedative Klonopin. (*Id*. at 4:10-5:18).

53. On July 15, 2013, CONTINENTAL concluded that its insured was liable and valued ACKLEY'Ss claim was at $200,000.00. Fisher noted there were no red flag indicators of fraud. (7/15/13 Claim Note (CCC15289-92) (**Composite Exhibit "C"**).

54. Two days later, prior to conducting any surveillance, CONTINENTAL'S, Lee Janicek, put a "settlement hold" on ACKLEY's claim and instructed Fisher not to make any offers to settle pending their fraud investigation. (7/17/13 Claim Note (CCC15285-86) (**Composite Exhibit 1**).

55. CONTINENTAL admits that ACKLEY did not stage his accident; that he suffered legitimate injuries which required surgery; and his case had value. (9/23/13 Claim Note (CCC15256-57) (**Composite Exhibit 1**).

56. Fisher was to call Janicek for settlement authority as she wanted to settle ACKLEY'S claim. (9/23/13 Claim Note (CCC15256-57) (**Composite Exhibit "C"**).

57. During his second deposition, it was clear that Ackley was having issues. He indicated that he had misunderstood some questions because he was very tired and had been up all night with his wife who was sick. He demonstrated confusion multiple times during the examination, including what drugs he was on and when. (*Id.* at 57:3-9).

58. ACKLEY again testified that he walks to the store without a cane, and it varies week to week. He disclosed he was trying to walk more and that he tried to have his dog pull him on the skateboard. (*Id*. at 102:25-103:18). He stated he goes on walks, sometimes short and sometimes long, sometimes with a cane and sometimes without. (*Id*. at 113:2-114:3)

59. ACKLEY testified that he takes care of the family, does the dishes, cooking and laundry, but that it all varies because there are good days and bad days. (*Id*. at 115:10-116:13)

60. Janicek reviewed ACKLEY's medical records to search for instances of malingering and misrepresentations regarding his true medical condition. but could not find any. (12/4/13 Claim Note (CCC15242-45) (**Composite Exhibit "C"**).

61. CONTINENTAL'S insured requested to have the SIU settlement hold removed. (1/23/14 Claim Note (CCC15228;15234-35) (**Composite Exhibit "C"**).

62. On February 27, 2014, Fisher noted that a salon employee would testify that the brackets which injured ACKLEY were exposed for a long period of time and she knew somebody would trip over them. Fisher stated, "we do not want to take that deposition as it seals liability against us." (2/27/14 Claim Note (CCC15216) (**Composite Exhibit "C"**).

63. On February 28, 2014, the very next day, CONTINENTAL reported ACKLEY to the DIFS for suspected insurance fraud. (Defendant's Ex. 6; DE 136-6).

64. CONTINENTAL's sole basis for reporting ACKLEY was that his "I can't do anything" deposition testimony was contradicted by the video surveillance. (Defendant's Ex. 6; DE 136-6).

65. In April 2014, the parties attended mediation. Notwithstanding that CONTINENTAL had evaluated ACKLEY's claim at $200,000, CONTINENTAL refused to allow Fisher to make any settlement offer due to its SIU hold and fraud investigation. 4/29/14 Claim Note (CCC15199-200) (**Composite Exhibit "C"**).

66. On August 25, 2014, Lieutenant Stacey Spirn with the DFS wrote to Bryant stating:

> Section 626.989(6), Florida Statutes, also requires that your company, in addition to sending the initial report or information regarding suspected criminal activity, send "such additional information relative thereto as the department may require."

(Defendant's Ex. 7; DE 136-7).

67. Spirn's letter continued, "In the interest of furthering our investigation, and in light of the above statutory requirements, the Division hereby requests **all** of the information in your files concerning the above referenced case or subject, including, but not limited to,

claim files, telephone records, telephone logs, adjuster notes, correspondence, and examinations under oath. (*Id.*).

68.    However, Bryant did not transmit to the DFS **all** the information in CONTINENTAL's files. Rather, CONTINENTAL cherry-picked which documents to produce, and intentionally withheld a voluminous number of documents. As to those documents it produced to the DFS, such were heavily redacted as CONTINENTAL claimed privilege over documents regarding coverage, reserves, litigation and/or liability analysis, and attorney/client communications. (Defendant's Ex. 8; DE 136-8).

