UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CHARLES ACKLEY,                                    CASE NO.: 0:22-cv-60377-RS

    Plaintiff,

vs.

CONTINENTAL CASUALTY COMPANY,

    Defendant,
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR MOTION FOR SUMMARY JUDGMENT

Plaintiff, CHARLES ACKLEY, files this Response in Opposition to Defendant's Motion to Dismiss or Motion for Summary Judgment.

### I.    ARGUMENT

#### A.  CONTINENTAL IS NOT IMMUNE, AS A MATTER OF LAW, UNDER §626.989.

CONTINENTAL asserts immunity under §626.989, claiming that it was required to report ACKLEY for suspected insurance fraud to comply with its statutory obligations, and for no other reason. There are four separate, independent reasons CONTINENTAL is wrong.

Per §626.989, an insurer having knowledge or who believes that a "fraudulent insurance act" has been committed, shall report such information to the DIFS. Subsection (1) of that statute defines a "fraudulent insurance act" as:

> **Knowingly** and with **intent to defraud** presents, causes to be presented, or prepares with knowledge or belief that it will be presented, to or by an insurer, self-insurer, self-insurance fund, servicing corporation, purported insurer, broker, or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of, any insurance policy, or **a claim for payment or other benefit pursuant to any insurance policy**, which the person knows to contain materially false information concerning any fact material thereto or if the person conceals, for the purpose of misleading another, information concerning any fact material thereto. [Emphasis added.]

**First**, as a matter of statutory interpretation, §626.989 does not apply. It applies when someone makes a claim to an insurance company for benefits under a policy. That was the situation in the cases CONTINENTAL cites, <u>Hanover Ins. Group v. Frazier</u>, 385 So. 3d 178 (Fla. 2d DCA 2024), and <u>Saenz v. State Farm Fire & Casualty Co</u>., 861 So. 2d 64 (Fla. 3d DCA 2003). In both <u>Frazier</u> and <u>Saenz</u>, the plaintiffs made claims for payment directly to the insurers. They did not, as ACKLEY did in this case, file a lawsuit against not an insurer, but the insured.[1] Clearly, this is not what the statute contemplates as a "fraudulent insurance act."

**Second**, as framed by CONTINENTAL itself, the facts of this case did not trigger any required reporting under the statute. CONTINENTAL's entire theory of why it was required to report to DIFS is that ACKLEY (allegedly) made misrepresentations in **oral** depositions. (*See* DE 137 at 11.) The definition of "fraudulent insurance act" in §626.989(1) requires a "written statement." ACKLEY's alleged misrepresentations were **oral**, not written. What ACKLEY said orally could not, as a matter of law, constitute "a fraudulent insurance act" requiring CONTINENTAL to report to the DIFS under §626.989(6).

**Third**, CONTINENTAL has failed to discharge its initial burden. It is claiming immunity from this lawsuit. *See* §626.989(4)(c), (d). This kind of immunity is an affirmative defense for which CONTINENTAL will carry the burden of proof at trial. *See, e.g.*, <u>Fariello v. Gavin</u>, 873 So. 2d 1243, 1245 (Fla. 5th DCA 2004); *Pearce v. U.S. Fid. & Guar. Co.*, 476 So. 2d 750, 751 (Fla. 4th DCA 1985) (where statutory immunity was raised as an affirmative defense). When the party moving for summary judgment bears the burden of proof at trial, it must

---

[1] ACKLEY is aware of *Cooper v. Patronis*, No. 8:22-CV-01331-KKM-AAS, 2023 WL 7929159, at *3 (M.D. Fla. Oct. 16, 2023), *aff'd*, 2024 WL 4986453 (11th Cir. Dec. 5, 2024), but there the district court expressly avoided deciding the §626.989 issue.

affirmatively show the absence of a genuine issue of material fact, only after which the burden shifts to the other party. *See* Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993). Here, that means CONTINENTAL must present real evidence that, assuming there was materially false information, ACKLEY acted knowingly and intentionally. CONTINENTAL wholly failed to present such evidence. (*See* DE 137 at 2-5; DE 138 at 1-5.) Indeed, while it claims it did exactly what the statute required, CONTINENTAL rejects the idea that it even needed to "hav[e] knowledge" or "believ[e]," §626.989(6)(a), that ACKLEY had the requisite intent to defraud before reporting him for fraud. (DE 136-21 at 30:5-39:3 (Gall deposition).) CONTINENTAL considered only whether ACKLEY made a false statement when reporting ACKLEY, without ever having knowledge or a belief that ACKLEY acted with the requisite intent. Because CONTINENTAL failed to discharge its initial burden, the Court must deny this part of its motion. *See* Fitzpatrick, 2 F.3d at 1116.

