UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:22-cv-60377-SMITH

CHARLES ACKLEY,

    Plaintiff,

vs.

CONTINENTAL CASUALTY COMPANY,

    Defendant.
_____/

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR FINAL SUMMARY JUDGMENT**

Laura Besvinick (FBN 391158)
Julie Nevins (FBN 182206)
**CLYDE & CO US LLP**
1221 Brickell Avenue
Suite 1600
Miami, FL 33131
(305) 446-2646
laura.besvinick@clydeco.us
julie.nevins@clydeco.us
paul.kalandiak@clydeco.us

Defendant Continental Casualty Company ("CCC") hereby submits this Reply in support of its Motion to Dismiss or for Final Summary Judgment (the "Motion"). For the reasons set forth in the Motion and herein, the Motion should be granted.

### A. CCC IS STATUTORILY IMMUNE FROM SUIT.

Plaintiff Charles Ackley ("Ackley") argues that CCC is not statutorily immune from suit for four reasons. None has merit.

**1. Section 626.989, Fla. Stat, Applies.** Ackley argues that § 626.989, Fla. Stat., only "applies when someone makes a claim to an insurance company for benefits under a policy." (ECF 156 at 2). Ackley is wrong. Section 626.989 is not limited to first-party claims. The statute requires insurers to report suspected fraudulent insurance acts or criminal insurance fraud by "persons" and is not limited to "insureds." Fla. Stat. § 626.989(1)(a) ("A person commits a 'fraudulent insurance act' if the person: ….") (emphasis added); Fla. Stat. § 817.234(1)(a) ("A person commits insurance fraud . . . if that person ….") (emphasis added).

**2. The Facts Triggered CCC's Reporting Obligations.** Ackley argues that § 626.989, Fla. Stat., only applies to written statements and that his statements were oral only. (ECF 156 at 2). Ackley is wrong on both counts. Section 626.989 requires insurers "who believe[] that a fraudulent insurance act or any other act or practice which, upon conviction constitutes a felony or a misdemeanor under the code, or under s. 817.234," to make a report to DIFS, and § 817.234(1)(a), Fla. Stat., provides that "[a] person commits insurance fraud … if that person … presents or causes to be presented any written *or oral* statement …." (emphasis added). Moreover, Ackley's statements were not oral only. CCC's report and the investigation and prosecution that followed were premised on two sworn depositions given by Ackley, both of which were transcribed.

**3. CCC Met Its Burden on Summary Judgment.** Ackley argues that CCC was required to prove that Ackley "acted knowingly and intentionally" and that it failed to do so. (ECF 156 at 2-3). Ackley misstates CCC's burden. There is no law – and Ackley cites none – holding that an insurer is required to prove that a claimant had the specific intent to commit insurance fraud to prevail on a statutory immunity defense. Indeed, Ackley's argument runs directly contrary to the unambiguous language of the immunity statute, which provides that an insurer "is not subject to liability … by virtue of filing reports, without malice, or furnishing other information, without malice … relating to suspected fraudulent insurance acts or persons suspected of engaging in such acts" and for "other actions taken in cooperation with any … agencies … in the lawful investigation

1

of <u>suspected</u> <u>fraudulent insurance acts</u>" "[i]n the absence of fraud or bad faith." § 626.989(4)(c), Fla. Stat. (emphasis added). In short, CCC need only show that it in good faith *suspected* that Ackley committed insurance fraud; it need not show that Ackley committed insurance fraud. Moreover, CCC has clearly met its burden. The undisputed facts show that CCC reported Ackley to the DIFS based on deposition testimony and surveillance footage; DIFS investigated and independently determined to refer Ackley for prosecution; and the Broward County SAO independently determined to prosecute Ackley for insurance fraud.

      **4. There is No Evidence of Fraud, Bad Faith, or Malice.** Ackley argues that *Hanover Ins. Group, Inc. v. Frazier*, 385 So. 3d 178 (Fla. 2d DCA 2024), is distinguishable and that disputed issues of fact regarding fraud, bad faith and malice preclude the entry of summary judgment in favor of CCC. (ECF 156, at 3-6). The Court should reject both arguments.