69.    Assistant State Attorney Ryan Kelley declined to prosecute ACKLEY as the statements given by ACKLEY, "simply did not have any substantial, material misrepresentations" in it. **(Exhibit "D").**

70.    Kelly felt the facts of the referral were very weak. Kelley testified that if civil litigation is involved in a case referred to him, they try not to bring charges until the litigation is closed, as it is unethical to use a criminal allegation for the benefit of a civil case- yet that is just what CONTINENTAL did.  (Kelley deposition; DE 136-26; 15:10-25).

71.    Kelly testified that if he were presented with a redacted record, he would be concerned that there was potentially exculpatory evidence that was missing. (*Id*. at 21:10-21).

72.    Kelly reasoned that the question was whether Ackley was intentionally lying to commit insurance fraud.  He observed that some of Ackley's answers were somewhat equivocal, but in cases like this when people describe their abilities or pain, it is very subjective.  (*Id*. at 25:16-27:23).

73. Upon being informed of Kelly's decision not to prosecute ACKLEY, CONTINENTAL did not withdraw its fraud referral or otherwise request that the DFS discontinue its investigation. (Gall deposition; DE 136-21; 73:6-76:20).

74. CONTINENTAL tried to get the other defendants to join them in their scheme, but they refused to do so as they did not believe the statements given by ACKLEY supported what CONTINENTAL was attempting to do. (3/2/15 Claim Note (CCC15159) (**Composite Exhibit "C"**).

75. Yasir Billoo, the attorney for one of the co-defendants, was asked why he declined CONTINENTAL'S invitation to join its criminal pursuit of ACKLEY. He thought that it would be more appropriate to use any inconsistencies during cross-examination in the civil case. He stated:

> "I was convinced that even if those were the true facts, I don't think it would amount to much in terms of the actual litigation."

(Billoo deposition; **Exhibit "E" 12:14-14:16**).

76. On March 4, 2015, ACKELY served CONTINENTAL's insured with a Proposal for Settlement in the amount of $93,250.00. (Attached hereto as **Exhibit "F"**).

77. CONTINENTAL neither accepted ACKLEY's Proposal for Settlement nor made any offer to settle. Instead, CONTINENTAL decided to maintain the settlement hold and see how the criminal case played out all to avoid paying ACKLEY anything for his admittedly valuable injury claim. (Gall deposition; DE 136-21; 78:2- 82:2).

78. ACKLEY was extended a plea offer to settle the criminal charges if he dropped his civil lawsuit. ASA Paul advised that he conveyed the terms of the plea deal to

CONTINENTAL to get their input. Paul testified that CONTINENTAL did not object to the terms of the plea. (Paul deposition; DE 136-27; 69:22-73:15).

79. CONTINENTAL denies having any communication with ASA Paul regarding the terms of a plea deal. (Gall deposition; DE 36-21; 70:20-71:13).

80. CONTINENTAL ultimately settled ACKLEY'S claim for $100,000, six (6) years after having him arrested, but only after the criminal charges were dropped even though CONTINENTAL purportedly believed ACKLEY'S claim was fraudulent. (Gall Deposition; 136-21; 38:10-41:1).

DATED this 8th day of January, 2025.

    Respectfully submitted,

    BENRUBI LAW, P.A.
    6501 Congress Avenue, Suite 118
    Boca Raton, FL  33487
    Office: (561) 910-8650
    E-Mail: RBenrubi@benrubilaw.com
    Secondary: cgarcia@benrubilaw.com

    *Counsel for Plaintiff*

    By: /s/ *Richard M. Benrubi*
        RICHARD M. BENRUBI
        Florida Bar No.: 796573

## CERTIFICATE OF SERVICE

I hereby certify that on January 8th, 2025, a copy of the foregoing Motion for Extension of Time to File Third Amended Complaint was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

**LAURA BESVINICK, ESQ**.
**JULIE E. NEVINS, ESQ.**
Clyde & Co US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Tel: (305) 446-2646
Email: laura.besvinick@clydeco.us
Email: julie.nevins@clydeco.us
Secondary: paul.kalandiak@clydeco.us
Haydrich.estrada@clydeco.us

*Counsel for Defendant*

By: /s/ Richard M. Benrubi
RICHARD M. BENRUBI
*Counsel for Plaintiff*