**Fourth**, there is a genuine dispute of material fact over whether there was an "absence of fraud or bad faith" or "malice" in CONTINENTAL's reporting of ACKLEY to DIFS. §626.989(4)(c). The facts known to CONTINENTAL show there were no reasonable grounds for suspecting ACKLEY of insurance fraud. CONTINENTAL admits that it reported ACKLEY for mere inconsistencies, exaggeration and contradictions.

To justify its referral, CONTINENTAL misrepresented the record, cherry-picked statements out of context and concealed exculpatory information. CONTINENTAL's sole basis for suspecting ACKLEY of fraud was his deposition testimony that, "I can't do anything." This is an inaccurate representation of his testimony. During his one hundred plus page deposition, ACKLEY goes on to describe all the things he could do, albeit with limitations. Despite these

candid statements about his activity level, CONTINENTAL cites only a few lines to the DIFS and highlights only his "I can't do anything" statement. (Exhibit "**A**;" Gall Deposition Vol. 1; at 91:17-94:5). Even in those few lines, ACKLEY described his activities right after exclaiming that he could not do anything.

If not acting maliciously or in bad faith, why did CONTINENTAL take the drastic step of reporting ACKLEY for criminal prosecution, rather than simply moving to dismiss his injury claim for fraud on the court as insurers typically do? Because CONTINENTAL knew that the testimony it perceived as not 100% accurate was insufficient to convince a court that ACKLEY committed fraud, so they weaponized the criminal justice system against ACKLEY. <u>Guillen v. Mai So Vang,</u> 138 So.2d 1144 (Fla. 5th DCA 2014) (inconsistency, non-disclosure, poor recollection dissemblance and even lying are insufficient to support a dismissal for fraud.).[2]

A jury could reasonably infer that CONTINENTAL acted with ulterior motives by any one or a combination of those things from the totality of the evidence:

- CONTINENTAL put a settlement hold on ACKLEY's claim prior to conducting surveillance and suspecting him of insurance fraud. (SOMF ¶54).[3]

- CONTINENTAL refused to lift the settlement hold after its insured asked them to do so. (SOMF ¶61)

- It is undisputed that CONTINENTAL did not wait until after the conclusion of the civil action to report ACKLEY to the DIFS. Prosecutors Kelley and Paul both testified that the criminal and civil case pending concurrently is atypical. (SOMF

---

[2] While CONTINENTAL admits that it reported ACKLEY based on the same sort of inconsistencies described in <u>Guillen,</u> CONTINENTAL invoked the attorney-client privilege when asked whether CONTINENTAL considered filing such a motion in lieu of the criminal referral. (Gall deposition; DE 136-21; 41:4- 45:8). Although Gall is hiding behind privilege, the question was answered by the testimony of Gregory Morse, ACKLEY'S criminal defense attorney: "Some of these documents are indeed exculpatory and speak to the issue of whether CONTINENTAL believed it had sufficient facts to support even the civil standard of fraud." (SOMF ¶ 23).

[3] Plaintiff's Statement of Material Facts (SOMF).

¶ 70; Paul Deposition; 136-27 at 41:18-42:12).

- Critically, CONTINENTAL failed to make a full and fair disclosure of the facts to the DIFS, in violation of the very statute under which it now seeks immunity.

- CONTINENTAL failed to inform BCSAO Paul that ACKLEY had reduced his demand from $300,000.00 to less than $100,000.00 (Bryant Deposition; DE 136-23 at 103:4-11), which would have reduced the criminal charge and the potential jail term (Paul Deposition; DE 136-27 at 73:22-75:19;).

- It is undisputed that CONTINENTAL did not withdraw its fraud referral or request that DIFS cease its investigation upon being informed that PBSAO Kelley declined to bring charges because "the deposition simply did not have any material misrepresentations." Gall testified that it did not have that option. (Gall Deposition; DE 136-21 at 73:14-76:20.)  However, Detective Unger testified that a victim can withdraw a complaint after it has been referred.  (Unger Deposition; DE 136-25 at 83:21-84:7.)

- CONTINENTAL refused to make any offer to settle ACKLEY's claim in March 2015, when ACKLEY's $93,250 settlement offer was well below CONTINENTAL's $200,000.00 evaluation. (Gall Deposition; DE 136-21 at 78:22-82:2.)