      Ackley tries to distinguish *Frazier* on the grounds that it was decided on direct verdict, as opposed to summary judgment. However, the directed verdict and summary judgment standards are the same as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Moreover, *Frazier* is directly on point. In *Frazier*, as here, the insurer reported suspected insurance fraud to DIFS based on video and photographic evidence that conflicted with the statements of the insured and the driver (Frazier) of the insured's car; DIFS conducted its own investigation and determined to refer the insured and the driver to the SAO for prosecution; and the SAO determined to charge them with making a false statement to an insurance company. After a jury found the insured and the driver not guilty, the driver successfully sued the insurer for malicious prosecution. On appeal, the Second District Court of Appeal reversed, holding that the insurer was statutorily immune from suit. *Frazier,* 385 So.3d at 182-83. The Court stated that because the investigation by the SIU representative (Arline) gave him "a basis to believe that Frazier had made a false statement in connection with the [insured's] claim, pursuant to the anti-fraud statute he was required to supply the information he gathered to DIFS," and "Frazier's evidence entirely failed to show fraud or bad faith in connection with Arline's investigation or report to DIFS." *Id.* at 182-83.

      This case is no different. Ackley provided sworn deposition testimony regarding his physical limitations following his trip and fall that conflicted with subsequent video surveillance. In a second deposition, Ackley was given the opportunity to provide truthful testimony about his physical limitations but failed to do so. (SOF, ¶¶ 3-17; Motion at 2-5). Based on the evidence – the transcripts of the first and second depositions and the surveillance video and report, CCC's investigator (Janicek) formed a reasonable belief that an act of fraud has or was occurring." (SOF,

2

¶¶ 8, 11, 12, 16). CCC's SIU Law Enforcement Liaison (Bryant) independently reviewed the evidence and also formed a reasonable belief that insurance fraud was being committed. (SOF, ¶17). Bryant reported Ackley to DIFS for suspected insurance fraud, as CCC was statutorily required to do, and then allowed the process to run its course. (Motion at 11-12; SOF, ¶¶ 3-45). DIFS independently investigated, as it was required to do, and found probable cause, triggering its mandatory obligation to report to the SAO. (SOF, ¶¶ 22-38). DIFS, and DIFS alone, made the decision to refer Ackley to the Palm Beach County SAO and subsequently to the Broward County SAO. (SOF, ¶¶ 31-38). The Broward County SAO (Paul) made the independent decision to charge and prosecute Ackley, after reviewing the evidence with his supervisor and receiving his approval. (SOF, ¶¶ 39-40).

There is *no* evidence that CCC interfered with DIFS' investigation or pressured DIFS to report Ackley to the SAO. There is *no* evidence that CCC pressured the Palm Beach County SAO or the Broward County SAO to prosecute Ackley or otherwise interfered in Ackley's prosecution. (SOF, ¶¶ 21, 23, 24, 37, 39, 42, 44). And, there is *no* evidence of fraud, bad faith or malice by CCC. Rather, the only evidence is that CCC reported Ackley to DIFS in good faith because it was statutorily required to do so based on the facts. Having met its obligation to report Ackley to DIFS, CCC monitored the matter and "furnished information" to DIFS as requested; no more.

Despite the complete lack of any evidence of fraud, bad faith, or malice, Ackley argues that a jury could "reasonably infer" that CCC had "ulterior motives" in reporting him to DIFS. Ackley conjectures that CCC reported him to DIFS in order to coerce him into dropping his civil lawsuit against Equity One so that it would not have to pay his claim. (ECF 156, at 4-6). Ackley's "ulterior motives" argument falls into four categories: (1) CCC did not wait until after the civil action concluded to report Ackley, (2) CCC did not settle Ackley's claim until the criminal case was over, (3) CCC withheld exculpatory information from DIFS and the prosecutors, and (4) CCC should have withdrawn its referral when the Palm Beach County SAO declined to prosecute. The Court should reject Ackley's "ulterior motive" argument because it is not supported by the evidence.