- Extraordinarily, CONTINENTAL tried to get their co-defendants to join in its scheme. (SOMF ¶74, 75.)

- CONTINENTAL chose to refer ACKLEY for criminal prosecution, which obviously threatened to visit severe consequences upon him rather than take the reasonable step of filing a motion in the civil suit to dismiss it for fraud on the court.[4]

- It is undisputed that CONTINENTAL did not inform BCSAO prosecutor Paul that it no longer wanted to press charges or participate in the prosecution, even though as Paul testified, that more likely than not would have led the office to drop the charges against ACKLEY. (Paul Deposition;  DE 136-27 at 77:4-12.)

- CONTINENTAL withheld potentially exculpatory evidence in the criminal action, even after the circuit court ordered it to produce that evidence to ACKLEY. (SOMF ¶23, 66-68.)

- CONTINENTAL ultimately settled ACKLEY's claim for $100,000.00 after the criminal charges were dropped, even though CONTINENTAL purportedly

---

[4] CONTINENTAL asserts that "discovery is now complete," which is not true. (DE 137 at 2.) It lodged a privilege-based objections to ACKLEY's discovery regarding this decision that the magistrate judge sustained. (DE 84.) ACKLEY filed an objection to the magistrate judge's report, which has not been ruled upon. (DE 88.)

believed ACKLEY's claim was fraudulent.[5] (SOMF para 80.)

"As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) (citations omitted); *cf. also* *Global Quest v. Horizon Yachts*, 849 F.3d 1022, 1029 (11th Cir. 2017) ("In fraud cases, however, summary judgment is rarely proper as the issue so frequently turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge." (cleaned up)). Accordingly, if the Court rejects ACKLEY's first three arguments, the immunity defense must be left to a jury to decide, from the facts and circumstances in the record, and all inferences to be drawn therefrom.[6]

Moreover, *Frazier* is factually distinguishable because, in *Frazier*, avoiding payment of the claim was not the carrier's motivation; the falsity of the plaintiff's statements could be objectively determined and the intent to defraud was clear, whereas this case concerns subjective facts; and the *Frazier* insurer did not withhold exculpatory documents from the authorities. What is more, *Frazier* was decided on directed verdict and not summary judgment, so the court there was able to hear and consider all the evidence.

## B. RECORD EVIDENCE SUPPORTS THE RELEVANT ELEMENTS OF MALICIOUS PROSECUTION.

CONTINENTAL urges this Court to determine, as a matter of law, that three

---

[5] *See* supra note 4.

[6] As the Fourth District Court of Appeal said in a criminal case:

> Intent, being a state of mind, is rarely if ever susceptible of direct proof. Almost inevitably, as here, it must be shown solely by circumstantial evidence. Intent is a question for the trier of fact to decide based upon all factual inferences. Often, circumstantial evidence is the only way to prove intent.

*Sebastiano v. State*, 14 So. 3d 1160, 1164 (Fla. 4th DCA 2009) (cleaned up).

elements of Plaintiff's malicious prosecution claim are lacking, i.e. (1) causation; (2) lack of probable cause; and (3) malice.

### 1. There is sufficient evidence of legal causation.

In <u>Harris v. Lewis State Bank</u>, 482 So.2d 1378 (Fla. 1st DCA 1986), the court stated:

"The sixth element, legal causation, requires a showing that the defendant was in some way responsible for the criminal prosecution… The real instigator cannot escape liability by showing he was not the prosecutor of record. The test is whether the defendant's action was the proximate and efficient cause of putting the law in motion." <u>Id.</u> at 1381.

"If a full, complete, and accurate disclosure is made to a public officer, so that the decision to prosecute is left entirely to his discretion, the informant is not liable. However, if pertinent information is withheld, or the facts are misrepresented, there can be no intelligent exercise of the officer's discretion and the person thus procuring the officer's action, is not insulated from responsibility." <u>Id.</u> at n.9 (<u>citing</u> 52 Am.Jur. 2d, *Malicious Prosecution* §57).

"An accuser is charged with knowledge of those mitigating facts which should have come to his knowledge had he made reasonable inquiry and investigation." <u>Id.</u> at n.15 (citation omitted).

"Failure to discontinue prosecution after the charge appears unfounded may render the accuser liable for malicious prosecution." <u>Id. at n.16</u> (<u>citing</u> 52 Am.Jur. 2d, *Malicious Prosecution* §26).