(1) CCC reported Ackley for suspected insurance fraud to DIFS when it had a statutory obligation to do so. CCC investigated Ackley and, after forming a reasonable belief that he had committed or was committing insurance fraud, reported him to DIFS.

(2) CCC's investigator (Janicek) placed an SIU Hold on Ackley's claim pending the investigation of Ackley's suspected insurance fraud. Pursuant to CCC's fraud management guidelines, Ackley's claim against Equity One could not be settled while the SIU Hold was in

3

place. (SOF, ¶ 7, 8; Reply SOF, ¶ 54). CCC's refusal to settle Ackley's claim while Ackley was suspected of committing insurance fraud is not evidence of "ulterior motives" by CCC.

(3) CCC did not withhold exculpatory information regarding Ackley. CCC provided DIFS with the *full* transcripts of Ackley's two depositions (without redaction), the *full* surveillance report and the surveillance video, in addition to non-privileged materials from the claim file. (SOF, ¶¶ 19, 25, 26). CCC properly redacted attorney-client privileged communications related to Ackley's pending civil lawsuit against its insured Equity One and so advised DIFS. (Motion at 13; SOF, ¶¶ 47, 48; Reply SOF, ¶ 68). Lt. Spirn testified that the redacted communications were not material to the investigation because "what Ackley was charged with was sworn testimony he provided versus video surveillance." (SOF, ¶ 27). And no one associated with DIFS, the Broward County SAO or the Palm Beach SAO testified that they were in any way duped or misled by the information that CCC provided (or redacted); indeed, the testimony of Lt. Spirn, Det. Unger, ASA Paul and ASA Kelley was exactly the opposite. (SOF, ¶¶ 23, 24, 27, 35- 37, 39, 40, 42-44).

(4) CCC had no obligation to withdraw its referral after ASA Kelley declined to prosecute. Section 626.989, Fla. Stat., does not provide for an insurer to "withdraw" a referral in the event a prosecutor makes an independent decision not to pursue it. Indeed, the decision whether or not to prosecute is the prosecutor's decision to make, not the insurer's. *State v. Greaux*, 977 So. 2d 614, 615 (Fla. 4th DCA 2008). Moreover, in this case, there is no evidence that CCC was ever told why the Palm Beach County SAO had declined to prosecute Ackley. (SOF, ¶ 36; Reply SOF ¶ 73).

Based on the law regarding § 626.989, Fla. Stat., and the undisputed facts, the Court should hold that CCC is statutory immune from liability to Ackley and grant CCC's Motion. CCC properly investigated Ackley and reported his suspected insurance fraud to DIFS based on the facts as it was required to do by law; no more.

**B.     THERE IS NO EVIDENCE PROVING MALICIOUS PROSECUTION.**

Ackley argues that there is sufficient evidence to prove the elements of malicious prosecution. Ackley is wrong.

**1. <u>CCC is Not the Legal Cause of Ackley's Prosecution.</u>** Ackley argues that CCC is the legal cause of Ackley's prosecution because "DIFS relied almost exclusively on the intentionally and materially false and incomplete information CCC provided." (ECF 156, at 7). Ackley is wrong. There is absolutely no evidence that CCC provided false and incomplete information relevant to its suspicion that Ackley's committed insurance fraud. CCC provided Ackley's complete deposition transcripts (which were not redacted), the complete surveillance report and surveillance

4

video, and relevant, non-privileged materials from the claim file, as requested by DIFS. (SOF, ¶¶ 19, 25, 26). Det. Unger relied on Ackley's deposition testimony and the video surveillance, independently investigated Ackley, and independently concluded there was probable cause that Ackley had committed insurance fraud. (SOF, ¶¶ 22-32; Reply SOF ¶ 68).