Here, the DIFS relied almost exclusively on the intentionally and materially false and incomplete information CONTINENTAL provided. (*See* DE 136-1 at 7-10.) The only real investigation DFIS conducted beyond that was a twenty-three-minute interview of ACKLEY (*see id.* at 125-52) that DFIS itself implicitly acknowledged made no difference to its decision (*see id.* at 23 ("Ackley made no statements that would exonerate him from misrepresentations regarding his second deposition.").)

This is not a case where the decisions to investigate and then prosecute were **solely** in the hands of the authorities. This is, instead, a case where the information given by CONTINENTAL was **the** determining factor of the prosecution. *Cf.* <u>Floyd v. Stoumbos</u>, 2022

WL 1591356, at *4 (M.D. Fla. Apr. 15, 2022), *aff'd*, No. 22-11679, 2023 WL 2592297 (11th Cir. Mar. 22, 2023). Indeed, as seen later, the prosecutor had to drop the criminal case against ACKLEY when CONTINENTAL refused, despite a court order, to produce its unredacted claims file to ACKLEY, which CONTINENTAL indisputably did not give DIFS. (Paul Deposition; DE 136-27; 76:2-5).

Whether CONTINENTAL's actions were the proximate cause of putting the law in motion is a question of fact for the jury. *Harris*, supra. Whether CONTINENTAL made a full, complete and accurate disclosure to DIFS, so that the decision to prosecute was left entirely to DIFS, is a question of fact for the jury. *Harris*, supra. Factual disputes remain regarding whether DIFS or the State Attorney would have arrested/prosecuted ACKLEY if CONTINENTAL had only complied with its statutory obligations by making a full and fair disclosure of all the facts. As a prosecutor deciding to bring charges, PBSAO Kelley expressed concern about potentially exculpatory information hidden behind the redactions. (DE 136-26; 20:13-21:21).

Here, it is undisputed that ACKLEY would not have been investigated, arrested or prosecuted for insurance fraud had CONTINENTAL not alerted DIFS to their suspicions and provided them with information. *(Gall deposition; DE 136-21; 94:21-95:3)*. See *Pearce,* ("Had appellees not alerted the Division to their suspicions and provided the Division with information including company claims files, there likely would have been no prosecution of Pearce.").

But not only did CONTINENTAL instigate the criminal prosecution, it maliciously continued such proceedings when it failed to withdraw its referral or request that the

prosecution be withdrawn after PBSAO Kelley declined to bring charges for lack of proof. "Failure to discontinue prosecution after the charge appears unfounded may render the accuser liable for malicious prosecution." *Harris*, supra at n.16 (citing 52 Am.Jur. 2d, *Malicious Prosecution* §26). CONTINENTAL also could have discontinued the criminal proceedings just days after having ACKLEY arrested in 2015 by accepting ACKLEY'S $93,250.00 settlement offer. Instead, CONTINENTAL waited for the criminal case to play out and ultimately settled ACKLEY'S claim for $100,000.00 in 2021, but only after CONTINENTAL refused to disclose all the facts, giving the state no choice but to drop the charges.

    **2.    There is sufficient evidence of the absence of probable cause.**

CONTINENTAL asserts that the criminal information supports a finding of probable cause. True, the information is evidence of probable cause. It is not, however, conclusive evidence, and the filing of the information against ACKLEY cannot justify the entry of judgment in favor of CONTINENTAL on the malicious prosecution claim. *See Colonial Stores v. Scarbrough*, 355 So. 2d 1181, 1185 (Fla. 1977) ("[I]n a malicious prosecution action, no presumption of probable cause arises from the filing of an information with respect to the charge upon which such action is based. … [T]he filing of an information merely constitutes evidence of reasonable grounds for the prosecution."). [7]

---

[7] The same can be said of CONTINENTAL'S reliance on the magistrate judge's determination of probable cause of insurance fraud. "[A] magistrate's determination of probable cause to issue an arrest warrant is not a conclusive presumption of probable cause, unless the probable cause determination was based upon an adversary hearing and there was no evidence of fraud or other improper means in securing the warrant." *Harris v. Boone*, 519 So. 2d 1065, 1067 (Fla. 1st DCA 1988) (citation omitted). There is no indication in the Probable Cause Determination that the judge held an adversary hearing on the issue rather than rely solely on an affidavit. (DE 71-3.) While the judge's determination is evidence of probable cause, it is not conclusive. Like the information, the determination cannot justify the entry of judgment in favor of CONTINENTAL on the malicious prosecution claim.