Ackley also argues that CCC "maliciously continued such proceedings when it failed to withdraw its referral or request" after the Palm Beach County SAO declined to prosecute. (ECF 156, at 9-10). This argument also fails. As set forth above, CCC had no obligation pursuant to § 626.989, Fla. Stat., to withdraw its referral. Rather, the decision whether to prosecute belongs to the prosecutor alone. *Greaux*, 977 So. 2d at 614. And here, the Broward County SAO independently determined to charge Ackley.

Ackley cites *Harris v. Lewis State Bank*, 482 So. 2d 1378 (Fla. 1st DCA 1986), in support of his argument but his reliance on *Harris* is misplaced. In *Harris*, the plaintiff sued the defendant bank for malicious prosecution after she was criminally prosecuted for making withdrawals from a bank account that was not her own. She alleged that the bank had failed to disclose to the investigating officer and later the prosecutor that the bank's employees had actually encouraged her to make the withdrawals, saying "someone must have put some money in the bank for you," advising her that she could withdraw funds, instructing her how to fill out a withdrawal slip, suggesting that she have her picture taken for an I.D. card to simplify future withdrawals, and allowing her to make additional withdrawals without comparing her signature. *Id.* at 1381 n.8. The court stated: "Although legal causation is usually established by the signing of a complaint or affidavit, there is authority for the proposition that the giving of information may constitute the initiation of prosecution, <u>if the information was known by the giver to be false</u>." *Id.* at 1381 (emphasis added). Here, in stark contrast to *Harris,* CCC provided all of the information pertinent to Ackley's suspected insurance fraud to DIFS – the two deposition transcripts, the surveillance report and the surveillance video – and allowed the state investigative and judicial process to run its course. Nor is there any suggestion, as there is in *Harris,* that CCC somehow invited the conduct by Ackley it later reported to DIFS. (Motion 11-12; SOF, ¶¶ 3-45).

Ackley also cites *Floyd v. Stoumbos,* No. 6:20-cv-353-RBD-EJK, 2022 WL 1591356 (M.D. Fla. Apr. 15, 2022). In *Floyd*, the court stated: "[W]here an officer makes an *independent* investigation and the state attorney *independently* decides to prosecute, the defendant is not the legal cause of a proceeding—because any information given by the defendant is not *the* determining factor of the prosecution." *Id.* at *4. That is exactly what happened here: DIFS made

5

an independent investigation, and the state attorney independently decided to prosecute. Thus, *Floyd* supports CCC's argument that CCC was *not* the legal cause of Ackley's prosecution.

**2. There Was Probable Cause for Ackley's Prosecution.** Relying on *Lindeman v. C.J. Stoll, Inc.*, 490 So. 2d 101 (Fla. 2d DCA 1986), and *Harris*, Ackley argues that probable cause was lacking because the "prosecution was instituted on facts explainable as innocent conduct." Ackley is wrong. In *Lindeman*, the plaintiff issued a check to a mechanic for repairs but stopped payment on the check after she determined the repairs were not properly accomplished. When she was unable to reach an agreement with the mechanic regarding the proper amount of the bill, the mechanic swore out a bad check affidavit for the plaintiff's arrest. The charges against the plaintiff were nolle prossed, and the plaintiff sued the mechanic for malicious prosecution. *Id.* at 102-03.

This case is the opposite of *Lindeman* and *Harris* (discussed above). First, there are no "facts explainable as innocent conduct" in this case, as a comparison of Ackley's deposition testimony and the surveillance report and video shows. (Motion at 2-4; SOF, ¶¶ 10-20). Indeed, when given the opportunity to provide a truthful and complete explanation of his physical limitations in his second deposition, and later in his covert interview with DIFS, Ackley failed to do so. (SOF, ¶¶ 15-16, 20, 28). Second, DIFS made a probable cause determination based on the evidence and its own independent investigation. (SOF, ¶¶ 32). The Broward County SAO (Paul) prepared an information charging Ackley, which his supervisor approved and signed after reviewing the evidence with him. (SOF, ¶ 40). And, a magistrate judge made a probable cause determination after Ackley was arrested and was brought before the magistrate judge (SOF, ¶ 41; Probable Cause Determination, ECF 136-14).