Moreover, a jury must be given the opportunity to decide whether the criminal prosecution was instituted based on facts susceptible to being explained as innocent conduct. *Lindeman v. Stoll, Inc.*, 490 So. 2d 101 (Fla. 2nd DCA 1986) ("A lack of probable cause for initiating a criminal proceeding giving rise to a claim for malicious prosecution can be shown by proof that the proceeding was instituted on the basis of facts susceptible to being explained as innocent conduct."); *Harris*, supra at 1382 ("Lack of probable cause for instituting prosecution may be established by proof that criminal proceeding was instituted on facts that could as well be explained innocently."). Here, ACKLEY can easily prove that his malicious prosecution was instituted on facts explainable as innocent conduct. Indeed, those outside CONTINENTAL saw this for what it was. PBSAO Kelley declined to prosecute ACKLEY for insurance fraud as, "the second deposition simply did not have any substantial, material misrepresentations in it." (SOMF ¶69) Co-Defendant's counsel, Yasir Billoo, concurred. (SOMF ¶75). As the facts and inferences to be drawn from those facts in this case are in dispute, summary judgment on the issue of probable cause is precluded.

**3.    There is sufficient evidence of malice.**

One acts maliciously in instituting a criminal proceeding against another if he does so for the primary purpose of injuring the other, or recklessly and without regard for whether the proceeding is justified, or for any primary purpose except to bring an offender to justice. *See* Fla. Std. Jury Inst. (Civ.) MI5.1(c). In determining whether the Defendant acted maliciously, the jury may consider all the circumstances at the time of the conduct complained of, including any lack of probable cause to institute the proceedings. See id.

On the malice element, the Florida Supreme Court holds:

"In an action for malicious prosecution it is not necessary to prove actual malice, legal

malice is sufficient and may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others."

*Mancusi*, supra at 1357.

In *Mancusi*, the Supreme Court further explained, "In this case, the issue of probable cause is in dispute and Plaintiff produced evidence from which a jury could infer that Defendant ' employees intentionally provided false information." *See also Harris*, supra at 1382 ("Whether malice existed is also a jury question," (citing 24 Fla. Jur. 2d *False Imprisonment and Malicious Prosecution* §32)).

Under the disputed facts in this case, a jury must have the opportunity to determine whether probable cause existed and whether CONTINENTAL's actions amounted to intentional conduct. Again, a party's state of mind is generally a question of fact.

### C. RECORD EVIDENCE SUPPORTS THE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED).

CONTINENTAL cites only one case to argue that ACKLEY cannot prove his IIED claim. CONTINENTAL claims that this case, *Valdes v. GAB Robins North America*, 924 So. 2d 862 (Fla. 3d DCA 2006), is "directly on point." *Valdes* is distinguishable.

The district court summarized the complaint's pertinent allegations as follows:

> Sometime in 1999, appellees had Valdes videotaped while he was engaged in a number of physical activities. Valdes subsequently was queried during a deposition about the activities captured on videotape and then was reported to the State of Florida Division of Insurance Fraud for engaging in insurance fraud.
>
> On December 9, 1999, Valdes was arrested by the State and charged with "Workers' Compensation/Misrepresentation by False or Misleading Statement," second degree felony. His workers' compensation benefits were terminated the following day. The criminal charges against Valdes ultimately were dropped, and Valdes was paid the workers' compensation benefits owed from the time they were terminated.

*Id*. at 864-65. The district court later described the defendants' conduct as "investigating Valdes and then allegedly falsely reporting to the Division of Insurance that Valdes had committed fraud." *Id*. at 866; *see also* *Id*. at 867 ("Valdes solely alleged that appellees falsely reported to the Division of Insurance Fraud that they had proof that he had committed insurance fraud.").

The record evidence here goes far beyond those in *Valdes*. Here, ACKLEY had a valuable claim that was the subject of a pending civil lawsuit. CONTINENTAL knew it did not have sufficient evidence to pursue a fraud-on-the-court claim in the civil lawsuit to get the case dismissed. So, CONTINENTAL circumvented that process by making a frivolous referral to DFS that CONTINENTAL actually knew to be frivolous. Not only did CONTINENTAL furnish false information to DFS, but it consciously withheld exculpatory information from DFS. CONTINENTAL did all this to obtain bogus criminal charges against ACKLEY—first-degree felony charges carrying a maximum thirty-year sentence— that it could use as leverage to coerce ACKLEY to drop his civil lawsuit.