In reliance on *Harris v. Boone,* 519 So. 2d 1065 (Fla. 1st DCA 1988), Ackley argues that the magistrate judge's probable cause determination is not conclusive evidence of probable cause for purposes of a malicious prosecution action because there is no evidence that it was based on an adversary hearing. Ackley is wrong. In *Harris,* the probable cause determination at issue was for an arrest warrant and was not based on an adversary hearing. *Id.* at 1067. Here, in contrast, the magistrate judge's probable cause determination was made when Ackley was brought before the magistrate judge after Ackley had been arrested. (ECF 136-14). Ackley also argues that the information is not "conclusive evidence" of probable cause for purposes of a malicious prosecution action. (ECF 156, at 9). While the information standing alone may not constitute conclusive evidence of probable cause, it is further "evidence of reasonable grounds for the prosecution." *Colonial Stores, Inc. v. Scarbrough*, 355 So. 2d 1181, 1184-85 (Fla. 1977).

**3. There is No Evidence of Malice.** Ackley argues that there are disputed issues of material fact regarding malice on the part of CCC. However, Ackley has failed to proffer any such evidence. (*See supra*, pp. 2-4). Instead, the undisputed material facts demonstrate that there was no malice on the part of CCC. (Motion at 16-17).

For the reasons set forth in the Motion and herein, the Court should dismiss with prejudice Count I for malicious prosecution or enter summary judgment in CCC's favor.

**C.     ACKLEY CANNOT PROVE IIED.**

Ackley argues that he has a viable IIED claim because CCC made "a frivolous referral to DFS," "furnish[ed] false information to DFS," "consciously withheld exculpatory information from DFS," all "to obtain bogus criminal charges against" Ackley "that it could use as leverage to coerce [Ackley] to drop his lawsuit." (ECF 156, at 12). There is no merit to Ackley's argument. As demonstrated above and in the Motion, there is not a scintilla of evidence supporting Ackley's colorful contentions. (*See supra*, pp. 2-5; Motion at 11-15). Further, the cases Ackley cites do not support his arguments.

Ackley and CCC both cite *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277 (Fla. 1985). In *McCarson* the Florida Supreme Court recognized IIED as an independent tort claim but held that the insurer's actions in that case did not give rise to IIED. The Court wrote:

> [T]he facts as a matter of law are not 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.' Rather, the insurance company according to the terms of the policy had the right to demand proof of ineligibility for Medicare. Although this demand and the withholding of further benefits had tragic results, and although we must assume from the jury's verdict that it found [the insurer] was in reckless disregard of the potential for such tragedy, [the insurer] did no more than assert legal rights in a legally permissible way. As such, [the insurer's] actions are 'privileged under the circumstances.'

*Id.* at 279 (emphasis added). The Court based its holding on comment g to the Restatement (Second) of Torts § 46 (the "Restatement"), which the Court adopted as law. Comment g provides:

> The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable … where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.

*Id.* (emphasis added).

Here, as in *McCarson*, the facts show that CCC did not do anything other than "insist upon [its] legal rights in a permissible way." CCC was required to report suspected insurance fraud to the DIFS. § 626.989(6), Fla. Stat. DIFS (not CCC) then referred the matter to the SAO for

7

prosecution, after independently investigating the referral. (SOF, ¶¶ 22-34, 37-38). Even if Ackley's emotional distress was the likely result of CCC's required reporting, Ackley has no IIED claim against CCC simply for doing what it was legally required to do.