There is no indication in the *Valdes* opinion that, as here, the defendant in that case had actual knowledge that its report to the state was false, as opposed to making an erroneous report but in good faith, or that, as here, the *Valdes* defendant worked behind the scenes to get charges filed, as opposed to just making the report. *Valdes* is inapposite.

This case is closer to *Gomez v. Wells Fargo Bank*, 2014 WL 11878882 (S.D. Fla. Jan. 7, 2014), where the district court denied a motion to dismiss an IIED count. According to the complaint in *Gomez*, a bank failed to secure and protect the private and confidential account information of, among other customers, the plaintiff. *Id*. at *1. This led to one of its

employees and others stealing money from two accounts at the bank, improperly opening a new account under the plaintiff's name and making sure the plaintiff would not receive notice of the new account, and then using that new account to launder some of the stolen money. *Id*. The bank then falsely informed the federal government that an account used to launder money belonged to the plaintiff, even though the bank knew or should have known, but did not tell the government, that the plaintiff had nothing to do with it. *Id*. This deliberate failure to provide the government with accurate and complete information directly led to the plaintiff's arrest and incarceration. *Id*.

The district court denied the bank's motion to dismiss the plaintiff's IIED claim. *See Id*. at *4-5. Notably, the bank relied, inter alia, on *Valdes*. The district court said: "[W]hen the Court assumes that all allegations alleged in the Complaint are true, and views the allegations cumulatively, in the light most favor able to Plaintiff, the Court finds them sufficiently outrageous to state a claim for IIED." *Id*. at *5 (citations omitted); *see also* Goosby v. Branch Banking & Tr., 2017 WL 10442008 (S.D. Fla. Dec. 20, 2017) (citing *Gomez*).

This case is also like Lashley v. Bowman, 561 So. 2d 406 (Fla. 5th DCA 1990). In Lashley, the customer ordered lobster but asserted it was frozen in the middle. The manager sent the lobster back to be recooked. When the customer said she did not want the lobster recooked, the manager told her he would call the police if she did not pay for it. The customer asserted that the lobster was still undercooked when it was returned to her. She told the manager that she would not pay for it. The manager again threatened to call the police if the customer did not pay; she refused. The manager called the police, and the customer was arrested in the restaurant for defrauding an innkeeper.

After the charges were dropped, the customer sued the manager. The trial court granted summary judgment for the manager on the customer's IIED claim, but the Fifth District reversed. _Id_. at 408-10. The court held that the manager's actions in attempting to extort money from the customer for inedible food were sufficiently outrageous to meet the IIED standard. _Id_. at 410; *see also* Gallogly v. Rodriguez, 970 So. 2d 470, 473 (Fla. 2d DCA 2007).

Other authorities support the denial of CONTINENTAL's motion.

In Dominguez v. Equitable Life Assurance Society of the United States, 438 So. 2d 58 (Fla. 3d DCA 1983), *approved*, 467 So. 2d 281 (Fla. 1985) (mem.), the district court held that a claim for intentional infliction of emotional distress is viable based solely on an insurer's intentional misrepresentation to its insured regarding the existence of coverage. In this case, of course, CONTINENTAL's conduct is much worse.

In Dependable Life Ins. Co. v. Harris, 510 So. 2d 985 (Fla. 5th DCA 1987), the district court held that the insurer's cessation of disability payments to the plaintiff without any justification and its actions — threatening the plaintiff with litigation, verbally attacking him on several occasions (calling him a cheat and a fraud), and otherwise acting in "an extremely nasty and vicious manner" — constituted outrageous behavior because of its fiduciary relationship with its insured, its economic strength and power, and the plaintiff's sickness, pecuniary circumstances, and need for (and dependence upon) the disability payments. Beginning its analysis with Metropolitan v. McCarson, 467 So. 2d 277 (Fla. 1985), which adopted the Restatement (Second) of Torts §46 (1965), the court held that the case involved "a fact pattern which falls within the scope of the tort." Harris, 510 So. 2d at 988-89.

In this case, CONTINENTAL was in a position to affect ACKLEY's interests and assert its power without justification. Comment *f* to §46 is instructive because it explains that knowledge of a person's particular susceptibility to emotional distress is relevant to determining whether the conduct is sufficiently extreme and outrageous to constitute IIED. Here, through discovery in the underlying lawsuit, CONTINENTAL knew of ACKLEY's significant medical issues.