Ignoring the *McCarson* holding, Ackley cites multiple cases applying <u>comments e and f</u> to the Restatement – and <u>not comment g</u>. (ECF 156, at 12-14) (citing *Dependable Life Ins. Co. v. Harris*, 510 So. 2d 985 (Fla. 5th DCA 1987) (comments e and f); *Dominguez v. Equitable Life Assur. Soc. of U.S.*, 438 So. 2d 58 (Fla. 3d DCA 1983) (comments e and f); *Gallogly v. Rodriguez*, 970 So. 2d 470 (Fla. 2d DCA 2007) (comment e); *Lashley v. Bowman*, 561 So. 2d 406 (Fla. 5th DCA 1990) (comment e)). Yet, comments e and f have no application to this case.

Comment e to the Restatement provides: "The extreme or outrageous character of the conduct may arise from the abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Applying comment e, *Dependable Life* and *Dominguez* each involved an insurer's denial of disability benefits to its own insured. The *Harris* court noted "the fiduciary relationship" between the insured and the insurer and the insurer's "economic strength and power" in comparison to the insured's "sickness, pecuniary circumstances, and need for (and dependence upon) the disability payments which [were] wrongfully withheld." *Harris*, 510 So. 2d at 989. Further, in *Lashley* and *Gallogly*, the courts noted that the defendants had tried to extort the plaintiffs using their authority over them. *Lashley,* 561 So. 2d at 410; *Gallogly,* 970 So.2d at 472-73. Here, in contrast, CCC was not in a position to exercise "actual or apparent authority" over Ackley because he was not CCC's insured; Equity One was. Further, there is no evidence that CCC used its position to deny benefits to its insured or to extort its insured (or anyone); rather, it dutifully reported the party suing its insured for suspected insurance fraud as Florida law required it to do.

Comment f to the Restatement provides: "The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." Here, Ackley offers no evidence that he was "peculiarly susceptible to emotional distress" as a result of CCC's report to DIFS and his subsequent prosecution. Instead, the evidence shows that Ackley had a history of previous arrests. *See* Broward County Booking Reports, attached as **Exhibit 1** hereto.

Lastly, Ackley relies on *Gomez v. Wells Fargo Bank*, No. 13-23420, 2014 WL 11878882 (S.D. Fla. Jan. 7, 2014), to support his argument. But *Gomez* is the opposite of this case. In *Gomez,* the plaintiff alleged that bank employees opened a new account using plaintiff's confidential

8

information without informing him and then laundered money through the account. The bank was alleged to have provided false and misleading information to the federal government, concealing the bank employees' criminal scheme, and which led to the plaintiff's arrest. *See id.* at *1. Here, in contrast, there is no evidence that CCC provided false or misleading information either to DIFS or the SAO, much less that CCC used Ackley's confidential information in a criminal scheme.

Contrary to Ackley's argument, this case is like *Valdes v. GAB Robins North America*, 924 So. 2d 862 (Fla. 3d DCA 2006). In *Valdes*, the insurer referred its insured to DIFS after the insured made a claim for workers compensation benefits claiming to be permanently disabled and the insurer's investigation revealed the insured was engaging in various physical activities. *Id.* at 866. The court held that the insurer's referral of the insured to DIFS was not the type of outrageous and extreme conduct necessary to sustain an IIED claim. The same holds true here.

For the reasons set forth in the Motion and herein, the Court should dismiss with prejudice Count II for IIED or enter summary judgment in CCC's favor.

**D.     ACKLEY HAS NO CLAIM FOR VIOLATION OF § 817.234(7)(b), FLA. STAT.**

In its Motion, CCC relied on the decision of Magistrate Judge McAliley in *Molina v. Provident Life & Acc. Ins. Co.,* No. 18-24413-cv, 2019 WL 3429889 (S.D. Fla. Jun. 27, 2019), to argue that Ackley could not state a claim against CCC for violation of § 817.234(7)(b), Fla. Stat., without pleading and proving that CCC had been adjudicated guilty of fraud in violation of § 817.234 – which Ackley did not do. (ECF 137, at 18). In response, Ackley argues – without citation to any authority – that *Molina* is wrong. The court should reject Ackley's argument and follow *Molina*.