Further, comment *e* to §46 explains that the unequal position of the parties in a relationship, where one asserts and has the power to affect the interests of the other, may also supply the heightened degree of outrageousness required for IIED. When the record evidence is viewed and all reasonable inferences therefrom drawn in his favor, ACKLEY suffered an injury that created financial hardship and a dependence on CONTINENTAL's insurance coverage, like the plaintiff in <u>Harris</u>. Like the insurer in <u>Harris</u>, CONTINENTAL acted outrageously and beyond all possible bounds of decency. And CONTINENTAL abused its relationship with ACKLEY when, like the manager in <u>Lashley</u>, it attempted to extort ACKLEY into dismissing his injury claim or risk an extended jail sentence. CONTINENTAL exercised its economic strength and power, without justification, and took advantage of ACKLEY's disability and financial dependence.

There is sufficient evidence of CONTINENTAL's outrageous conduct to preclude summary judgment on ACKLEY's IIED claim.

### D. THE CLAIM FOR VIOLATION OF §817.234(7)(b) IS VALID.

CONTINENTAL seeks summary judgment because, pointing to certain language in the statute, it says there needs to have been a criminal adjudication in the prosecution of

ACKLEY. This is a matter of straightforward statutory interpretation. There are two relevant subsections in § 817.234. The first is subsection (5)(a), which is what CONTINENTAL relies upon:

> Any insurer damaged as a result of a violation of any provision of this section when there has been a criminal adjudication of guilt shall have a cause of action to recover compensatory damages, plus all reasonable investigation and litigation expenses, including attorney fees, at the trial and appellate courts.

Plainly, this subsection is limited to insurers. It contains two parts: 1) the elements for the insurer's cause of action and 2) the kinds of damages recoverable.

CONTINENTAL is trying to improperly graft the first part of subsection (5)(a) onto a claimant's cause of action. That cause of action is created and governed by the second relevant subsection, (7)(b):

> The provisions of this section shall also apply as to any insurer or adjusting firm or its agents or representatives who, with intent, injure, defraud, or deceive any claimant with regard to any claim. The claimant shall have the right to recover the damages provided in this section.

As the Court can see, subsection (7)(b) creates a cause of action for a claimant with different elements than those imposed in subsection (5)(a). It incorporates only the damages part from the other subsections of the statute, like subsection (5)(a). In contrast to an insurer's cause of action under subsection (5), a criminal adjudication is not an element of a claimant's cause of action under subsection (7)(b).

With respect for the magistrate judge in <u>Molina v. Provident Life & Accident Insurance Co.</u>, 2019 WL 3429889, at *3 (S.D. Fla. May 31, 2019), *report and recommendation adopted*, 2019 WL 7937935, at *1 (S.D. Fla, June 27, 2019), she misread the statute. Westlaw reveals that the order has not been cited by any other court for this point. This Court should not perpetuate the misinterpretation. The correct statutory analysis is that set out above.

Because a plaintiff asserting a cause of action under subsection (7)(b) is not required to allege a criminal adjudication, the Court should deny CONTINENTAL's motion for summary judgment on ACKLEY's §817.234(7)(b) violation claim.

### E. RECORD EVIDENCE SUPPORTS THE ABUSE OF PROCESS CLAIM.

Abuse of process has three elements:

> (1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage.

*S & I Inv. v. Payless Flea Mkt.*, 36 So. 3d 909, 917 (Fla. 4th DCA 2010) (on motion for rehearing and clarification) (cleaned up) (emphasis added).

In the complaint, ACKLEY alleges that CONTINENTAL "continued ACKLEY's prosecution after it could have settled ACKLEY's case and after being told by Kelly that ACKLEY did not misrepresent anything." (DE 130 at 19, ¶ 93.) Contrary to CONTINENTAL's assertion (DE 137 at 20), the record evidence supports this allegation. It is undisputed that CONTINENTAL did not withdraw its fraud referral or request that DIFS cease its investigation upon being informed that PBSAO Kelley declined to bring charges because "the deposition simply did not have any material misrepresentations," even though CONTINENTAL could have. (Unger Deposition; DE 136-25 at 83:21-84:7.) It also is undisputed that CONTINENTAL did not inform BCSAO prosecutor Paul that it no longer wanted to press charges or participate in the prosecution, even though as Paul testified, that more likely than not would have led the office to drop the charges against ACKLEY. (Paul Deposition; DE 136-27 at 77:4-12.) Thus, there is sufficient evidence that CONTINENTAL used process **after** the criminal charges were filed.