In *Molina*, the court held that a criminal adjudication of guilt was a requirement for a private cause of action under Fla. Stat. § 817.234(7)(b). No. 18-24413-CV, 2019 WL 3429889, at *3 (S.D. Fla. May 31, 2019), *adopting report & recommendation*, 2019 WL 7937935, at *1 (S.D. Fla. June 27, 2019). The court explained its holding as follows:

> Plaintiff attempts to read subsection (7)(b) in isolation. The Court must, however, "construe statutes, not isolated provisions." . . . . Subsection 7(b) demands this, as it twice explicitly incorporates other provisions of the statute. Subsection (7)(b) allows for the recovery [of] damages as "provided in this section." . . . The only other provision for damages in the section is set forth in subsection (5), which allows the recovery of damages "when there has been a criminal adjudication of guilt." Fla. Stat. § 817.234 (5). This requirement is incorporated into the private right of action set forth in subsection (7)(b).

9

> Nor does Plaintiff's interpretation make sense given the broader purpose of the statute. Fla Stat. § 817.234 criminalizes certain practices as insurance fraud. It would be inconsistent to apply the provisions of the statute outside of that context.

*Id.* at *3 (citations omitted). Judge Moreno affirmed and adopted Magistrate Judge McAliley's report and recommendation, and *Molina* remains good law. 2019 WL 7937935, at *1.

Here, Ackley does not – and cannot – allege there was a "criminal adjudication of guilt" against CCC. Accordingly, Count III fails as a matter of law.

### E.   THERE IS NO PROOF SUPPORTING ABUSE OF PROCESS.

Ackley argues there is evidence supporting his abuse of process claim. Ackley is wrong.

<u>First</u>, Ackley argues that CCC made an "illegal, improper, or perverted use of process' because CCC purportedly failed to "withdraw its fraud referral" after the Palm Beach County SAO (Kelley) declined to prosecute and failed to inform the Broward County SAO (Paul) that it "no longer wanted to press charges or participate in the prosecution." (ECF 156, at 17). The Court should reject Ackley's argument. As set forth above, CCC had no obligation to withdraw its referral to DIFS pursuant to § 626.989, Fla. Stat., and no reason to do so. (*See supra*, p. 5).

<u>Second,</u> Ackley argues that CCC had "ulterior motives or purposes." (ECF 156, at 17). Again, Ackley is wrong. As set forth above, the evidence does not support Ackley's conjecture regarding CCC's "ulterior motives" in reporting his suspected insurance fraud to DIFS after surveillance disclosed him engaging in physical activities he swore under oath he was unable to perform. Instead, the evidence shows that CCC's SIU investigated, weighed the evidence, and made a referral to DIFS as it was legally required to do, after which DIFS and the SAO conducted their own independent investigations and made their own independent determinations regarding Ackley. (*See supra*, pp. 2-5; Motion at 19)**.**

### F.   ACKLEY IS NOT ENTITLED TO PUNITIVE DAMAGES

Plaintiff concedes that Fla. Stat. § 817.234(7)(b) does not authorize punitive damages. However, Plaintiff insists he is entitled to punitive damages for the other claims. For the reasons set forth in the Motion, Plaintiff is wrong. (Motion at 20).

## CONCLUSION

For all of the reasons set forth in CCC's Motion and this Reply, the Court should dismiss Ackley's claims with prejudice or enter summary judgment in CCC's favor.

Respectfully submitted,

By: */s/ Laura Besvinick*
**Laura Besvinick**
Fla. Bar No. 391158
**Julie Nevins**
Fla. Bar No. 182206
**CLYDE & CO US LLP**
1221 Brickell Avenue, Suite 1600
Miami, FL 33131
Telephone: (305) 446-2646
laura.besvinick@clydeco.us
julie.nevins@clydeco.us
paul.kalandiak@clydeco.us

*Counsel for Defendant Continental Casualty Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 13, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties and counsel of record.

By: */s/ Laura Besvinick*
        Laura Besvinick, Esq.