The record evidence also shows, contrary to what CONTINENTAL asserts (DE 137 at 20), that CONTINENTAL had the ulterior motive or purpose of attempting to intimidate and coerce him into dropping his lawsuit. A reasonable jury could so infer from all the evidence ACKLEY has already recounted, especially the evidence relating to the immunity issue. For example, the BCSAO prosecutor said that he informed CONTINENTAL that a plea deal the state intended to offer ACKLEY included a condition that he drop his lawsuit, and that CONTINENTAL did not object to the condition.[8] (Paul Deposition; DE 136-27 at 70:20-74:14.) All the other evidence of CONTINENTAL's conduct casts a nefarious shadow on this failure to object. The Court should deny CONTINENTAL's motion for summary judgment on ACKLEY's abuse of process claim.

### F. RECORD EVIDENCE SUPPORTS THE PUNITIVE DAMAGES CLAIM.

ACKLEY agrees with CONTINENTAL that Florida Statutes §817.234 does not provide for the recovery of punitive damages, so the Court should grant that part of its motion. The remainder should be denied. Regarding malicious prosecution, this is not a case where the evidence supports a finding of legal malice only because there was an absence of probable cause, though there was; it is also a case where the evidence supports a finding that CONTINENTAL intentionally provided false information to and/or concealed exculpatory information from DIFS. This is sufficient to support a claim for punitive damages. See <u>Alamo Rent-A-Car v. Mancusi</u>, 632 So. 2d 1352 (Fla. 1994); <u>Jack Eckerd Corp. v.</u>

---

[8] Curiously, the CONTINENTAL corporate representative falsely testified that it had no discussions with BCSAO about plea offers (Gall Deposition; DE 136-21 at 71:9-13), and CONTINENTAL SIU Law Enforcement Liaison Bryant testified that he did not remember if he discussed the specifics of any deal with the BCSAO (Bryant Deposition; DE 136-23 at 103:20-104:19). Does CONTINENTAL's contradictory testimony constitute a false statement sufficient to justify a fraud referral?

*Smith*, 558 So. 2d 1060 (Fla. 1st DCA 1990); *Louis v. Costco Wholesale Corp.*, 719 So. 2d 1226 (Fla. 4th DCA 1998).

With respect to the IIED claim, the evidence that supports that claim also supports the punitive damages claim. *See Donigan v. Nevins*, 785 So. 2d 573, 575 (Fla. 4th DCA 2001).

And as for the abuse of process claim, the evidence supports punitive damages for the same reason as for malicious prosecution. *See Bothmann v. Harrington*, 458 So. 2d 1163, 1171 & n.11 (Fla. 3d DCA 1984).

## II. CONCLUSION

Defendant's Motion for Summary Judgment should be denied except for the one issue identified immediately above. The Court should allow a jury to decide whether CONTINENTAL acted maliciously, fraudulently or in bad faith, just as CONTINENTAL should have allowed the judge or a jury in the civil case to decide whether ACKLEY's "inconsistencies" or "contradictions" rose to the level of intentional conduct sufficient to constitute fraud.

DATED this **8th** day of January, 2025.

> Respectfully submitted,
> BENRUBI LAW, P.A.
> 6501 Congress Avenue, Suite 118
> Boca Raton, FL 33487
> Office: (561) 910-8650
> E-Mail: *RBenrubi@benrubilaw.com*
> Secondary: *cgarcia@benrubilaw.com*
>
> *Counsel for Plaintiff*
>
> By: /s/ *Richard M. Benrubi*
> RICHARD M. BENRUBI
> Florida Bar No.: 796573

CERTIFICATE OF SERVICE

I hereby certify that on January 8th, 2025, a copy of the foregoing Motion for Extension of Time to File Third Amended Complaint was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

**LAURA BESVINICK, ESQ**.
**JULIE E. NEVINS, ESQ.**
Clyde & Co US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Tel: (305) 446-2646
Email: *laura.besvinick@clydeco.us*
Email: *julie.nevins@clydeco.us*
Secondary: *paul.kalandiak@clydeco.us*
*Haydrich.estrada@clydeco.us*

*Counsel for Defendant*

                                      By: /s/ *Richard M. Benrubi*
                                          RICHARD M. BENRUBI
                                          *Counsel for Plaintiff*